**EXHIBIT A**
**Legal Description**

### 1702 Grove Avenue, Richmond, Virginia 23220

ALL that parcel of land, in the City of Richmond, Virginia, on the northern line of Grove Avenue, between Vine Street and Allen Avenue, together with all the improvements on said parcel and appurtenances thereto belonging, known as No. 1702 Grove Avenue and bounded as follows, to-wit:

BEGINNING on the northern line of Grove Avenue at a point distant thereon 28 feet westwardly from the western line of Vine Street, and from said point running westwardly along and fronting on the northern line of Grove Avenue 28 feet 7 inches, and from said front extending back northwardly between parallel lines 126 feet to an alley in common 13 feet wide.

BEING the same real estate conveyed to Renew Properties, LLC by Deed from George A. Warthen, II, executor of the Estate of Sue Lee Profitt Yeatts, aka Sue Lee Yeatts, dated October 13, 2016 and recorded October 18, 2016 in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument Number: 160020426.

### 3207 Hanover Avenue, Richmond, Virginia 23221

ALL that certain lot, piece or parcel of land, with the improvements thereon, lying, being and situated in the City of Richmond, Virginia, known as No. 3207 Hanover Avenue and further designated as shown on "Plat of Property Situated on the Southern Line of Hanover Avenue and West of Cleveland Street, Richmond, Va.", dated August 20, 1965, made by Chas. H. Fleet & Assocs., Certified Surveyors, to which plat, a copy of which is recorded with Deed at Deed Book 634-B, page 447, reference is made for a more particular description of the property hereby conveyed.

BEING the same real estate conveyed to Renew Properties, LLC by Deed from Timothy P. Corbett, recorded in the Clerk's Office, Circuit Court, City of Richmond, Virginia, as Instrument Number: 16000978.

IG 0386 OCT 18

16-20427

This instrument was prepared by
and return after recordation to:
Scott D. Stolte, Esquire
Ayers & Stolte, P.C.
710 North Hamilton Street
Richmond, Virginia 23221
(804) 358-4731



EXHIBIT

B

Parcel Identification Number: W000-0732/022

### CREDIT LINE DEED OF TRUST,
### ASSIGNMENT OF LEASES RENTS AND PROFITS
### & SECURITY AGREEMENT

THIS CREDIT LINE DEED OF TRUST, ASSINGMENT OF LEASES RENTAS AND
PROFITS AND SECURITY AGREEMENT (the "Deed of Trust"), is made as of this 17th day of
October, 2016, by and among **RENEW PROPERTIES. LLC**, a Virginia limited liability
company, (the "Grantor"); **SCOTT D. STOLTE** AND **ALEXANDER H. AYERS**, both of whom
have a mailing address of 710 North Hamilton Street, Richmond, Virginia 23221, Trustees (the
"Trustee"), and **STONEBRIDGE INVESTMENT COMPANY. LLC**, a Virginia limited liability
company, its successors or assigns (the "Lender", sometimes herein "Noteholder"), provides
as follows:

### THIS IS A CREDIT LINE DEED OF TRUST

This is a credit line deed of trust as defined in Section 55-58.2 of the Code of Virginia of
1950 (as amended). The name of the Noteholder is Stonebridge Investment Company, LLC, a
Virginia limited liability company and the address of the Noteholder to which notices
permitted under Section 55-58.2 may be sent is 103 Canterbury Road, Richmond, Virginia
23221. The maximum aggregate amount of principal to be secured hereby at any one time is
**THREE HUNDRED EIGHTY-FIVE THOUSAND AND NO/100 DOLLARS ($675,000.00).**

WITNESSETH, That Grantor hereby grants and conveys with General Warranty and
English Covenants of Title unto the Trustee a first lien security interest in the real property
located in the City of Richmond, Virginia, and more particularly described as follows, to-wit:

### 1702 Grove Avenue. Richmond. Virginia 23220

ALL that parcel of land, in the City of Richmond, Virginia, on the northern line of
Grove Avenue, between Vine Street and Allen Avenue, together with all the
improvements on said parcel and appurtenances thereto belonging, known as No.
1702 Grove Avenue and bounded as follows, to-wit:

BEGINNING on the northern line of Grove Avenue at a point distant thereon 28
feet westwardly from the western line of Vine Street, and from said point running

PG 0387 OCT 18

westwardly along and fronting on the northern line of Grove Avenue 28 feet 7 inches, and from said front extending back northwardly between parallel lines 126 feet to an alley in common 13 feet wide.

BEING the same real estate conveyed to Renew Properties, LLC by Deed from George A. Warthen, II, executor of the Estate of Sue Lee Profitt Yeatts, aka Sue Lee Yeatts, dated October 13, 2016 and recorded in the Clerk's Office, Circuit Court, City of Richmond, Virginia immediately prior hereto.

TOGETHER WITH all tenements, hereditaments, easements, rights, privileges, appurtenances and rights of way now or hereafter belonging or in any way pertaining to the above-referenced real estate and the remainder and remainders, reversion or reversions thereof; all the estate, right, title, interest, issues, profits, proceeds, revenues, royalties and benefits accruing or to accrue therefrom; and all property and each and every claim and demand whatsoever of each Grantor of, in and to the same, and of, in and to every part and parcel thereof.

TOGETHER WITH all right, title, interest, property, claim and demand of the each Grantor, if any, in and to the land lying in the bed of any street, road, avenue or alley in front of, adjoining or provides ingress to or egress from the Real Estate, and all utility easements and off-site utility easements serving or intended to serve the Real Estate.

All of the above Real Estate and other property and interests therein are hereinafter referred to as the "Property".

TOGETHER WITH all proceeds of the conversion, whether voluntary or involuntary, of any of the Property into Cash or other liquid claims, including, without limitation, all awards, payments or proceeds, including interest thereon, and the right to receive the same, which may be as the result of any casualty, any exercise of the right of eminent domain or deed in lieu thereof, the alteration of the grade of any street, any injury to or decrease in the value of the Property and any defect in title to the Property or other matter insured under a policy of title insurance, together with counsel fees, costs and disbursements incurred by the Lender in connection with the collection of such awards, payments and proceeds.

TO HAVE AND TO HOLD the same, whether now owned or held or hereafter acquired, unto the Trustee, their survivor or other successor or successors and assigns IN TRUST forever.

IN TRUST, to secure to the Lender (i) the payment of all sums owing under that certain Commercial Deed of Trust Note (the "Note") bearing even date herewith, made by Renew Properties, LLC (the "Borrower"), to Stonebridge Investment Company, LLC, a Virginia limited liability company, or order at 103 Canterbury Road, Richmond, Virginia 23221, or at such other place as the holder thereof may otherwise specify in writing, from time to time, which Note evidences an indebtedness of the Borrower to the said Stonebridge Investment Company, LLC a Virginia limited liability company in a principal amount not to exceed Six Hundred Seventy-Five Thousand Dollars ($675,000.00), together with interest on the

Page 2 of 17

PG 0388 OCT 18

unpaid balance thereof until paid, and any cost related thereto pursuant to the terms and conditions set forth in the Note, and (ii) the payment of all other sums owed to the Lender by the Borrower or which are otherwise payable pursuant to this Deed of Trust, and (iii) the performance and observation of all the terms, covenants, warranties, conditions, agreements and obligations of the Note and this Deed of Trust.

The privilege to prepay the indebtedness secured hereby is reserved as provided in the Note, as are any conditions, premiums and prepayment closed periods related thereto.

The Note provides that unless there is an earlier default, the entire principal balance with accrued and unpaid interest thereon and other charges due thereunder shall be due and payable in full on May 1, 2016.

The Note provides that the Lender may collect a late charge equal to five cents ($.05) for each dollar ($1.00) of any payment or interest not made within five (5) days of the date due including maturity as scheduled or accelerated due to default.

The Note provides in the event of a default under the Note or event of default under any of the other Loan Documents the Noteholder shall have the right to accelerate the payments and all sums due under the Note and declare the entire indebtedness evidenced by the Note immediately due and payable.

The Note provides that interest shall be payable on all past due and unpaid principal and interest owing under the Note at the rate of eighteen percent (18%) per annum.

**PROVIDED ALWAYS** that upon full payment of the Note, with interest thereon and all other amounts due thereunder and under this Deed of Trust and the observance and performance of each and every term, warranty, covenant, condition and obligation of the Note and this Deed of Trust, the Noteholder shall execute and deliver the paid Note and a Certificate of Satisfaction to each Grantor or the Trustee shall release and reconvey the Property unto the Grantor, all at the sole expense of the Grantor.

**THE GRANTOR FURTHER COVENANTS AND AGREES** as follows:

1.    Payment and Performance by the Grantor.  The Grantor shall pay punctually the principal, interest, late charge (if any), premium (if any) and all other amounts due under the Note, this Deed of Trust and the other Loan Documents on the Grantor's part to be paid. The Grantor shall also observe and perform all the other terms, covenants, warranties, agreements, conditions and obligations of the Note, this Deed of Trust and all other Loan Documents on the Grantor's part to be observed and performed.  As used herein, the term "Loan Documents" shall refer collectively to the Note, this Deed of Trust and any other deed of trust, security agreement, assignment of leases, rents and profits, the Guarantees and any other agreements or instruments which now or subsequently may be executed in connection with the indebtedness evidenced by the Note.

2.    Costs, Expenses and Fees.  (a) The Grantor agrees to pay all costs and expenses

PG 0389 OCT 18

of the Lender, including reasonable attorneys' fees, (i) if after default the Note is placed in the hands of an attorney or attorneys for collection, (ii) if the Lender finds it necessary or desirable to secure the services or advice of one or more attorneys with regard to collection of the Note or to the protection of its rights under the Note, this Deed of Trust or any other Loan Document or (iii) if the Lender seeks to have the Property abandoned by or reclaimed from any estate in bankruptcy or attempts to have any stay or injunction prohibiting the enforcement or collection of the Note, prohibiting the foreclosure of this Deed of Trust or prohibiting the enforcement of this Deed of Trust or any other Loan Document lifted by any bankruptcy or other court.

(b)    In the event that the Trustee or the Lender shall be made a party to or shall intervene in any action or proceeding, whether in court or before any governmental agency, affecting the Property or the title thereto or the interest of the Trustee or the Lender under this Deed of Trust, including, without limitation, any form of condemnation or eminent domain proceeding, the Grantor shall reimburse the Trustee and the Lender for all costs, charges and attorneys' fees incurred by any of them.

(c)    In the event of any default by the Grantor in the performance of any term, warranty, covenant, condition or obligation hereunder, the Lender may, at its option, advance or disburse funds for the performance of such term, warranty, covenant, condition or obligation. The Grantor shall reimburse the Lender for all such monies advanced or disbursed by the Lender for performance of any defaulted term, warranty, covenant, condition or obligation of the Grantor.

(d)    All payments to be paid or reimbursed to the Lender by the Grantor as set forth in subparagraphs (a), (b) and (c) above and all expenses, charges, counsel fees and other disbursements incurred by the Trustee, or either of them, with respect to the administration and execution of the trusts hereby created and the performance of their duties and powers hereunder (i) shall bear interest at the rate of eighteen percent (18%) per annum or at the rate provided in the Note, whichever is greater, (ii) shall be due and payable immediately upon demand and (iii) shall be secured by this Deed of Trust as a further charge and lien upon the Property and held to be a prior charge in the event of foreclosure.

3.    Incorporation of Statute. This Deed of Trust, unless otherwise specified herein, shall be construed under and in accordance with and incorporate by reference the terms of Section 55-59 through Section 55-60, inclusive and Section 55-63 of the Code of Virginia of 1950, as amended, as its provisions are in force and in effect on the date of this Deed of Trust, with the following and further understandings as in such sections provided:

PURCHASE MONEY.

EXEMPTION WAIVED.

RENEWAL, EXTENSION OR REINSTATEMENT PERMITTED.

SUBJECT TO ALL UPON DEFAULT.

FG 0390 OCT 18 '2

4.    Substitution of Trustee.  Any one of the Trustee hereunder may act at any time upon designation by the Lender.  If the Lender, in its sole and absolute discretion, shall desire for any reason whatsoever to have a substitute trustee or substitute Trustee appointed, then the Lender is hereby authorized and empowered to appoint, at any time and from time to time, by an instrument duly executed and acknowledged and filed for recordation wherever this Deed of Trust is recorded, a substitute trustee or substitute Trustee, in the place and stead of one or more of those initially named herein or subsequently appointed by the Lender, which trustee or Trustee shall have all the rights, powers and authority and be charged with all the duties and responsibilities that are conferred or charged upon the Trustee initially named herein.

5.    Foreclosure.  The Note is secured by the Property conveyed hereby and other real estate.   The Trustee may proceed against any item of or all of the Collateral simultaneously or in any sequence that the Trustee deems appropriate.  (a) Upon the occurrence of an Event of Default (as defined herein) and at the request of the Lender, the Trustee (or either of them) shall sell the Property, or, if the Property shall consist of more than one parcel, such parcel or parcels thereof as the Lender may select, for cash or upon such terms and conditions as they may deem expedient, such sale shall be at such time and place as they may consider advisable, at public auction, after having first given notice to the present owner of the Property as required by law.  The Trustee shall advertise the time, place and terms of sale at least three (3) times, which may be on three (3) consecutive days, in a newspaper having general circulation in the county or city where the Property or any portion thereof lies.  Out of the proceeds of any such sale, the Trustee shall (i) first, pay all the expenses attending the execution of this trust, including attorneys' fees and auctioneers' fees, if any, and Trustee commission on the gross proceeds of sale at the rate of five percent (5%), (ii) second, discharge all taxes, levies and assessments, with costs and interest if they have priority over the lien of this Deed of Trust, including the due pro rata portion thereof for the current year, (iii) third, discharge in the order of their priority any remaining debts and obligations secured by this Deed of Trust and any liens encumbering the Property or any part thereof which are inferior to this Deed of Trust, with interest, and (iv) fourth, to pay the residue of the proceeds to the Grantor or its assigns.  At any sale made under the terms of this Deed of Trust, the Trustee may require a cash deposit from the successful bidder of not more than ten percent (10%) of the final amount bid by the successful bidder.

(b)    In the event the Trustee gives notice of such foreclosure or requests publication of an advertisement for such sale, or in the event the Property is advertised for sale as herein provided, but not sold pursuant to such advertisement, the Trustee shall be paid by the Grantor the actual expenses incurred, together with a commission equal to two and one-half percent (2.5%) of the unpaid amount of the obligation hereby secured.

(c)    If, prior to or at the time of the sale, the Trustee shall deem it proper for any reason to postpone or continue the sale, they may do so from time to time, in which event advertisement of the postponed sale shall be in the manner as required by law.

(d)    Prior to the closing of this transaction, Grantor has agreed and does hereby

PG 0391 OCT 18 ᴸ

agree to allow Lender or Noteholder to utilize the services of Scott D. Stolte, as the Trustee in connection with any foreclosure action, notwithstanding that said Trustee is attorney for Lender in this and other transactions.

6.      Action of the Lender.  Without affecting, modifying, altering, releasing or limiting the liability of the Grantor or any person liable or who may become liable on the Note or who has endorsed, assumed, served as a surety for or guaranteed the obligation of the Note, and without affecting, modifying, altering, releasing or limiting the lien of this Deed of Trust or any Loan Document, the Grantor agrees that the following actions may occur at any time and from time to time, whether before, on or after the maturity of the Note, at the option of the Lender, without further notice to or the consent of any party; (i) the maturity date of the Note or any installments thereof may be extended or renewed, in whole or in part, notwithstanding the fact that any extensions or renewals may be for a period or periods equal to, less than or in excess of the original term hereof; (ii) any security for the Note may be sold, released, exchanged, subordinated or otherwise impaired, whether such security be taken at the time of the making of the loan evidenced by the Note or at some other time; (iii) the terms and conditions of the Note and any other Loan Document may be modified or amended or new documents substituted for any of them with the consent of the parties to such document; (iv) any one or more parties liable or who may become liable on the Note or any other Loan Document or who have endorsed, assumed, served as a surety for or guaranteed the obligation of the Note may be released; (v) any indulgence or forbearance whatsoever regarding the Note, this Deed of Trust or any other Loan Document may be granted; and (vi) the Lender may fail to act with diligence or may delay in the collection or enforcement of the Note, this Deed of Trust and the other Loan Documents.

7.      Insurance.   (a) The Grantor shall provide and maintain continuously comprehensive general liability and indemnity insurance coverage as may be required from time to time by the Lender, in forms and amounts and with companies satisfactory to the Lender, including coverage of the Lender as a named insured thereunder and loss payable to the Lender as mortgagee, as appropriate.

(b)     The Grantor shall provide and maintain continuously (i) Builder's risk where applicable and all risk casualty insurance in the full replacement value, on the buildings and other improvements now or hereafter on the Property, or such other casualty insurance of such type or types and in such amounts as the Lender may from time to time require, which may be the full replacement value, on the buildings and other improvements now or hereafter on the Property, (ii) flood insurance, if required by the Lender and (iii) such other insurance and coverage regarding the Property or any other security for the Note required by the Lender in its sole and absolute discretion.

(c)     The Grantor shall promptly pay when due the premiums on the policies referred to in subparagraphs (a) and (b) above, and shall deliver the originals of all such policies, properly endorsed, to the Lender.  All insurance shall be carried with companies approved by the Lender, and the original policies and all renewals thereof shall be held by the Lender, shall be non-cancelable except upon thirty (30) days prior written notice to the Lender and shall have attached thereto a mortgage clause satisfactory to the Lender, without

!*G 0392 &CT 18 ᵉ

contribution, in favor of and in form acceptable to the Lender. Not less than thirty (30) days before the expiration date of each policy of insurance required pursuant to this Paragraph, the Grantor shall deliver to the Lender the original renewal policy or policies marked "premiums paid" or accompanied by other evidence of payment satisfactory to the Lender. In the event that the premiums on the policies referred to in subparagraphs (a) and (b) above are not paid on or before their due date, the Lender shall have the right, but not the obligation, without notice or demand to the Grantor, to pay the same or any of them.

(d)     In the event of a foreclosure of this Deed of Trust or other transfer of title to the Property in extinguishment of the indebtedness secured hereby, all the rights of the Lender in and to all policies of insurance assigned and delivered to Lender shall pass to the purchaser or grantee.

8.     <u>Condition of the Property</u>.  The Grantor agrees (i) that no building or other improvement on the Real Estate shall be altered, removed, demolished or enlarged, nor shall any fixtures or personal property or appliances on, in or about said buildings or improvements be severed, removed, transferred, sold or mortgaged, without the prior written consent of the Lender; (ii) that Grantor shall not permit, commit or allow any nuisance to exist thereon or suffer any waste, impairment or deterioration of the Property or any part thereof; (iii) that Grantor shall keep and maintain the Property and every part thereof, including all buildings, fixtures, machinery and appurtenances, in good and thorough repair and condition, shall effect such repairs as the Lender may reasonably require from time to time; (iv) that Grantor shall make all necessary and proper replacement so that said buildings, fixtures, machinery and appurtenances shall, at all times, be in good condition, fit and proper for the respective purpose for which they were originally erected or installed; (v) that Grantor shall not materially change the use of the Property from the use thereof on the date of this Deed of Trust; and, (vi) that Grantor shall comply with all statutes , orders, ordinances, laws, regulations, requirements or decrees relating to the Property by any federal, state or municipal authority and observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits (including, but not limited to, zoning variances, special exceptions and non-conforming uses), privileges, franchises and concessions which are applicable to the Property or which have been granted to or contracted for by the Grantor in connection with any existing or presently contemplated use of the Property.

9.     <u>Restrictive Covenants, Laws and Regulations</u>.  Grantor further covenants and agrees to comply, solely and exclusively at Grantor's cost and expense, with all current and future laws, restrictive covenants and ordinances and regulations of governmental authorities applicable to the Property, including, but not limited to, such laws and regulations governing the rights of individuals with disabilities, including The Americans with Disabilities Act of 1990, as amended ("ADA") and the Virginians with Disabilities Act, as amended ("VDA"). To the extent required by applicable laws and regulations, the Grantor shall be responsible for the removal of architectural and communications barriers, the provision of auxiliary aids and services, and the modification of policies, practices and procedures with respect to the operation of Grantor's business on the Property. The Grantor further covenants and agrees to indemnify and hold harmless the Lender for any and all costs, expenses, liabilities and

PG 0393 OCT 18 ᵉ

damages, including, but not limited to, court costs and attorneys' fees that the Lender may incur as a result of any breach by the Grantor of its obligations, duties and responsibilities under this Paragraph.

10. **Taxes and Other Liens**. The Grantor agrees to keep the Property free from any and all statutory liens, including, without limitation, mechanics' and materialmen's liens, and to pay before delinquency and before any penalty or interest for non-payment attaches all taxes, assessments, water rates, sewer rents and other governmental, public or municipal charges, dues, fines or impositions and any prior liens now or hereafter assessed or liens on or levied against the Property or any part thereof, and in case of default in the payment thereof when the same shall be due and payable, the Lender shall have the right, but not the obligation, without notice or demand to the Grantor, to pay the same or any of them. Upon request of the Lender, the Grantor shall exhibit to the Lender receipts for the payment of all such items prior to the date when the same shall become delinquent.

**"NOTICE - - - THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED."**

11. **Due on Sale or Transfer**. The Grantor hereby acknowledges that (i) the identity and expertise of the Grantor were and continue to be material circumstances upon which the Lender has relied in connection with, and which constitute valuable consideration to the Lender for the making of the loan evidenced by the Note and (ii) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the indebtedness evidenced by the Note granted to the Lender by this Deed of Trust. Therefore, in the event of a transfer of an interest in the Property without the prior written consent of the Lender, which consent shall be in the Lender's sole and absolute discretion, the Lender, at its option, may declare all sums secured by this Deed of Trust to be immediately due and payable or waive such default and deal with such successor or successors in interest in the same manner as with the Grantor, without in any way releasing, discharging or otherwise affecting the liability of the Grantor hereunder or for the indebtedness hereby secured. Any change in the legal or equitable title of the Property or in the beneficial ownership of the Property, whether or not of record and whether or not for consideration, and any sale, transfer, encumbrance or other disposition of any membership interest in the Grantor shall be deemed a "transfer of an interest in the Property." Without limiting the generality of the foregoing, a "transfer of an interest in the Property" shall also be deemed to have occurred if the Grantor shall sell, assign, transfer, convey, mortgage, encumber, lease or otherwise dispose of or alienate the Property, or any part thereof or any interest therein, whether voluntarily, involuntarily or by operation of law, or engage in subordinate financing with respect thereto prior to the satisfaction of this Deed of Trust or, if the Grantor shall fail to maintain at all times its existence or shall amend or modify its articles of organization or shall issue additional membership interests or if Grantor or any member shall sell, transfer, dispose of or encumber any membership interest without Lender's consent, which shall not be unreasonably withheld, on condition that any additional member or transferee shall execute a Guarantee satisfactory to Lender. No sale of the Property, no forbearance on the part of the Lender, no extension of the time for the payment of the indebtedness secured hereby or any change in

FG 0 3 9 4 · OCT 18 ½

the terms thereof consented to by the Lender shall in any way whatsoever operate to release, discharge, modify, change or affect the original liability of the Grantor named herein, either in whole or in part, nor shall the full force and effect of this Deed of Trust be altered thereby.

12.    Tax and Insurance Escrow.  Upon the request of the Lender, the Grantor shall make monthly deposits with the Lender in a non-interest bearing account in an amount equal to (i) one-twelfth (1/12) of the yearly taxes and assessments which may be levied against the Property and (ii) one-twelfth (1/12) of the yearly premiums for insurance which the Grantor covenants to maintain under the terms of this Deed of Trust.  In the event the Property is a part of a larger tract for purposes of taxes and assessments, the Lender may require the Grantor to have the Property taxed and assessed as a separate parcel, or in the alternative, to make monthly deposits in an amount equal to one-twelfth (1/12) of the yearly taxes and assessments which may be levied against such larger tract.  All such deposits shall be made in such amounts that the Lender shall have such tax and insurance payments in hand at least thirty (30) days prior to the due dates thereof.  Upon the occurrence of an Event of Default, as defined herein, all such escrows of taxes and insurance, at the option of the Lender, shall be applied to any amount advanced or disbursed on behalf of the makers of the Note pursuant to the terms thereof and on behalf of the Grantor pursuant to the terms of this Deed of Trust, then to interest then due and unpaid and thereafter to principal owing thereunder.  The Grantor hereby authorizes the Lender or its designee to request and receive from the treasurer of any city, county or other governmental entity assessing taxes, levies, assessments or other charges against the Property or any part thereof any bills or statements regarding such taxes, levies, assessments or other charges.

13.    Damage and Destruction.  If the Property or any part thereof is damaged by fire, flood or any other hazard against which insurance is held, the Grantor shall immediately notify the Lender of the nature and extent thereof.  The amounts paid by any insurance company pursuant to any contract of insurance shall, to the extent of the indebtedness secured hereby then remaining unpaid, be paid to the Lender notwithstanding the fact that the amount owing thereon may not then be due and payable or that the indebtedness is otherwise adequately secured.  Such amounts, in the sole and absolute discretion and option of the Lender, may be applied, in whole or in part, to the payment of such indebtedness in the inverse order of maturity or released to the Grantor for repairing or rebuilding of the Property under terms and conditions acceptable to the Lender.  The Grantor hereby authorizes the Lender, at its option, to collect, adjust and compromise any losses under any of the insurance aforesaid and after deducting costs of collection, including, but not limited to, its attorneys' fees, to apply the proceeds as aforesaid.

14.    Condemnation.  The Grantor, immediately upon obtaining knowledge of the initiation of any proceeding for the taking, whether the same is temporary or permanent, or damaging by or for any public improvement, condemnation proceeding or the exercise of any power of eminent domain, or deed in lieu thereof, of the Property or any part thereof, shall notify the Lender of such proceeding and shall deliver to the Lender copies of any and all papers served in connection with such proceeding.  The Lender shall have the right, at its option, to participate in such proceeding at the expense of the Grantor (including, without limitation, the Lender's attorneys' fees) and the Grantor shall execute such documents and

PE 0395 OCT 18 ⊆

take such other steps as may be required by the Lender to permit such participation. In the event the Property or any part thereof is taken or damaged by or for any public improvement, condemnation proceeding or the exercise of any power of eminent domain, the entire award or consideration given or paid therefor shall be paid to the Lender, and the Lender is hereby empowered in the name of the Grantor to receive and give acceptance for such award or consideration or any judgment therefor or thereon whether it be joint or several. The entire amount of such award shall be applied by the Lender to the reduction of the indebtedness secured hereby in the inverse order of maturity, notwithstanding the fact that the amount owing thereon may not then be due and payable or that the indebtedness is otherwise adequately secured, or the Lender, at its option, may waive such application and pay such award or consideration or any part thereof over to the Grantor. The Grantor agrees to execute and deliver from time to time such further instruments as may be requested by the Lender to confirm such assignment to the Lender of any such award, payment or proceeds.

15.    <u>Assignment of Leases and Contracts</u>.  To further secure the payment  of the indebtedness evidenced by the Note and all other amounts due and owing under the Loan Documents and to assure the observance and performance of all other terms, warranties, covenants, agreements, conditions and obligations set forth in the Note, this Deed of Trust and the other Loan Documents, the Grantor hereby assigns, conveys, transfers and sets over unto the Lender all and every part of the rents that may from time to time become due and payable on account of any and all leases now existing, or that may hereafter come into existence with respect to the Property or any part thereof, including any guarantees of such leases and a security interest in the proceeds of any contracts for the sale of any of the Property. Upon request of the Lender, the Grantor shall execute and cause to be recorded, at its expense, supplemental or additional assignments of any leases on the Property; provided, however, that neither this assignment nor the acceptance of any such supplemental or additional assignments shall be construed as a consent by the Lender to any such lease or to impose upon the Lender any obligation with respect thereto. The Lender is hereby fully authorized and empowered in its discretion (in addition to all other powers and rights herein granted) to apply for and collect and receive all such rents and enforce such guarantee or guarantees, and all money so received under and by virtue of this assignment shall be held and applied as further security for the payment of the indebtedness secured hereby and to assure the observance and performance of all other terms, warranties, covenants, conditions and obligations hereof, and the obligations secured hereby, after first deducting therefrom such reasonable costs and expenses as may be incurred in and about the collection of said rents and guarantee(s). It is further agreed that the Lender is authorized and empowered to enter upon the Property and to lease it to such person or persons for such purposes and upon such terms as the Lender in its sole and absolute discretion may determine. Without first obtaining on each occasion the prior written approval of the Lender, the Grantor shall not cancel or permit the cancellation of any such lease, modify or permit the modification thereof or apt or permit to be made any prepayment of any installment of rent or other fees thereunder (except for security deposits and the prepayment of rent for not more than one month in advance). The Grantor covenants and warrants that it will comply with all of the terms and conditions of all leases now existing or that may hereafter come into existence with respect to the Property or any part thereof.

PG 0396 OCT 18 ⁰⁰

16.    Security Agreement.  The Grantor hereby grants a security interest in the Property to the Lender. This Deed of Trust, in addition to constituting a lien on real estate, is a security agreement and shall support any financing statement showing the Lender's interest as a secured party with respect to any portion of the Property described in such financing statement. The Grantor, at its sole cost and expense, agrees to execute, deliver and record from time to time such further instruments as may be requested by the Lender to confirm the lien of this Deed of Trust on any fixtures, equipment or other property described in this Deed of Trust. The Lender, in addition to and not in lieu of or in diminution of its rights and remedies herein provided, shall have all of the rights and remedies of a secured party under the Uniform Commercial Code of Virginia, which rights and remedies may be exercised without application to any court to the extent permitted by such code.

17.    Assignment of Contracts and Other Agreements.  To further secure payment of the indebtedness evidenced by the Note and all other amounts due and owing under the Loan Documents and to assure the observance and performance of all other terms, warranties, covenants, agreements, conditions and obligations set forth in the Note, this Deed of Trust and other Loan Documents, the Grantor hereby assigns, conveys, transfers and sets over unto the Lender all of its rights and interests in and to any and all contracts, leases, rental agreements, franchise agreements, management contracts, construction contracts, sales contracts and other contracts, licenses and permits now or hereafter affecting the Property or any part thereof. The Grantor agrees to execute and deliver to the Lender such additional instruments, in form and substance satisfactory to the Lender, as may hereafter be requested by the Lender to evidence and confirm this assignment; provided, however, that neither this assignment nor the acceptance of any such additional or supplemental assignment shall be construed as a consent by the Lender to any contract, lease, rental agreement, franchise agreement, management contract, construction contract or other contract, license or permit or to impose upon the Lender any obligations with respect thereto. Without first obtaining on each occasion the written approval of the Lender, the Grantor shall not cancel or permit the cancellation of any contract, lease, rental agreement, franchise agreement, management contract, construction contract or other contract, license or permit or modify any of these. The Grantor covenants and warrants that it shall comply with all the terms and conditions of all such instruments now existing or that may hereafter come into existence with respect to the Property or any part thereof.

18.    Financial Statements.  If requested to do so by Lender, the Borrower shall furnish the Lender within ten (10) days after request therefor, and, in any event, annually, within ninety (90) days after the close of the calendar year or the Grantor's fiscal year, as the case may be; (i) itemized financial statements covering in reasonable detail the operation of the Property during the preceding year, including a schedule of the total rents received from each tenant leasing any part of the Property and (ii) itemized financial statements of Grantor, including an income statement and balance sheet. The statements shall be prepared by an independent certified public accountant in accordance with generally accepted accounting practices consistently applied and shall be further ratified by such accountant and the Grantor. The Grantor also covenants and agrees to permit the Lender or its agents to examine during normal and usual business hours the books, records and accounts of the Grantor

ΓΒ 0397 ΘCT 18 ⁰

insofar as they relate to the Property, and to make copies thereof.

19.    <u>Access to the Property</u>. The Lender and any persons authorized by the Lender shall have the right to enter and inspect the Property at all reasonable times without notice.

20.    <u>Further Assurances</u>. Upon request the Grantor shall execute, acknowledge, deliver and record and/or file such further instruments and do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Deed of Trust and the other Loan Documents and to subject to the liens and security interests thereof any property intended by the terms thereof to be covered thereby, including specifically, but without limitation, any renewals, additions, substitutions, replacements, or appurtenances to the Property. The Grantor shall pay all such recording, filing, re-recording and re-filing taxes, fees and other charges, including those for security interest searches.

21.    <u>No Waiver</u>. Neither any course of dealing by the Trustee or the Lender nor any failure or delay on their part to exercise any right, power or privilege hereunder shall operate as a waiver hereof; nor shall any single or partial exercise of any right, power, or privilege preclude any other or future exercise thereof or the exercise of any other right, power or privilege.

22.    <u>Maximum Interest Rate/Application of Provisions</u>. No Provision of this Deed of Trust, the Note or the other Loan Documents or any transaction related hereto or thereto shall require the payment or permit the collection of interest or any other amount in excess of the maximum permitted by applicable law. If any excess of interest or any other amount in such respect is herein or in the Note provided for, the Grantor shall not be obligated to pay such interest or any other amounts in excess of the amount permitted by applicable law, and the right to demand the payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Deed of Trust. If any term or provision of this Deed of Trust or an application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed of Trust or the application of such term or provision to persons or circumstances other than those as to whom or which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Deed of Trust shall be valid and enforceable to the fullest extent permitted by law.

23.    <u>Notice</u>. Except as otherwise required by law, all demands, notices, approvals, consents, requests and other communications hereunder shall be in writing and shall be deemed to have been given when delivered in person, or mailed by registered or certified mail, postage prepaid, return receipt requested, or sent by Federal Express (or other commercial express delivery service which provides delivery on the next business day) addressed; (a) if to the Lender, 103 Canterbury Road, Richmond, Virginia 23221 or (b) if to the Grantor, to 2332 Grove Avenue, Richmond, 710 North Hamilton Street, Richmond, Virginia 23221. The Grantor and the Lender may designate, by notice, given as provided for in this paragraph or as otherwise required by law, any further or different addresses to which subsequent demands, notices, approvals, consents, requests or other communications shall be sent or persons to whose attention the same shall be directed.

PG 0398 OCT 18 ☺

24.   <u>Changes in Taxation.</u> In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds of trust or the manner of collecting such taxes so as to affect adversely the Lender, the Grantor shall promptly pay any such tax on or before the due date thereof. If the Grantor fails to make such prompt payment or if any such state, federal, municipal or other governmental law, order, rule or regulation prohibits the Grantor from making such payment or would penalize the Lender if the Grantor makes such payment, then the entire balance of the principal sum secured by this Deed of Trust and all interest accrued thereon shall immediately become due and payable at the option of the Lender.

25.   <u>Rights and Remedies Cumulative.</u> The rights and remedies arising under and contained in this Deed of Trust shall be separate, distinct and cumulative and none of them shall be in exclusion of the other. All remedies arising under or contained in this Deed of Trust shall be in addition to every other remedy now or hereafter existing at law, in equity or by statute.

26.   <u>Construction.</u> The covenants and agreements herein contained shall bind, and the benefits shall inure to, the respective heirs, legal and personal representatives, executors, administrators, successors and assigns of the parties hereto. Whenever used herein, the singular shall include the plural and the plural the singular, and the use of any gender shall include all other genders. As used in this Deed of Trust, the term "Lender" shall mean the Lender named herein, any future payee of the indebtedness evidenced by the Note and any transferee of the Note, whether by operation of law or otherwise. The headings of the Paragraphs of this Deed of Trust are for convenience of reference only and are not considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

27.   <u>Hazardous Materials.</u> (a) For the purposes of this Paragraph, "Hazardous Material" means and includes petroleum products and/or any hazardous, toxic or dangerous waste, substance or material defined as such in (or for the purposes of) the "Environmental Laws." For the purposes of this Paragraph, "Environmental Laws" means the comprehensive Environmental Response, Compensation and Liability Act, any "Super Fund" or "Super Lien" Law, or any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree, regulating, relating to or imposing liability or standards of conduct concerning any petroleum products and/or hazardous, toxic or dangerous waste, substance or material, as may now or at any time hereafter be in effect.

(b)   The Grantor represents and warrants that the Property is presently in compliance with all Environmental Laws, that there are no facts or circumstances presently existing upon or under the Property or relating to the Property which may violate any applicable Environmental Laws, and there is not now pending, or, to the best knowledge of the Grantor, threatened, any action, suit, investigation, claim or proceeding, nor investigation or review by any governmental authority, against the Grantor or the Property (or against any other party relating to the Property) seeking to enforce any right or remedy under any of the Environmental laws. There is no outstanding order, rule, judgment, writ, injunction or decree of any court, government, governmental agency or arbitrator against or affecting the Grantor

PG 0399 OCT 18 ⍣

with respect to the Property. The information contained in the Environmental Questionnaire and Disclosure Statement previously furnished to the Lender by the Grantor is true and correct to the best of its knowledge as of the date thereof. Notwithstanding the foregoing, if any such information is false or misleading in a material respect, it shall be an Event of Default, as defined herein.

(c)    The Grantor and the Grantor's tenants on the Property (the "Tenants") have obtained all necessary governmental licenses, permits and approvals legally required or material to the conduct of each of their businesses as now conducted, including, without limitation, all Environmental Laws with respect to the registration and testing of underground or aboveground storage tanks, such licenses, permits and approvals are in full force and effect and the Grantor and the Tenants have complied with all applicable laws, regulations and restrictions relating to each of their businesses, including the terms and conditions of such governmental licenses, permits and approvals.

(d)    The Grantor and the Tenants have obtained and will at all times continue to obtain and/or maintain all licenses, permits and/or other governmental or regulatory actions necessary to comply with all Environmental Laws (the "Permits"). The Grantor and the Tenants are in full compliance with the terms and provisions of the Permits and will continue to comply with the terms and provisions of the Permits.

(e)    Neither the Grantor nor the tenants has received notice of or is otherwise aware that certain facts, events or conditions, interfere with or prevent continued compliance with or give rise to any common law or legal liability under any law or regulation related to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling, or the emission, discharge, release or threatened released into the environment of any Hazardous Material.

(f)    The Grantor and the Tenants have not and will not engage in any activities that constitute spilling, leaking, emitting, discharging, injecting, dumping or disposing into the environment above, below or surrounding the Property of any Hazardous Material and shall otherwise comply with all Environmental Laws relating to the Property.

(g)    The Grantor hereby agrees to indemnify the Lender and hold harmless the Lender from and against any and all losses, liabilities, damages, injuries, costs, expenses and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against the Lender for, with respect to or as a direct or indirect result of (i) the presence on or under, or the escape, seepage, leakage, spill, discharge, emission or release from the Property of any Hazardous Material (including, without limitation, any losses, liabilities, damages, injuries, costs, expenses, or claims asserted or arising under any Environmental Laws), whether or not caused by or within the control of the Grantor; (ii) the violation of any Environmental laws relating to or affecting the Property, whether or not caused by or within the control of the Property; (iii) the failure by the Grantor to comply fully with the terms and provisions of this Paragraph; (iv) any warranty or representation made by the Grantor in this Paragraph being false or untrue in any material respect; and (v) any and all costs, expenses, settlement payments or judgments (including, without limitation, reasonable attorneys' fees,

PG 0400 OCT 18

accountants' and other professional fees and costs) incurred by the Lender and its successors and assigns in connection with any Action, as hereinafter defined, or any claim or judgment incident to any of the matters indemnified against under this Paragraph.

(h)    The Grantor shall give prompt written notice to the Lender of any order or pending or threatened action by any regulatory agency or other governmental body, or any claim made by any third party, relating to Hazardous Materials on or emanating from the Property, and shall promptly furnish the Lender with copies of any notice, correspondence, legal pleading or other written communication in connection therewith.

(i)    In the event any claim, action, suit or proceeding with respect to which the Grantor may have liability under this Paragraph (the "Action") is brought against the Grantor, the Action shall be defended by counsel chosen by the Grantor at the sole cost and expense of the Grantor. In the event any Action is brought against the Grantor or the Lender, the Lender shall have the right to be represented by its own counsel, at the Grantor's sole cost and expense, and shall be kept fully informed as to the Action at all stages thereof. The Grantor shall make available to the Lender and its attorneys all records of the Grantor relating to the Action and the Grantor agrees to render to the Lender such assistance as it may reasonably require of the Grantor in order to participate in the proper and adequate defense of the Action. The Grantor shall not make any settlement of any Action without the prior written consent of the Lender.

(j)    Any and all amounts owed to the Lender pursuant to this Paragraph, with interest at the rate provided in the Note for default, shall be secured by this Deed of Trust.

(k)    The Lender shall have the right, but not the obligation, to undertake any action necessary to remedy any failure by the Grantor to comply fully with the terms and provisions of this Paragraph, and all sums paid or expended by the Lender in doing so, together with interest thereon at the rate provided in the Note, shall be payable by the Grantor to the Lender upon demand and shall be secured by this Deed of Trust as a further charge and lien upon the Property and held to be a prior charge in the event of foreclosure.

(l)    The Grantor acknowledges that the Lender has agreed to make the Loan in reliance upon the Grantor's representations, warranties and covenants contained in this Paragraph. All representations, warranties and covenants of this Paragraph (including, without limitation, the indemnification provisions hereof) shall continue in full force and effect and shall survive the payment and/or cancellation of the Note and/or the cancellation of record or foreclosure of the Deed of Trust and/or the execution of a deed in lieu thereof.

28.    <u>Event of Default Defined</u>. An Event of Default or Default as such terms are used herein shall mean:

(a)    failure to pay when due any sum due pursuant to the Note or this Deed of Trust;

(b)    failure to observe any of the terms, covenants, conditions and

Page 15 of 17

PG 0 4 0 1 OCT 18 ℗

agreements of the Note or this Deed of Trust;

      (c)    Inability of Grantor to pay Grantor's debts when due, the insolvency of Grantor or the institution of proceedings by or against Grantor in bankruptcy;

      (d)    default by Grantor in the payment or performance of any other deed of trust encumbering the Property;

      (e)    any default, breach of warranty or representation under any other document which evidences, secures or guarantees the payment of the indebtedness secured by this Deed of Trust or related to the Loan;

      (f)    Grantor's failure to pay, perform or comply with any other obligation of the Grantor to the Lender; and

      (g)    any other event defined in this Deed of Trust as a Default.

      (h)    default by the Borrower or Grantor in the terms of the Loan Agreement.

      (i)    Default in any other loan made by the Lender to the Borrower or any entity in which the Borrower or Robert E. Hicks is a member or for which Robert E. Hicks is a guarantor.

29.    <u>Miscellaneous</u>.

      (a)    No amendment, modification, cancellation or discharge hereof shall be valid unless the Lender consents thereto in writing.

      (b)    This Deed of Trust shall be governed by and interpreted in accordance with the laws of the Commonwealth of Virginia.

WITNESS the following signatures:

Renew Properties, LLC
a Virginia limited liability company

By:_____
    Robert E. Hicks, Sole Member/Manager

PG 0402 OCT 18 '2

**COMMONWEALTH OF VIRGINIA**
**CITY OF RICHMOND, to-wit:**

The foregoing instrument was acknowledged before me this 17th day of October, 2017
by Robert E. Hicks, Sole Member/Manager of Renew Properties, LLC.

My Commission Expires: 4/30/20___ Registration Number: 7346065

Notary Public



INSTRUMENT #160020427
RECORDED IN THE CLERK'S OFFICE OF
CITY OF RICHMOND ON
OCTOBER 18, 2016 AT 12:35PM

EDWARD F. JEWETT, CLERK
RECORDED BY: TMG

Page 17 of 17

PG 0 2 9 7 NOV 20

This instrument was prepared by
and return after recordation to:
Scott D. Stolte, Esquire
Ayers & Stolte, P.C.
710 North Hamilton Street
Richmond, Virginia 23221
(804) 358-4731

17 - 24344



EXHIBIT

C

Parcel Identification Number: W000-0732/022

A portion of this conveyance is exempt from recordation tax said recordation
tax having been paid on the sum of $675,000.00 on October 18,2016 an additional
recordation tax is due based upon the sum of $150,000.00.

### MODIFICATION TO CREDIT LINE DEED OF TRUST,
### ASSIGNMENT OF LEASES RENTS AND PROFITS
### & SECURITY AGREEMENT

THIS MODIFICATION TO CREDIT LINE DEED OF TRUST, ASSINGMENT OF LEASES
RENTAS AND PROFITS AND SECURITY AGREEMENT (the "Deed of Trust"), is made as of
this 14th day of August, 2017, by and among **RENEW PROPERTIES, LLC,** a Virginia limited
liability company, (the "Grantor"); SCOTT D. **STOLTE** AND ALEXANDER H. **AYERS**, both of
whom have a mailing address of 710 North Hamilton Street, Richmond, Virginia 23221,
Trustees (the "Trustee"), and **STONEBRIDGE INVESTMENT COMPANY, LLC,** a Virginia
limited liability company, its successors or assigns (the "Lender", sometimes herein
"Noteholder"), provides as follows:

### THIS IS A CREDIT LINE DEED OF TRUST

This is a credit line deed of trust as defined in Section 55-58.2 of the Code of Virginia of
1950 (as amended). The name of the Noteholder is Stonebridge Investment Company, LLC, a
Virginia limited liability company and the address of the Noteholder to which notices
permitted under Section 55-58.2 may be sent is 103 Canterbury Road, Richmond, Virginia
23221. The maximum aggregate amount of principal to be secured hereby at any one time is
**Eight Hundred Twenty-Five Thousand And No/100 Dollars ($825,000.00).**

WITNESSETH, That Grantor hereby grants and conveys with General Warranty and
English Covenants of Title unto the Trustee a first lien security interest in the real property
located in the City of Richmond, Virginia, and more particularly described as follows, to-wit:

### 1702 Grove Avenue, Richmond, Virginia 23220

ALL that parcel of land, in the City of Richmond, Virginia, on the northern line
of Grove Avenue, between Vine Street and Allen Avenue, together with all the

Page 1 of 17

PB 0298 NOV 20 ⊏

improvements on said parcel and appurtenances thereto belonging, known as No. 1702 Grove Avenue and bounded as follows, to-wit:

BEGINNING on the northern line of Grove Avenue at a point distant thereon 28 feet westwardly from the western line of Vine Street, and from said point running westwardly along and fronting on the northern line of Grove Avenue 28 feet 7 inches, and from said front extending back northwardly between parallel lines 126 feet to an alley in common 13 feet wide.

BEING the same real estate conveyed to Renew Properties, LLC by Deed from George A. Warthen, II, executor of the Estate of Sue Lee Profitt Yeatts, aka Sue Lee Yeatts, dated October 13, 2016 and recorded in the Clerk's Office, Circuit Court, City of Richmond, Virginia immediately prior hereto.

TOGETHER WITH all tenements, hereditaments, easements, rights, privileges, appurtenances and rights of way now or hereafter belonging or in any way pertaining to the above-referenced real estate and the remainder and remainders, reversion or reversions thereof; all the estate, right, title, interest, issues, profits, proceeds, revenues, royalties and benefits accruing or to accrue therefrom; and all property and each and every claim and demand whatsoever of each Grantor of, in and to the same, and of, in and to every part and parcel thereof.

TOGETHER WITH all right, title, interest, property, claim and demand of the each Grantor, if any, in and to the land lying in the bed of any street, road, avenue or alley in front of, adjoining or provides ingress to or egress from the Real Estate, and all utility easements and off-site utility easements serving or intended to serve the Real Estate.

All of the above Real Estate and other property and interests therein are hereinafter referred to as the "Property".

TOGETHER WITH all proceeds of the conversion, whether voluntary or involuntary, of any of the Property into Cash or other liquid claims, including, without limitation, all awards, payments or proceeds, including interest thereon, and the right to receive the same, which may be as the result of any casualty, any exercise of the right of eminent domain or deed in lieu thereof, the alteration of the grade of any street, any injury to or decrease in the value of the Property and any defect in title to the Property or other matter insured under a policy of title insurance, together with counsel fees, costs and disbursements incurred by the Lender in connection with the collection of such awards, payments and proceeds.

TO HAVE AND TO HOLD the same, whether now owned or held or hereafter acquired, unto the Trustee, their survivor or other successor or successors and assigns IN TRUST forever.

IN TRUST, to secure to the Lender (i) the payment of all sums owing under that certain 675,000.00 Commercial Deed of Trust Note dated October 17, 2016 and that certain $150,000.00 Commercial Deed of Trust Note (collectively "the Note") bearing even date

herewith, made by Renew Properties, LLC (the "Borrower"), to Stonebridge Investment Company, LLC, a Virginia limited liability company, or order at 103 Canterbury Road, Richmond, Virginia 23221, or at such other place as the holder thereof may otherwise specify in writing, from time to time, which Note evidences an indebtedness of the Borrower to the said Stonebridge Investment Company, LLC a Virginia limited liability company in a principal amount not to exceed **Eight Hundred Twenty-Five Thousand And No/100 Dollars ($825,000.00)**, together with interest on the unpaid balance thereof until paid, and any cost related thereto pursuant to the terms and conditions set forth in the Note, and (ii) the payment of all other sums owed to the Lender by the Borrower or which are otherwise payable pursuant to this Deed of Trust, and (iii) the performance and observation of all the terms, covenants, warranties, conditions, agreements and obligations of the Note and this Deed of Trust.

The privilege to prepay the indebtedness secured hereby is reserved as provided in the Note, as are any conditions, premiums and prepayment closed periods related thereto.

The Note provides that unless there is an earlier default, the entire principal balance with accrued and unpaid interest thereon and other charges due thereunder shall be due and payable in full on DEMAND.

The Note provides that the Lender may collect a late charge equal to five cents ($.05) for each dollar ($1.00) of any payment or interest not made within five (5) days of the date due including maturity as scheduled or accelerated due to default.

The Note provides In the event of a default under the Note or event of default under any of the other Loan Documents the Noteholder shall have the right to accelerate the payments and all sums due under the Note and declare the entire indebtedness evidenced by the Note immediately due and payable.

The Note provides that interest shall be payable on all past due and unpaid principal and interest owing under the Note at the rate of eighteen percent (18%) per annum.

**PROVIDED ALWAYS** that upon full payment of the Note, with interest thereon and all other amounts due thereunder and under this Deed of Trust and the observance and performance of each and every term, warranty, covenant, condition and obligation of the Note and this Deed of Trust, the Noteholder shall execute and deliver the paid Note and a Certificate of Satisfaction to each Grantor or the Trustee shall release and reconvey the Property unto the Grantor, all at the sole expense of the Grantor.

**THE GRANTOR FURTHER COVENANTS AND AGREES** as follows:

1. <u>Payment and Performance by the Grantor.</u>  The Grantor shall pay punctually the principal, interest, late charge (if any), premium (if any) and all other amounts due under the Note, this Deed of Trust and the other Loan Documents on the Grantor's part to be paid. The Grantor shall also observe and perform all the other terms, covenants, warranties, agreements, conditions and obligations of the Note, this Deed of Trust and all other Loan

PG 0300 NOV 20 ☰

Documents on the Grantor's part to be observed and performed. As used herein, the term "Loan Documents" shall refer collectively to the Note, this Deed of Trust and any other deed of trust, security agreement, assignment of leases, rents and profits, the Guarantees and any other agreements or instruments which now or subsequently may be executed in connection with the indebtedness evidenced by the Note.

2.    Costs, Expenses and Fees. (a) The Grantor agrees to pay all costs and expenses of the Lender, including reasonable attorneys' fees, (i) if after default the Note is placed in the hands of an attorney or attorneys for collection, (ii) if the Lender finds it necessary or desirable to secure the services or advice of one or more attorneys with regard to collection of the Note or to the protection of its rights under the Note, this Deed of Trust or any other Loan Document or (iii) if the Lender seeks to have the Property abandoned by or reclaimed from any estate in bankruptcy or attempts to have any stay or injunction prohibiting the enforcement or collection of the Note, prohibiting the foreclosure of this Deed of Trust or prohibiting the enforcement of this Deed of Trust or any other Loan Document lifted by any bankruptcy or other court.

(b)    In the event that the Trustee or the Lender shall be made a party to or shall intervene in any action or proceeding, whether in court or before any governmental agency, affecting the Property or the title thereto or the interest of the Trustee or the Lender under this Deed of Trust, including, without limitation, any form of condemnation or eminent domain proceeding, the Grantor shall reimburse the Trustee and the Lender for all costs, charges and attorneys' fees incurred by any of them.

(c)    In the event of any default by the Grantor in the performance of any term, warranty, covenant, condition or obligation hereunder, the Lender may, at its option, advance or disburse funds for the performance of such term, warranty, covenant, condition or obligation. The Grantor shall reimburse the Lender for all such monies advanced or disbursed by the Lender for performance of any defaulted term, warranty, covenant, condition or obligation of the Grantor.

(d)    All payments to be paid or reimbursed to the Lender by the Grantor as set forth in subparagraphs (a), (b) and (c) above and all expenses, charges, counsel fees and other disbursements incurred by the Trustee, or either of them, with respect to the administration and execution of the trusts hereby created and the performance of their duties and powers hereunder (i) shall bear interest at the rate of eighteen percent (18%) per annum or at the rate provided in the Note, whichever is greater, (ii) shall be due and payable immediately upon demand and (iii) shall be secured by this Deed of Trust as a further charge and lien upon the Property and held to be a prior charge in the event of foreclosure.

3.    Incorporation of Statute. This Deed of Trust, unless otherwise specified herein, shall be construed under and in accordance with and incorporate by reference the terms of Section 55-59 through Section 55-60, inclusive and Section 55-63 of the Code of Virginia of 1950, as amended, as its provisions are in force and in effect on the date of this Deed of Trust, with the following and further understandings as in such sections provided:

PURCHASE MONEY.

EXEMPTION WAIVED.

RENEWAL, EXTENSION OR REINSTATEMENT PERMITTED.

SUBJECT TO ALL UPON DEFAULT.

4.    Substitution of Trustee. Any one of the Trustee hereunder may act at any time upon designation by the Lender. If the Lender, in its sole and absolute discretion, shall desire for any reason whatsoever to have a substitute trustee or substitute Trustee appointed, then the Lender is hereby authorized and empowered to appoint, at any time and from time to time, by an instrument duly executed and acknowledged and filed for recordation wherever this Deed of Trust is recorded, a substitute trustee or substitute Trustee, in the place and stead of one or more of those initially named herein or subsequently appointed by the Lender, which trustee or Trustee shall have all the rights, powers and authority and be charged with all the duties and responsibilities that are conferred or charged upon the Trustee initially named herein.

5.    Foreclosure. The Note is secured by the Property conveyed hereby and other real estate. The Trustee may proceed against any item of or all of the Collateral simultaneously or in any sequence that the Trustee deems appropriate. (a) Upon the occurrence of an Event of Default (as defined herein) and at the request of the Lender, the Trustee (or either of them) shall sell the Property, or, if the Property shall consist of more than one parcel, such parcel or parcels thereof as the Lender may select, for cash or upon such terms and conditions as they may deem expedient, such sale shall be at such time and place as they may consider advisable, at public auction, after having first given notice to the present owner of the Property as required by law. The Trustee shall advertise the time, place and terms of sale at least three (3) times, which may be on three (3) consecutive days, in a newspaper having general circulation in the county or city where the Property or any portion thereof lies. Out of the proceeds of any such sale, the Trustee shall (i) first, pay all the expenses attending the execution of this trust, including attorneys' fees and auctioneers' fees, if any, and Trustee commission on the gross proceeds of sale at the rate of five percent (5%), (ii) second, discharge all taxes, levies and assessments, with costs and interest if they have priority over the lien of this Deed of Trust, including the due pro rata portion thereof for the current year, (iii) third, discharge in the order of their priority any remaining debts and obligations secured by this Deed of Trust and any liens encumbering the Property or any part thereof which are inferior to this Deed of Trust, with interest, and (iv) fourth, to pay the residue of the proceeds to the Grantor or its assigns. At any sale made under the terms of this Deed of Trust, the Trustee may require a cash deposit from the successful bidder of not more than ten percent (10%) of the final amount bid by the successful bidder.

(b)    In the event the Trustee gives notice of such foreclosure or requests publication of an advertisement for such sale, or in the event the Property is advertised for sale as herein provided, but not sold pursuant to such advertisement, the Trustee shall be paid by the Grantor the actual expenses incurred, together with a commission equal to two and one-half

percent (2.5%) of the unpaid amount of the obligation hereby secured.

(c)     If, prior to or at the time of the sale, the Trustee shall deem it proper for any reason to postpone or continue the sale, they may do so from time to time, in which event advertisement of the postponed sale shall be in the manner as required by law.

(d)     Prior to the closing of this transaction, Grantor has agreed and does hereby agree to allow Lender or Noteholder to utilize the services of Scott D. Stolte, as the Trustee in connection with any foreclosure action, notwithstanding that said Trustee is attorney for Lender in this and other transactions.

6.     Action of the Lender.  Without affecting, modifying, altering, releasing or limiting the liability of the Grantor or any person liable or who may become liable on the Note or who has endorsed, assumed, served as a surety for or guaranteed the obligation of the Note, and without affecting, modifying, altering, releasing or limiting the lien of this Deed of Trust or any Loan Document, the Grantor agrees that the following actions may occur at any time and from time to time, whether before, on or after the maturity of the Note, at the option of the Lender, without further notice to or the consent of any party; (i) the maturity date of the Note or any installments thereof may be extended or renewed, in whole or in part, notwithstanding the fact that any extensions or renewals may be for a period or periods equal to, less than or in excess of the original term hereof; (ii) any security for the Note may be sold, released, exchanged, subordinated or otherwise impaired, whether such security be taken at the time of the making of the loan evidenced by the Note or at some other time; (iii) the terms and conditions of the Note and any other Loan Document may be modified or amended or new documents substituted for any of them with the consent of the parties to such document; (iv) any one or more parties liable or who may become liable on the Note or any other Loan Document or who have endorsed, assumed, served as a surety for or guaranteed the obligation of the Note may be released; (v) any indulgence or forbearance whatsoever regarding the Note, this Deed of Trust or any other Loan Document may be granted; and (vi) the Lender may fail to act with diligence or may delay in the collection or enforcement of the Note, this Deed of Trust and the other Loan Documents.

7.     Insurance.  (a) The Grantor shall provide and maintain continuously comprehensive general liability and indemnity insurance coverage as may be required from time to time by the Lender, in forms and amounts and with companies satisfactory to the Lender, including coverage of the Lender as a named insured thereunder and loss payable to the Lender as mortgagee, as appropriate.

(b)     The Grantor shall provide and maintain continuously (i) Builder's risk where applicable and all risk casualty insurance in the full replacement value, on the buildings and other improvements now or hereafter on the Property, or such other casualty insurance of such type or types and in such amounts as the Lender may from time to time require, which may be the full replacement value, on the buildings and other improvements now or hereafter on the Property, (ii) flood insurance, if required by the Lender and (iii) such other insurance and coverage regarding the Property or any other security for the Note required by the Lender in its sole and absolute discretion.

<strong>Page 6 of 17</strong>

PG 303 NOV 20

(c)   The Grantor shall promptly pay when due the premiums on the policies referred to in subparagraphs (a) and (b) above, and shall deliver the originals of all such policies, properly endorsed, to the Lender.  All insurance shall be carried with companies approved by the Lender, and the original policies and all renewals thereof shall be held by the Lender, shall be non-cancelable except upon thirty (30) days prior written notice to the Lender and shall have attached thereto a mortgage clause satisfactory to the Lender, without contribution, in favor of and in form acceptable to the Lender.  Not less than thirty (30) days before the expiration date of each policy of insurance required pursuant to this Paragraph, the Grantor shall deliver to the Lender the original renewal policy or policies marked "premiums paid" or accompanied by other evidence of payment satisfactory to the Lender.  In the event that the premiums on the policies referred to in subparagraphs (a) and (b) above are not paid on or before their due date, the Lender shall have the right, but not the obligation, without notice or demand to the Grantor, to pay the same or any of them.

(d)   In the event of a foreclosure of this Deed of Trust or other transfer of title to the Property in extinguishment of the indebtedness secured hereby, all the rights of the Lender in and to all policies of insurance assigned and delivered to Lender shall pass to the purchaser or grantee.

8.   <u>Condition of the Property</u>.  The Grantor agrees (i) that no building or other improvement on the Real Estate shall be altered, removed, demolished or enlarged, nor shall any fixtures or personal property or appliances on, in or about said buildings or improvements be severed, removed, transferred, sold or mortgaged, without the prior written consent of the Lender; (ii) that Grantor shall not permit, commit or allow any nuisance to exist thereon or suffer any waste, impairment or deterioration of the Property or any part thereof; (iii) that Grantor shall keep and maintain the Property and every part thereof, including all buildings, fixtures, machinery and appurtenances, in good and thorough repair and condition, shall effect such repairs as the Lender may reasonably require from time to time; (iv) that Grantor shall make all necessary and proper replacement so that said buildings, fixtures, machinery and appurtenances shall, at all times, be in good condition, fit and proper for the respective purpose for which they were originally erected or installed; (v) that Grantor shall not materially change the use of the Property from the use thereof on the date of this Deed of Trust; and, (vi) that Grantor shall comply with all statutes , orders, ordinances, laws, regulations, requirements or decrees relating to the Property by any federal, state or municipal authority and observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits (including, but not limited to, zoning variances, special exceptions and non-conforming uses), privileges, franchises and concessions which are applicable to the Property or which have been granted to or contracted for by the Grantor in connection with any existing or presently contemplated use of the Property.

9.   <u>Restrictive Covenants, Laws and Regulations</u>.  Grantor further covenants and agrees to comply, solely and exclusively at Grantor's cost and expense, with all current and future laws, restrictive covenants and ordinances and regulations of governmental authorities applicable to the Property, including, but not limited to, such laws and regulations governing

PB 0304 NOV 20

the rights of individuals with disabilities, including The Americans with Disabilities Act of 1990, as amended ("ADA") and the Virginians with Disabilities Act, as amended ("VDA"). To the extent required by applicable laws and regulations, the Grantor shall be responsible for the removal of architectural and communications barriers, the provision of auxiliary aids and services, and the modification of policies, practices and procedures with respect to the operation of Grantor's business on the Property. The Grantor further covenants and agrees to indemnify and hold harmless the Lender for any and all costs, expenses, liabilities and damages, including, but not limited to, court costs and attorneys' fees that the Lender may incur as a result of any breach by the Grantor of its obligations, duties and responsibilities under this Paragraph.

10.    Taxes and Other Liens.  The Grantor agrees to keep the Property free from any and all statutory liens, including, without limitation, mechanics' and materialmen's liens, and to pay before delinquency and before any penalty or interest for non-payment attaches all taxes, assessments, water rates, sewer rents and other governmental, public or municipal charges, dues, fines or impositions and any prior liens now or hereafter assessed or liens on or levied against the Property or any part thereof, and in case of default in the payment thereof when the same shall be due and payable, the Lender shall have the right, but not the obligation, without notice or demand to the Grantor, to pay the same or any of them. Upon request of the Lender, the Grantor shall exhibit to the Lender receipts for the payment of all such items prior to the date when the same shall become delinquent.

**"NOTICE - - - THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED."**

11.    Due on Sale or Transfer.  The Grantor hereby acknowledges that (i) the identity and expertise of the Grantor were and continue to be material circumstances upon which the Lender has relied in connection with, and which constitute valuable consideration to the Lender for the making of the loan evidenced by the Note and (ii) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the indebtedness evidenced by the Note granted to the Lender by this Deed of Trust.  Therefore, in the event of a transfer of an interest in the Property without the prior written consent of the Lender, which consent shall be in the Lender's sole and absolute discretion, the Lender, at its option, may declare all sums secured by this Deed of Trust to be immediately due and payable or waive such default and deal with such successor or successors in interest in the same manner as with the Grantor, without in any way releasing, discharging or otherwise affecting the liability of the Grantor hereunder or for the indebtedness hereby secured.  Any change in the legal or equitable title of the Property or in the beneficial ownership of the Property, whether or not of record and whether or not for consideration, and any sale, transfer, encumbrance or other disposition of any membership interest in the Grantor shall be deemed a "transfer of an interest in the Property."  Without limiting the generality of the foregoing, a "transfer of an interest in the Property" shall also be deemed to have occurred if the Grantor shall sell, assign, transfer, convey, mortgage, encumber, lease or otherwise dispose of or alienate the Property, or any part thereof or any interest therein, whether voluntarily, involuntarily or by operation of law, or engage in subordinate financing with respect thereto

PG C 3 0 5  NOV 20 C

prior to the satisfaction of this Deed of Trust or, if the Grantor shall fail to maintain at all times its existence or shall amend or modify its articles of organization or shall issue additional membership interests or if Grantor or any member shall sell, transfer, dispose of or encumber any membership interest without Lender's consent, which shall not be unreasonably withheld, on condition that any additional member or transferee shall execute a Guarantee satisfactory to Lender. No sale of the Property, no forbearance on the part of the Lender, no extension of the time for the payment of the indebtedness secured hereby or any change in the terms thereof consented to by the Lender shall in any way whatsoever operate to release, discharge, modify, change or affect the original liability of the Grantor named herein, either in whole or in part, nor shall the full force and effect of this Deed of Trust be altered thereby.

12.    <u>Tax and Insurance Escrow</u>.  Upon the request of the Lender, the Grantor shall make monthly deposits with the Lender in a non-interest bearing account in an amount equal to (i) one-twelfth (1/12) of the yearly taxes and assessments which may be levied against the Property and (ii) one-twelfth (1/12) of the yearly premiums for insurance which the Grantor covenants to maintain under the terms of this Deed of Trust.  In the event the Property is a part of a larger tract for purposes of taxes and assessments, the Lender may require the Grantor to have the Property taxed and assessed as a separate parcel, or in the alternative, to make monthly deposits in an amount equal to one-twelfth (1/12) of the yearly taxes and assessments which may be levied against such larger tract. All such deposits shall be made in such amounts that the Lender shall have such tax and insurance payments in hand at least thirty (30) days prior to the due dates thereof. Upon the occurrence of an Event of Default, as defined herein, all such escrows of taxes and insurance, at the option of the Lender, shall be applied to any amount advanced or disbursed on behalf of the makers of the Note pursuant to the terms thereof and on behalf of the Grantor pursuant to the terms of this Deed of Trust, then to interest then due and unpaid and thereafter to principal owing thereunder. The Grantor hereby authorizes the Lender or its designee to request and receive from the treasurer of any city, county or other governmental entity assessing taxes, levies, assessments or other charges against the Property or any part thereof  any bills or statements regarding such taxes, levies, assessments or other charges.

13.    <u>Damage and Destruction</u>. If the Property or any part thereof is damaged by fire, flood or any other hazard against which insurance is held, the Grantor shall immediately notify the Lender of the nature and extent thereof.  The amounts paid by any insurance company pursuant to any contract of insurance shall, to the extent of the indebtedness secured hereby then remaining unpaid, be paid to the Lender notwithstanding the fact that the amount owing thereon may not then be due and payable or that the indebtedness is otherwise adequately secured.  Such amounts, in the sole and absolute discretion and option of the Lender, may be applied, in whole or in part, to the payment of such indebtedness in the inverse order of maturity or released to the Grantor for repairing or rebuilding of the Property under terms and conditions acceptable to the Lender.  The Grantor hereby authorizes the Lender, at its option, to collect, adjust and compromise any losses under any of the insurance aforesaid and after deducting costs of collection, including, but not limited to, its attorneys' fees, to apply the proceeds as aforesaid.

14.    <u>Condemnation</u>.  The Grantor, immediately upon obtaining knowledge of the

PG 0306 NOV 20 5

initiation of any proceeding for the taking, whether the same is temporary or permanent, or damaging by or for any public improvement, condemnation proceeding or the exercise of any power of eminent domain, or deed in lieu thereof, of the Property or any part thereof, shall notify the Lender of such proceeding and shall deliver to the Lender copies of any and all papers served in connection with such proceeding. The Lender shall have the right, at its option, to participate in such proceeding at the expense of the Grantor (including, without limitation, the Lender's attorneys' fees) and the Grantor shall execute such documents and take such other steps as may be required by the Lender to permit such participation. In the event the Property or any part thereof is taken or damaged by or for any public improvement, condemnation proceeding or the exercise of any power of eminent domain, the entire award or consideration given or paid therefor shall be paid to the Lender, and the Lender is hereby empowered in the name of the Grantor to receive and give acceptance for such award or consideration or any judgment therefor or thereon whether it be joint or several. The entire amount of such award shall be applied by the Lender to the reduction of the indebtedness secured hereby in the inverse order of maturity, notwithstanding the fact that the amount owing thereon may not then be due and payable or that the indebtedness is otherwise adequately secured, or the Lender, at its option, may waive such application and pay such award or consideration or any part thereof over to the Grantor. The Grantor agrees to execute and deliver from time to time such further instruments as may be requested by the Lender to confirm such assignment to the Lender of any such award, payment or proceeds.

15.    Assignment of Leases and Contracts. To further secure the payment of the indebtedness evidenced by the Note and all other amounts due and owing under the Loan Documents and to assure the observance and performance of all other terms, warranties, covenants, agreements, conditions and obligations set forth in the Note, this Deed of Trust and the other Loan Documents, the Grantor hereby assigns, conveys, transfers and sets over unto the Lender all and every part of the rents that may from time to time become due and payable on account of any and all leases now existing, or that may hereafter come into existence with respect to the Property or any part thereof, including any guarantees of such leases and a security interest in the proceeds of any contracts for the sale of any of the Property. Upon request of the Lender, the Grantor shall execute and cause to be recorded, at its expense, supplemental or additional assignments of any leases on the Property; provided, however, that neither this assignment nor the acceptance of any such supplemental or additional assignments shall be construed as a consent by the Lender to any such lease or to impose upon the Lender any obligation with respect thereto. The Lender is hereby fully authorized and empowered in its discretion (in addition to all other powers and rights herein granted) to apply for and collect and receive all such rents and enforce such guarantee or guarantees, and all money so received under and by virtue of this assignment shall be held and applied as further security for the payment of the indebtedness secured hereby and to assure the observance and performance of all other terms, warranties, covenants, conditions and obligations hereof, and the obligations secured hereby, after first deducting therefrom such reasonable costs and expenses as may be incurred in and about the collection of said rents and guarantee(s). It is further agreed that the Lender is authorized and empowered to enter upon the Property and to lease it to such person or persons for such purposes and upon such terms as the Lender in its sole and absolute discretion may determine. Without first obtaining on each occasion the prior written approval of the Lender, the Grantor shall not cancel or

PG 307 NOV 20

permit the cancellation of any such lease, modify or permit the modification thereof or apt or permit to be made any prepayment of any installment of rent or other fees thereunder (except for security deposits and the prepayment of rent for not more than one month in advance). The Grantor covenants and warrants that it will comply with all of the terms and conditions of all leases now existing or that may hereafter come into existence with respect to the Property or any part thereof.

16. _Security Agreement_. The Grantor hereby grants a security interest in the Property to the Lender. This Deed of Trust, in addition to constituting a lien on real estate, is a security agreement and shall support any financing statement showing the Lender's interest as a secured party with respect to any portion of the Property described in such financing statement. The Grantor, at its sole cost and expense, agrees to execute, deliver and record from time to time such further instruments as may be requested by the Lender to confirm the lien of this Deed of Trust on any fixtures, equipment or other property described in this Deed of Trust. The Lender, in addition to and not in lieu of or in diminution of its rights and remedies herein provided, shall have all of the rights and remedies of a secured party under the Uniform Commercial Code of Virginia, which rights and remedies may be exercised without application to any court to the extent permitted by such code.

17. _Assignment of Contracts and Other Agreements_. To further secure payment of the indebtedness evidenced by the Note and all other amounts due and owing under the Loan Documents and to assure the observance and performance of all other terms, warranties, covenants, agreements, conditions and obligations set forth in the Note, this Deed of Trust and other Loan Documents, the Grantor hereby assigns, conveys, transfers and sets over unto the Lender all of its rights and interests in and to any and all contracts, leases, rental agreements, franchise agreements, management contracts, construction contracts, sales contracts and other contracts, licenses and permits now or hereafter affecting the Property or any part thereof. The Grantor agrees to execute and deliver to the Lender such additional instruments, in form and substance satisfactory to the Lender, as may hereafter be requested by the Lender to evidence and confirm this assignment; provided, however, that neither this assignment nor the acceptance of any such additional or supplemental assignment shall be construed as a consent by the Lender to any contract, lease, rental agreement, franchise agreement, management contract, construction contract or other contract, license or permit or to impose upon the Lender any obligations with respect thereto. Without first obtaining on each occasion the written approval of the Lender, the Grantor shall not cancel or permit the cancellation of any contract, lease, rental agreement, franchise agreement, management contract, construction contract or other contract, license or permit or modify any of these. The Grantor covenants and warrants that it shall comply with all the terms and conditions of all such instruments now existing or that may hereafter come into existence with respect to the Property or any part thereof.

18. _Financial Statements_. If requested to do so by Lender, the Borrower shall furnish the Lender within ten (10) days after request therefor, and, in any event, annually, within ninety (90) days after the close of the calendar year or the Grantor's fiscal year, as the case may be; (i) itemized financial statements covering in reasonable detail the operation of the Property during the preceding year, including a schedule of the total rents received from

each tenant leasing any part of the Property and (ii) itemized financial statements of Grantor, including an income statement and balance sheet. The statements shall be prepared by an independent certified public accountant in accordance with generally accepted accounting practices consistently applied and shall be further ratified by such accountant and the Grantor. The Grantor also covenants and agrees to permit the Lender or its agents to examine during normal and usual business hours the books, records and accounts of the Grantor insofar as they relate to the Property, and to make copies thereof.

19.    Access to the Property. The Lender and any persons authorized by the Lender shall have the right to enter and inspect the Property at all reasonable times without notice.

20.    Further Assurances. Upon request the Grantor shall execute, acknowledge, deliver and record and/or file such further instruments and do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Deed of Trust and the other Loan Documents and to subject to the liens and security interests thereof any property intended by the terms thereof to be covered thereby, including specifically, but without limitation, any renewals, additions, substitutions, replacements, or appurtenances to the Property. The Grantor shall pay all such recording, filing, re-recording and re-filing taxes, fees and other charges, including those for security interest searches.

21.    No Waiver. Neither any course of dealing by the Trustee or the Lender nor any failure or delay on their part to exercise any right, power or privilege hereunder shall operate as a waiver hereof; nor shall any single or partial exercise of any right, power, or privilege preclude any other or future exercise thereof or the exercise of any other right, power or privilege.

22.    Maximum Interest Rate/Application of Provisions. No Provision of this Deed of Trust, the Note or the other Loan Documents or any transaction related hereto or thereto shall require the payment or permit the collection of interest or any other amount in excess of the maximum permitted by applicable law. If any excess of interest or any other amount in such respect is herein or in the Note provided for, the Grantor shall not be obligated to pay such interest or any other amounts in excess of the amount permitted by applicable law, and the right to demand the payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Deed of Trust. If any term or provision of this Deed of Trust or an application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed of Trust or the application of such term or provision to persons or circumstances other than those as to whom or which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Deed of Trust shall be valid and enforceable to the fullest extent permitted by law.

23.    Notice. Except as otherwise required by law, all demands, notices, approvals, consents, requests and other communications hereunder shall be in writing and shall be deemed to have been given when delivered in person, or mailed by registered or certified mail, postage prepaid, return receipt requested, or sent by Federal Express (or other commercial express delivery service which provides delivery on the next business day) addressed; (a) if to the Lender, 103 Canterbury Road, Richmond, Virginia 23221 or (b) if to

PG  309 NOV 20 ⊑

the Grantor, to 2332 Grove Avenue, Richmond, 710 North Hamilton Street, Richmond, Virginia 23221. The Grantor and the Lender may designate, by notice, given as provided for in this paragraph or as otherwise required by law, any further or different addresses to which subsequent demands, notices, approvals, consents, requests or other communications shall be sent or persons to whose attention the same shall be directed.

24.     Changes in Taxation. In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds of trust or the manner of collecting such taxes so as to affect adversely the Lender, the Grantor shall promptly pay any such tax on or before the due date thereof. If the Grantor fails to make such prompt payment or if any such state, federal, municipal or other governmental law, order, rule or regulation prohibits the Grantor from making such payment or would penalize the Lender if the Grantor makes such payment, then the entire balance of the principal sum secured by this Deed of Trust and all interest accrued thereon shall immediately become due and payable at the option of the Lender.

25.     Rights and Remedies Cumulative. The rights and remedies arising under and contained in this Deed of Trust shall be separate, distinct and cumulative and none of them shall be in exclusion of the other. All remedies arising under or contained in this Deed of Trust shall be in addition to every other remedy now or hereafter existing at law, in equity or by statute.

26.     Construction. The covenants and agreements herein contained shall bind, and the benefits shall inure to, the respective heirs, legal and personal representatives, executors, administrators, successors and assigns of the parties hereto. Whenever used herein, the singular shall include the plural and the plural the singular, and the use of any gender shall include all other genders. As used in this Deed of Trust, the term "Lender" shall mean the Lender named herein, any future payee of the indebtedness evidenced by the Note and any transferee of the Note, whether by operation of law or otherwise. The headings of the Paragraphs of this Deed of Trust are for convenience of reference only and are not considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

27.     Hazardous Materials. (a) For the purposes of this Paragraph, "Hazardous Material" means and includes petroleum products and/or any hazardous, toxic or dangerous waste, substance or material defined as such in (or for the purposes of) the "Environmental Laws." For the purposes of this Paragraph, "Environmental Laws" means the comprehensive Environmental Response, Compensation and Liability Act, any "Super Fund" or "Super Lien" Law, or any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree, regulating, relating to or imposing liability or standards of conduct concerning any petroleum products and/or hazardous, toxic or dangerous waste, substance or material, as may now or at any time hereafter be in effect.

(b)     The Grantor represents and warrants that the Property is presently in compliance with all Environmental Laws, that there are no facts or circumstances presently existing upon or under the Property or relating to the Property which may violate any

PB.310 NOV 20

applicable Environmental Laws, and there is not now pending, or, to the best knowledge of the Grantor, threatened, any action, suit, investigation, claim or proceeding, nor investigation or review by any governmental authority, against the Grantor or the Property (or against any other party relating to the Property) seeking to enforce any right or remedy under any of the Environmental laws. There is no outstanding order, rule, judgment, writ, injunction or decree of any court, government, governmental agency or arbitrator against or affecting the Grantor with respect to the Property. The information contained in the Environmental Questionnaire and Disclosure Statement previously furnished to the Lender by the Grantor is true and correct to the best of its knowledge as of the date thereof. Notwithstanding the foregoing, if any such information is false or misleading in a material respect, it shall be an Event of Default, as defined herein.

(c)     The Grantor and the Grantor's tenants on the Property (the "Tenants") have obtained all necessary governmental licenses, permits and approvals legally required or material to the conduct of each of their businesses as now conducted, including, without limitation, all Environmental Laws with respect to the registration and testing of underground or aboveground storage tanks, such licenses, permits and approvals are in full force and effect and the Grantor and the Tenants have complied with all applicable laws, regulations and restrictions relating to each of their businesses, including the terms and conditions of such governmental licenses, permits and approvals.

(d)     The Grantor and the Tenants have obtained and will at all times continue to obtain and/or maintain all licenses, permits and/or other governmental or regulatory actions necessary to comply with all Environmental Laws (the "Permits"). The Grantor and the Tenants are in full compliance with the terms and provisions of the Permits and will continue to comply with the terms and provisions of the Permits.

(e)     Neither the Grantor nor the tenants has received notice of or is otherwise aware that certain facts, events or conditions, interfere with or prevent continued compliance with or give rise to any common law or legal liability under any law or regulation related to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling, or the emission, discharge, release or threatened released into the environment of any Hazardous Material.

(f)     The Grantor and the Tenants have not and will not engage in any activities that constitute spilling, leaking, emitting, discharging, injecting, dumping or disposing into the environment above, below or surrounding the Property of any Hazardous Material and shall otherwise comply with all Environmental Laws relating to the Property.

(g)     The Grantor hereby agrees to indemnify the Lender and hold harmless the Lender from and against any and all losses, liabilities, damages, injuries, costs, expenses and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against the Lender for, with respect to or as a direct or indirect result of (i) the presence on or under, or the escape, seepage, leakage, spill, discharge, emission or release from the Property of any Hazardous Material (including, without limitation, any losses, liabilities, damages, injuries, costs, expenses, or claims asserted or arising under any Environmental Laws), whether or not

PB  3 1 1  NOV 20 ?

caused by or within the control of the Grantor; (ii) the violation of any Environmental laws relating to or affecting the Property, whether or not caused by or within the control of the Property; (iii) the failure by the Grantor to comply fully with the terms and provisions of this Paragraph; (iv) any warranty or representation made by the Grantor in this Paragraph being false or untrue in any material respect; and (v) any and all costs, expenses, settlement payments or judgments (including, without limitation, reasonable attorneys' fees, accountants' and other professional fees and costs) incurred by the Lender and its successors and assigns in connection with any Action, as hereinafter defined, or any claim or judgment incident to any of the matters indemnified against under this Paragraph.

(h)    The Grantor shall give prompt written notice to the Lender of any order or pending or threatened action by any regulatory agency or other governmental body, or any claim made by any third party, relating to Hazardous Materials on or emanating from the Property, and shall promptly furnish the Lender with copies of any notice, correspondence, legal pleading or other written communication in connection therewith.

(i)    In the event any claim, action, suit or proceeding with respect to which the Grantor may have liability under this Paragraph (the "Action") is brought against the Grantor, the Action shall be defended by counsel chosen by the Grantor at the sole cost and expense of the Grantor. In the event any Action is brought against the Grantor or the Lender, the Lender shall have the right to be represented by its own counsel, at the Grantor's sole cost and expense, and shall be kept fully informed as to the Action at all stages thereof. The Grantor shall make available to the Lender and its attorneys all records of the Grantor relating to the Action and the Grantor agrees to render to the Lender such assistance as it may reasonably require of the Grantor in order to participate in the proper and adequate defense of the Action. The Grantor shall not make any settlement of any Action without the prior written consent of the Lender.

(j)    Any and all amounts owed to the Lender pursuant to this Paragraph, with interest at the rate provided in the Note for default, shall be secured by this Deed of Trust.

(k)    The Lender shall have the right, but not the obligation, to undertake any action necessary to remedy any failure by the Grantor to comply fully with the terms and provisions of this Paragraph, and all sums paid or expended by the Lender in doing so, together with interest thereon at the rate provided in the Note, shall be payable by the Grantor to the Lender upon demand and shall be secured by this Deed of Trust as a further charge and lien upon the Property and held to be a prior charge in the event of foreclosure.

(l)    The Grantor acknowledges that the Lender has agreed to make the Loan in reliance upon the Grantor's representations, warranties and covenants contained in this Paragraph. All representations, warranties and covenants of this Paragraph (including, without limitation, the indemnification provisions hereof) shall continue in full force and effect and shall survive the payment and/or cancellation of the Note and/or the cancellation of record or foreclosure of the Deed of Trust and/or the execution of a deed in lieu thereof.

28.    Event of Default Defined. An Event of Default or Default as such terms are used

herein shall mean:

        (a)    failure to pay when due any sum due pursuant to the Note or this Deed of Trust;

        (b)    failure to observe any of the terms, covenants, conditions and agreements of the Note or this Deed of Trust;

        (c)    inability of Grantor to pay Grantor's debts when due, the insolvency of Grantor or the institution of proceedings by or against Grantor in bankruptcy;

        (d)    default by Grantor in the payment or performance of any other deed of trust encumbering the Property;

        (e)    any default, breach of warranty or representation under any other document which evidences, secures or guarantees the payment of the indebtedness secured by this Deed of Trust or related to the Loan;

        (f)    Grantor's failure to pay, perform or comply with any other obligation of the Grantor to the Lender; and

        (g)    any other event defined in this Deed of Trust as a Default.

        (h)    default by the Borrower or Grantor in the terms of the Loan Agreement.

        (i)    Default in any other loan made by the Lender to the Borrower or any entity in which the Borrower or Robert E. Hicks is a member or for which Robert E. Hicks is a guarantor.

29.    Miscellaneous.

        (a)    No amendment, modification, cancellation or discharge hereof shall be valid unless the Lender consents thereto in writing.

        (b)    This Deed of Trust shall be governed by and interpreted in accordance with the laws of the Commonwealth of Virginia.

WITNESS the following signatures:

Renew Properties, LLC
a Virginia limited liability company

By: _____
    Robert E. Hicks, Sole Member/Manager

Pg. 3 1 3 NOV 20

COMMONWEALTH OF VIRGINIA
CITY OF RICHMOND, to-wit:

The foregoing instrument was acknowledged before me this 14th day of August, 2017
by Robert E. Hicks, Sole Member/Manager of Renew Properties, LLC.

My Commission Expires: 4/30/00  Registration Number: 7346045

Notary Public

INSTRUMENT 170024344
RECORDED IN THE CLERK'S OFFICE OF
CITY OF RICHMOND CIRCUIT COURT ON
November 20, 2017 AT 11:56 AM
EDWARD F. JEWETT , CLERK
RECORDED BY: ADP

Page 17 of 17

M O 1 5 8 MAY 26 ⁹

This instrument was prepared by
and return after recordation to:
Scott D. Stolte, Esquire
Ayers & Stolte, P.C.
710 North Hamilton Street
Richmond, Virginia 23221
(804) 358-4731

*16 - 9782*


**EXHIBIT**

D

Parcel Identification Numbers: W000-1460/017

### CREDIT LINE DEED OF TRUST,
### ASSIGNMENT OF LEASES RENTS AND PROFITS
### & SECURITY AGREEMENT

**THIS CREDIT LINE DEED OF TRUST, ASSINGMENT OF LEASES RENTAS AND PROFITS AND SECURITY AGREEMENT** (the "Deed of Trust"), is made as of this 26th day of May, 2016, by and among **RENEW PROPERTIES, LLC,** a Virginia limited liability company, (the "Grantor"); **SCOTT D. STOLTE** AND **ALEXANDER H. AYERS**, both of whom have a mailing address of 710 North Hamilton Street, Richmond, Virginia 23221, Trustees (the "Trustee"); and **STONEBRIDGE INVESTMENT COMPANY, LLC,** a Virginia limited liability company, its successors or assigns (the "Lender", sometimes herein "Noteholder"), provides as follows:

### THIS IS A CREDIT LINE DEED OF TRUST

This is a credit line deed of trust as defined in Section 55-58.2 of the Code of Virginia of 1950 (as amended). The name of the Noteholder is Stonebridge Investment Company, LLC, a Virginia limited liability company and the address of the Noteholder to which notices permitted under Section 55-58.2 may be sent is 103 Canterbury Road, Richmond, Virginia 23221. The maximum aggregate amount of principal to be secured hereby at any one time is **FOUR HUNDRED TWELVE THOUSAND AND NO/100 DOLLARS ($412,000.00).**

**WITNESSETH,** That Grantor hereby grants and conveys with General Warranty and English Covenants of Title unto the Trustee a first lien security interest in the real property located in the City of Richmond, Virginia, and more particularly described as follows, to-wit:

### 3207 Hanover Avenue, Richmond, Virginia 23221

ALL that certain lot, piece or parcel of land, with the improvements thereon, lying, being and situated in the City of Richmond, Virginia, known as No. 3207 Hanover Avenue and further designated as shown on "Plat of Property Situated on the Southern Line of Hanover Avenue and West of Cleveland Street, Richmond, Va.", dated August 20, 1965, made by Chas. H. Fleet & Assocs., Certified Surveyors, to which plat, a copy of which is recorded with Deed at Deed Book 634-B, page 447, reference is made for a more particular description of the

ᵡᴿ 0 1 5 9 MAY 26 ⁵

property hereby conveyed.

BEING the same real estate conveyed to Renew Properties, LLC by Deed from Timothy P. Corbett, recorded in the Clerk's Office, Circuit Court, City of Richmond, Virginia immediately prior hereto.

**TOGETHER WITH** all tenements, hereditaments, easements, rights, privileges, appurtenances and rights of way now or hereafter belonging or in any way pertaining to the above-referenced real estate and the remainder and remainders, reversion or reversions thereof; all the estate, right, title, interest, issues, profits, proceeds, revenues, royalties and benefits accruing or to accrue therefrom; and all property and each and every claim and demand whatsoever of each Grantor of, in and to the same, and of, in and to every part and parcel thereof.

**TOGETHER WITH** all right, title, interest, property, claim and demand of the each Grantor, if any, in and to the land lying in the bed of any street, road, avenue or alley in front of, adjoining or provides ingress to or egress from the Real Estate, and all utility easements and off-site utility easements serving or intended to serve the Real Estate.

All of the above Real Estate and other property and interests therein are hereinafter referred to as the "Property".

**TOGETHER WITH** all proceeds of the conversion, whether voluntary or involuntary, of any of the Property into Cash or other liquid claims, including, without limitation, all awards, payments or proceeds, including interest thereon, and the right to receive the same, which may be as the result of any casualty, any exercise of the right of eminent domain or deed in lieu thereof, the alteration of the grade of any street, any injury to or decrease in the value of the Property and any defect in title to the Property or other matter insured under a policy of title insurance, together with counsel fees, costs and disbursements incurred by the Lender in connection with the collection of such awards, payments and proceeds.

**TO HAVE AND TO HOLD** the same, whether now owned or held or hereafter acquired, unto the Trustee, their survivor or other successor or successors and assigns IN TRUST forever.

**IN TRUST,** to secure to the Lender (i) the payment of all sums owing under that certain Commercial Deed of Trust Note (the "Note") bearing even date herewith, made by Renew Properties, LLC (the "Borrower"), to Stonebridge Investment Company, LLC, a Virginia limited liability company, or order at 103 Canterbury Road, Richmond, Virginia 23221, or at such other place as the holder thereof may otherwise specify in writing, from time to time, which Note evidences an indebtedness of the Borrower to the said Stonebridge Investment Company, LLC a Virginia limited liability company in a principal amount not to exceed **Four Hundred Twelve Thousand Dollars ($412,000.00),** together with interest on the unpaid balance thereof until paid, and any cost related thereto pursuant to the terms and conditions set forth in the Note, and (ii) the payment of all other sums owed to the Lender by the Borrower or which are otherwise payable pursuant to this Deed of Trust, and (iii) the

!6 0 1 6 0 MAY 26 ⁶

performance and observation of all the terms, covenants, warranties, conditions, agreements and obligations of the Note and this Deed of Trust.

The privilege to prepay the indebtedness secured hereby is reserved as provided in the Note, as are any conditions, premiums and prepayment closed periods related thereto.

The Note provides that unless there is an earlier default, the entire principal balance with accrued and unpaid interest thereon and other charges due thereunder shall be due and payable in full on November 1, 2016.

The Note provides that the Lender may collect a late charge equal to five cents ($.05) for each dollar ($1.00) of any payment or interest not made within five (5) days of the date due including maturity as scheduled or accelerated due to default.

The Note provides In the event of a default under the Note or event of default under any of the other Loan Documents the Noteholder shall have the right to accelerate the payments and all sums due under the Note and declare the entire indebtedness evidenced by the Note immediately due and payable.

The Note provides that interest shall be payable on all past due and unpaid principal and interest owing under the Note at the rate of eighteen percent (18%) per annum.

**PROVIDED ALWAYS** that upon full payment of the Note, with interest thereon and all other amounts due thereunder and under this Deed of Trust and the observance and performance of each and every term, warranty, covenant, condition and obligation of the Note and this Deed of Trust, the Noteholder shall execute and deliver the paid Note and a Certificate of Satisfaction to each Grantor or the Trustee shall release and reconvey the Property unto the Grantor, all at the sole expense of the Grantor.

## THE GRANTOR FURTHER COVENANTS AND AGREES as follows:

1.    <u>Payment and Performance by the Grantor</u>.  The Grantor shall pay punctually the principal, interest, late charge (if any), premium (if any) and all other amounts due under the Note, this Deed of Trust and the other Loan Documents on the Grantor's part to be paid. The Grantor shall also observe and perform all the other terms, covenants, warranties, agreements, conditions and obligations of the Note, this Deed of Trust and all other Loan Documents on the Grantor's part to be observed and performed.  As used herein, the term "Loan Documents" shall refer collectively to the Note, this Deed of Trust and any other deed of trust, security agreement, assignment of leases, rents and profits, the Guarantees and any other agreements or instruments which now or subsequently may be executed in connection with the indebtedness evidenced by the Note.

2.    <u>Costs, Expenses and Fees</u>.  (a) The Grantor agrees to pay all costs and expenses of the Lender, including reasonable attorneys' fees, (i) if after default the Note is placed in the hands of an attorney or attorneys for collection, (ii) if the Lender finds it necessary or desirable to secure the services or advice of one or more attorneys with regard to collection of

ЙО 0 1 6 1 MAY 26 ℗

the Note or to the protection of its rights under the Note, this Deed of Trust or any other Loan Document or (iii) if the Lender seeks to have the Property abandoned by or reclaimed from any estate in bankruptcy or attempts to have any stay or injunction prohibiting the enforcement or collection of the Note, prohibiting the foreclosure of this Deed of Trust or prohibiting the enforcement of this Deed of Trust or any other Loan Document lifted by any bankruptcy or other court.

(b)     In the event that the Trustee or the Lender shall be made a party to or shall intervene in any action or proceeding, whether in court or before any governmental agency, affecting the Property or the title thereto or the interest of the Trustee or the Lender under this Deed of Trust, including, without limitation, any form of condemnation or eminent domain proceeding, the Grantor shall reimburse the Trustee and the Lender for all costs, charges and attorneys' fees incurred by any of them.

(c)     In the event of any default by the Grantor in the performance of any term, warranty, covenant, condition or obligation hereunder, the Lender may, at its option, advance or disburse funds for the performance of such term, warranty, covenant, condition or obligation. The Grantor shall reimburse the Lender for all such monies advanced or disbursed by the Lender for performance of any defaulted term, warranty, covenant, condition or obligation of the Grantor.

(d)     All payments to be paid or reimbursed to the Lender by the Grantor as set forth in subparagraphs (a), (b) and (c) above and all expenses, charges, counsel fees and other disbursements incurred by the Trustee, or either of them, with respect to the administration and execution of the trusts hereby created and the performance of their duties and powers hereunder (i) shall bear interest at the rate of eighteen percent (18%) per annum or at the rate provided in the Note, whichever is greater, (ii) shall be due and payable immediately upon demand and (iii) shall be secured by this Deed of Trust as a further charge and lien upon the Property and held to be a prior charge in the event of foreclosure.

3.     <u>Incorporation of Statute</u>. This Deed of Trust, unless otherwise specified herein, shall be construed under and in accordance with and incorporate by reference the terms of Section 55-59 through Section 55-60, inclusive and Section 55-63 of the Code of Virginia of 1950, as amended, as its provisions are in force and in effect on the date of this Deed of Trust, with the following and further understandings as in such sections provided:

PURCHASE MONEY.

EXEMPTION WAIVED.

RENEWAL, EXTENSION OR REINSTATEMENT PERMITTED.

SUBJECT TO ALL UPON DEFAULT.

4.     <u>Substitution of Trustee</u>. Any one of the Trustee hereunder may act at any time upon designation by the Lender. If the Lender, in its sole and absolute discretion, shall desire

PG 0162 MAY 26 ⁹

for any reason whatsoever to have a substitute trustee or substitute Trustee appointed, then the Lender is hereby authorized and empowered to appoint, at any time and from time to time, by an instrument duly executed and acknowledged and filed for recordation wherever this Deed of Trust is recorded, a substitute trustee or substitute Trustee, in the place and stead of one or more of those initially named herein or subsequently appointed by the Lender, which trustee or Trustee shall have all the rights, powers and authority and be charged with all the duties and responsibilities that are conferred or charged upon the Trustee initially named herein.

   5.   Foreclosure. The Note is secured by the Property conveyed hereby and other real estate.   The Trustee may proceed against any item of or all of the Collateral simultaneously or in any sequence that the Trustee deems appropriate.   (a) Upon the occurrence of an Event of Default (as defined herein) and at the request of the Lender, the Trustee (or either of them) shall sell the Property, or, if the Property shall consist of more than one parcel, such parcel or parcels thereof as the Lender may select, for cash or upon such terms and conditions as they may deem expedient, such sale shall be at such time and place as they may consider advisable, at public auction, after having first given notice to the present owner of the Property as required by law.  The Trustee shall advertise the time, place and terms of sale at least three (3) times, which may be on three (3) consecutive days, in a newspaper having general circulation in the county or city where the Property or any portion thereof lies.  Out of the proceeds of any such sale, the Trustee shall (i) first, pay all the expenses attending the execution of this trust, including attorneys' fees and auctioneers' fees, if any, and Trustee commission on the gross proceeds of sale at the rate of five percent (5%), (ii) second, discharge all taxes, levies and assessments, with costs and interest if they have priority over the lien of this Deed of Trust, including the due pro rata portion thereof for the current year, (iii) third, discharge in the order of their priority any remaining debts and obligations secured by this Deed of Trust and any liens encumbering the Property or any part thereof which are inferior to this Deed of Trust, with interest, and (iv) fourth, to pay the residue of the proceeds to the Grantor or its assigns. At any sale made under the terms of this Deed of Trust, the Trustee may require a cash deposit from the successful bidder of not more than ten percent (10%) of the final amount bid by the successful bidder.

   (b)   In the event the Trustee gives notice of such foreclosure or requests publication of an advertisement for such sale, or in the event the Property is advertised for sale as herein provided, but not sold pursuant to such advertisement, the Trustee shall be paid by the Grantor the actual expenses incurred, together with a commission equal to two and one-half percent (2.5%) of the unpaid amount of the obligation hereby secured.

   (c)   If, prior to or at the time of the sale, the Trustee shall deem it proper for any reason to postpone or continue the sale, they may do so from time to time, in which event advertisement of the postponed sale shall be in the manner as required by law.

   (d)   Prior to the closing of this transaction, Grantor has agreed and does hereby agree to allow Lender or Noteholder to utilize the services of Scott D. Stolte, as the Trustee in connection with any foreclosure action, notwithstanding that said Trustee is attorney for Lender in this and other transactions.

M 0 1 6 3 MAY 26 ⁰

6.     Action of the Lender.   Without affecting, modifying, altering, releasing or limiting the liability of the Grantor or any person liable or who may become liable on the Note or who has endorsed, assumed, served as a surety for or guaranteed the obligation of the Note, and without affecting, modifying, altering, releasing or limiting the lien of this Deed of Trust or any Loan Document, the Grantor agrees that the following actions may occur at any time and from time to time, whether before, on or after the maturity of the Note, at the option of the Lender, without further notice to or the consent of any party; (i) the maturity date of the Note or any installments thereof may be extended or renewed, in whole or in part, notwithstanding the fact that any extensions or renewals may be for a period or periods equal to, less than or in excess of the original term hereof; (ii) any security for the Note may be sold, released, exchanged, subordinated or otherwise impaired, whether such security be taken at the time of the making of the loan evidenced by the Note or at some other time; (iii) the terms and conditions of the Note and any other Loan Document may be modified or amended or new documents substituted for any of them with the consent of the parties to such document; (iv) any one or more parties liable or who may become liable on the Note or any other Loan Document or who have endorsed, assumed, served as a surety for or guaranteed the obligation of the Note may be released; (v) any indulgence or forbearance whatsoever regarding the Note, this Deed of Trust or any other Loan Document may be granted; and (vi) the Lender may fail to act with diligence or may delay in the collection or enforcement of the Note, this Deed of Trust and the other Loan Documents.

7.     Insurance.   (a) The Grantor shall provide and maintain continuously comprehensive general liability and indemnity insurance coverage as may be required from time to time by the Lender, in forms and amounts and with companies satisfactory to the Lender, including coverage of the Lender as a named insured thereunder and loss payable to the Lender as mortgagee, as appropriate.

(b)     The Grantor shall provide and maintain continuously (i) Builder's risk where applicable and all risk casualty insurance in the full replacement value, on the buildings and other improvements now or hereafter on the Property, or such other casualty insurance of such type or types and in such amounts as the Lender may from time to time require, which may be the full replacement value, on the buildings and other improvements now or hereafter on the Property, (ii) flood insurance, if required by the Lender and (iii) such other insurance and coverage regarding the Property or any other security for the Note required by the Lender in its sole and absolute discretion.

(c)     The Grantor shall promptly pay when due the premiums on the policies referred to in subparagraphs (a) and (b) above, and shall deliver the originals of all such policies, properly endorsed, to the Lender.  All insurance shall be carried with companies approved by the Lender, and the original policies and all renewals thereof shall be held by the Lender, shall be non-cancelable except upon thirty (30) days prior written notice to the Lender and shall have attached thereto a mortgage clause satisfactory to the Lender, without contribution, in favor of and in form acceptable to the Lender.  Not less than thirty (30) days before the expiration date of each policy of insurance required pursuant to this Paragraph, the Grantor shall deliver to the Lender the original renewal policy or policies marked "premiums

paid" or accompanied by other evidence of payment satisfactory to the Lender. In the event that the premiums on the policies referred to in subparagraphs (a) and (b) above are not paid on or before their due date, the Lender shall have the right, but not the obligation, without notice or demand to the Grantor, to pay the same or any of them.

(d)     In the event of a foreclosure of this Deed of Trust or other transfer of title to the Property in extinguishment of the indebtedness secured hereby, all the rights of the Lender in and to all policies of insurance assigned and delivered to Lender shall pass to the purchaser or grantee.

8.     <u>Condition of the Property</u>.  The Grantor agrees (i) that no building or other improvement on the Real Estate shall be altered, removed, demolished or enlarged, nor shall any fixtures or personal property or appliances on, in or about said buildings or improvements be severed, removed, transferred, sold or mortgaged, without the prior written consent of the Lender; (ii) that Grantor shall not permit, commit or allow any nuisance to exist thereon or suffer any waste, impairment or deterioration of the Property or any part thereof; (iii) that Grantor shall keep and maintain the Property and every part thereof, including all buildings, fixtures, machinery and appurtenances, in good and thorough repair and condition, shall effect such repairs as the Lender may reasonably require from time to time; (iv) that Grantor shall make all necessary and proper replacement so that said buildings, fixtures, machinery and appurtenances shall, at all times, be in good condition, fit and proper for the respective purpose for which they were originally erected or installed; (v) that Grantor shall not materially change the use of the Property from the use thereof on the date of this Deed of Trust; and, (vi) that Grantor shall comply with all statutes , orders, ordinances, laws, regulations, requirements or decrees relating to the Property by any federal, state or municipal authority and observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits (including, but not limited to, zoning variances, special exceptions and non-conforming uses), privileges, franchises and concessions which are applicable to the Property or which have been granted to or contracted for by the Grantor in connection with any existing or presently contemplated use of the Property.

9.     <u>Restrictive Covenants, Laws and Regulations</u>.  Grantor further covenants and agrees to comply, solely and exclusively at Grantor's cost and expense, with all current and future laws, restrictive covenants and ordinances and regulations of governmental authorities applicable to the Property, including, but not limited to, such laws and regulations governing the rights of individuals with disabilities, including The Americans with Disabilities Act of 1990, as amended ("ADA") and the Virginians with Disabilities Act, as amended ("VDA"). To the extent required by applicable laws and regulations, the Grantor shall be responsible for the removal of architectural and communications barriers, the provision of auxiliary aids and services, and the modification of policies, practices and procedures with respect to the operation of Grantor's business on the Property. The Grantor further covenants and agrees to indemnify and hold harmless the Lender for any and all costs, expenses, liabilities and damages, including, but not limited to, court costs and attorneys' fees that the Lender may incur as a result of any breach by the Grantor of its obligations, duties and responsibilities under this Paragraph.

P0165 MAY 26

10.   <u>Taxes and Other Liens.</u>  The Grantor agrees to keep the Property free from any and all statutory liens, including, without limitation, mechanics' and materialmen's liens, and to pay before delinquency and before any penalty or interest for non-payment attaches all taxes, assessments, water rates, sewer rents and other governmental, public or municipal charges, dues, fines or impositions and any prior liens now or hereafter assessed or liens on or levied against the Property or any part thereof, and in case of default in the payment thereof when the same shall be due and payable, the Lender shall have the right, but not the obligation, without notice or demand to the Grantor, to pay the same or any of them.  Upon request of the Lender, the Grantor shall exhibit to the Lender receipts for the payment of all such items prior to the date when the same shall become delinquent.

**"NOTICE - - - THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED."**

11.   <u>Due on Sale or Transfer.</u>  The Grantor hereby acknowledges that (i) the identity and expertise of the Grantor were and continue to be material circumstances upon which the Lender has relied in connection with, and which constitute valuable consideration to the Lender for the making of the loan evidenced by the Note and (ii) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the indebtedness evidenced by the Note granted to the Lender by this Deed of Trust.  Therefore, in the event of a transfer of an interest in the Property without the prior written consent of the Lender, which consent shall be in the Lender's sole and absolute discretion, the Lender, at its option, may declare all sums secured by this Deed of Trust to be immediately due and payable or waive such default and deal with such successor or successors in interest in the same manner as with the Grantor, without in any way releasing, discharging or otherwise affecting the liability of the Grantor hereunder or for the indebtedness hereby secured.  Any change in the legal or equitable title of the Property or in the beneficial ownership of the Property, whether or not of record and whether or not for consideration, and any sale, transfer, encumbrance or other disposition of any membership interest in the Grantor shall be deemed a "transfer of an interest in the Property."  Without limiting the generality of the foregoing, a "transfer of an interest in the Property" shall also be deemed to have occurred if the Grantor shall sell, assign, transfer, convey, mortgage, encumber, lease or otherwise dispose of or alienate the Property, or any part thereof or any interest therein, whether voluntarily, involuntarily or by operation of law, or engage in subordinate financing with respect thereto prior to the satisfaction of this Deed of Trust or, if the Grantor shall fail to maintain at all times its existence or shall amend or modify its articles of organization or shall issue additional membership interests or if Grantor or any member shall sell, transfer, dispose of or encumber any membership interest without Lender's consent, which shall not be unreasonably withheld, on condition that any additional member or transferee shall execute a Guarantee satisfactory to Lender.  No sale of the Property, no forbearance on the part of the Lender, no extension of the time for the payment of the indebtedness secured hereby or any change in the terms thereof consented to by the Lender shall in any way whatsoever operate to release, discharge, modify, change or affect the original liability of the Grantor named herein, either in whole or in part, nor shall the full force and effect of this Deed of Trust be altered thereby.

12.  __Tax and Insurance Escrow__.  Upon the request of the Lender, the Grantor shall make monthly deposits with the Lender in a non-interest bearing account in an amount equal to (i) one-twelfth (1/12) of the yearly taxes and assessments which may be levied against the Property and (ii) one-twelfth (1/12) of the yearly premiums for insurance which the Grantor covenants to maintain under the terms of this Deed of Trust.  In the event the Property is a part of a larger tract for purposes of taxes and assessments, the Lender may require the Grantor to have the Property taxed and assessed as a separate parcel, or in the alternative, to make monthly deposits in an amount equal to one-twelfth (1/12) of the yearly taxes and assessments which may be levied against such larger tract.  All such deposits shall be made in such amounts that the Lender shall have such tax and insurance payments in hand at least thirty (30) days prior to the due dates thereof.  Upon the occurrence of an Event of Default, as defined herein, all such escrows of taxes and insurance, at the option of the Lender, shall be applied to any amount advanced or disbursed on behalf of the makers of the Note pursuant to the terms thereof and on behalf of the Grantor pursuant to the terms of this Deed of Trust, then to interest then due and unpaid and thereafter to principal owing thereunder.  The Grantor hereby authorizes the Lender or its designee to request and receive from the treasurer of any city, county or other governmental entity assessing taxes, levies, assessments or other charges against the Property or any part thereof  any bills or statements regarding such taxes, levies, assessments or other charges.

13.  __Damage and Destruction__.  If the Property or any part thereof is damaged by fire, flood or any other hazard against which insurance is held, the Grantor shall immediately notify the Lender of the nature and extent thereof.  The amounts paid by any insurance company pursuant to any contract of insurance shall, to the extent of the indebtedness secured hereby then remaining unpaid, be paid to the Lender notwithstanding the fact that the amount owing thereon may not then be due and payable or that the indebtedness is otherwise adequately secured.  Such amounts, in the sole and absolute discretion and option of the Lender, may be applied, in whole or in part, to the payment of such indebtedness in the inverse order of maturity or released to the Grantor for repairing or rebuilding of the Property under terms and conditions acceptable to the Lender.   The Grantor hereby authorizes the Lender, at its option, to collect, adjust and compromise any losses under any of the insurance aforesaid and after deducting costs of collection, including, but not limited to, its attorneys' fees, to apply the proceeds as aforesaid.

14.  __Condemnation__.  The Grantor, immediately upon obtaining knowledge of the initiation of any proceeding for the taking, whether the same is temporary or permanent, or damaging by or for any public improvement, condemnation proceeding or the exercise of any power of eminent domain, or deed in lieu thereof, of the Property or any part thereof, shall notify the Lender of such proceeding and shall deliver to the Lender copies of any and all papers served in connection with such proceeding.  The Lender shall have the right, at its option, to participate in such proceeding at the expense of the Grantor (including, without limitation, the Lender's attorneys' fees) and the Grantor shall execute such documents and take such other steps as may be required by the Lender to permit such participation.  In the event the Property or any part thereof is taken or damaged by or for any public improvement, condemnation proceeding or the exercise of any power of eminent domain, the entire award

M 0 I 6 7 MAY 26 ᵕ

or consideration given or paid therefor shall be paid to the Lender, and the Lender is hereby empowered in the name of the Grantor to receive and give acceptance for such award or consideration or any judgment therefor or thereon whether it be joint or several. The entire amount of such award shall be applied by the Lender to the reduction of the indebtedness secured hereby in the inverse order of maturity, notwithstanding the fact that the amount owing thereon may not then be due and payable or that the indebtedness is otherwise adequately secured, or the Lender, at its option, may waive such application and pay such award or consideration or any part thereof over to the Grantor. The Grantor agrees to execute and deliver from time to time such further instruments as may be requested by the Lender to confirm such assignment to the Lender of any such award, payment or proceeds.

15.     Assignment of Leases and Contracts. To further secure the payment of the indebtedness evidenced by the Note and all other amounts due and owing under the Loan Documents and to assure the observance and performance of all other terms, warranties, covenants, agreements, conditions and obligations set forth in the Note, this Deed of Trust and the other Loan Documents, the Grantor hereby assigns, conveys, transfers and sets over unto the Lender all and every part of the rents that may from time to time become due and payable on account of any and all leases now existing, or that may hereafter come into existence with respect to the Property or any part thereof, including any guarantees of such leases and a security interest in the proceeds of any contracts for the sale of any of the Property. Upon request of the Lender, the Grantor shall execute and cause to be recorded, at its expense, supplemental or additional assignments of any leases on the Property; provided, however, that neither this assignment nor the acceptance of any such supplemental or additional assignments shall be construed as a consent by the Lender to any such lease or to impose upon the Lender any obligation with respect thereto. The Lender is hereby fully authorized and empowered in its discretion (in addition to all other powers and rights herein granted) to apply for and collect and receive all such rents and enforce such guarantee or guarantees, and all money so received under and by virtue of this assignment shall be held and applied as further security for the payment of the indebtedness secured hereby and to assure the observance and performance of all other terms, warranties, covenants, conditions and obligations hereof, and the obligations secured hereby, after first deducting therefrom such reasonable costs and expenses as may be incurred in and about the collection of said rents and guarantee(s). It is further agreed that the Lender is authorized and empowered to enter upon the Property and to lease it to such person or persons for such purposes and upon such terms as the Lender in its sole and absolute discretion may determine. Without first obtaining on each occasion the prior written approval of the Lender, the Grantor shall not cancel or permit the cancellation of any such lease, modify or permit the modification thereof or apt or permit to be made any prepayment of any installment of rent or other fees thereunder (except for security deposits and the prepayment of rent for not more than one month in advance). The Grantor covenants and warrants that it will comply with all of the terms and conditions of all leases now existing or that may hereafter come into existence with respect to the Property or any part thereof.

16.     Security Agreement. The Grantor hereby grants a security interest in the Property to the Lender. This Deed of Trust, in addition to constituting a lien on real estate, is a security agreement and shall support any financing statement showing the Lender's interest

as a secured party with respect to any portion of the Property described in such financing statement. The Grantor, at its sole cost and expense, agrees to execute, deliver and record from time to time such further instruments as may be requested by the Lender to confirm the lien of this Deed of Trust on any fixtures, equipment or other property described in this Deed of Trust. The Lender, in addition to and not in lieu of or in diminution of its rights and remedies herein provided, shall have all of the rights and remedies of a secured party under the Uniform Commercial Code of Virginia, which rights and remedies may be exercised without application to any court to the extent permitted by such code.

17.  <u>Assignment of Contracts and Other Agreements</u>. To further secure payment of the indebtedness evidenced by the Note and all other amounts due and owing under the Loan Documents and to assure the observance and performance of all other terms, warranties, covenants, agreements, conditions and obligations set forth in the Note, this Deed of Trust and other Loan Documents, the Grantor hereby assigns, conveys, transfers and sets over unto the Lender all of its rights and interests in and to any and all contracts, leases, rental agreements, franchise agreements, management contracts, construction contracts, sales contracts and other contracts, licenses and permits now or hereafter affecting the Property or any part thereof. The Grantor agrees to execute and deliver to the Lender such additional instruments, in form and substance satisfactory to the Lender, as may hereafter be requested by the Lender to evidence and confirm this assignment; provided, however, that neither this assignment nor the acceptance of any such additional or supplemental assignment shall be construed as a consent by the Lender to any contract, lease, rental agreement, franchise agreement, management contract, construction contract or other contract, license or permit or to impose upon the Lender any obligations with respect thereto.  Without first obtaining on each occasion the written approval of the Lender, the Grantor shall not cancel or permit the cancellation of any contract, lease, rental agreement, franchise agreement, management contract, construction contract or other contract, license or permit or modify any of these. The Grantor covenants and warrants that it shall comply with all the terms and conditions of all such instruments now existing or that may hereafter come into existence with respect to the Property or any part thereof.

18.  <u>Financial Statements</u>.  If requested to do so by Lender, the Borrower shall furnish the Lender within ten (10) days after request therefor, and, in any event, annually, within ninety (90) days after the close of the calendar year or the Grantor's fiscal year, as the case may be; (i) itemized financial statements covering in reasonable detail the operation of the Property during the preceding year, including a schedule of the total rents received from each tenant leasing any part of the Property and (ii) itemized financial statements of Grantor, including an income statement and balance sheet. The statements shall be prepared by an independent certified public accountant in accordance with generally accepted accounting practices consistently applied and shall be further ratified by such accountant and the Grantor. The Grantor also covenants and agrees to permit the Lender or its agents to examine during normal and usual business hours the books, records and accounts of the Grantor insofar as they relate to the Property, and to make copies thereof.

19.  <u>Access to the Property</u>. The Lender and any persons authorized by the Lender shall have the right to enter and inspect the Property at all reasonable times without notice.

20.     Further Assurances. Upon request the Grantor shall execute, acknowledge, deliver and record and/or file such further instruments and do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Deed of Trust and the other Loan Documents and to subject to the liens and security interests thereof any property intended by the terms thereof to be covered thereby, including specifically, but without limitation, any renewals, additions, substitutions, replacements, or appurtenances to the Property. The Grantor shall pay all such recording, filing, re-recording and re-filing taxes, fees and other charges, including those for security interest searches.

21.     No Waiver. Neither any course of dealing by the Trustee or the Lender nor any failure or delay on their part to exercise any right, power or privilege hereunder shall operate as a waiver hereof; nor shall any single or partial exercise of any right, power, or privilege preclude any other or future exercise thereof or the exercise of any other right, power or privilege.

22.     Maximum Interest Rate/Application of Provisions. No Provision of this Deed of Trust, the Note or the other Loan Documents or any transaction related hereto or thereto shall require the payment or permit the collection of interest or any other amount in excess of the maximum permitted by applicable law. If any excess of interest or any other amount in such respect is herein or in the Note provided for, the Grantor shall not be obligated to pay such interest or any other amounts in excess of the amount permitted by applicable law, and the right to demand the payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Deed of Trust. If any term or provision of this Deed of Trust or an application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed of Trust or the application of such term or provision to persons or circumstances other than those as to whom or which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Deed of Trust shall be valid and enforceable to the fullest extent permitted by law.

23.     Notice. Except as otherwise required by law, all demands, notices, approvals, consents, requests and other communications hereunder shall be in writing and shall be deemed to have been given when delivered in person, or mailed by registered or certified mail, postage prepaid, return receipt requested, or sent by Federal Express (or other commercial express delivery service which provides delivery on the next business day) addressed; (a) if to the Lender, 103 Canterbury Road, Richmond, Virginia 23221 or (b) if to the Grantor, to 2332 Grove Avenue, Richmond, 710 North Hamilton Street, Richmond, Virginia 23221. The Grantor and the Lender may designate, by notice, given as provided for in this paragraph or as otherwise required by law, any further or different addresses to which subsequent demands, notices, approvals, consents, requests or other communications shall be sent or persons to whose attention the same shall be directed.

24.     Changes in Taxation. In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds of trust or the manner of collecting such taxes so as to affect adversely the Lender, the Grantor shall promptly pay

any such tax on or before the due date thereof. If the Grantor fails to make such prompt payment or if any such state, federal, municipal or other governmental law, order, rule or regulation prohibits the Grantor from making such payment or would penalize the Lender if the Grantor makes such payment, then the entire balance of the principal sum secured by this Deed of Trust and all interest accrued thereon shall immediately become due and payable at the option of the Lender.

25.    <u>Rights and Remedies Cumulative</u>. The rights and remedies arising under and contained in this Deed of Trust shall be separate, distinct and cumulative and none of them shall be in exclusion of the other. All remedies arising under or contained in this Deed of Trust shall be in addition to every other remedy now or hereafter existing at law, in equity or by statute.

26.    <u>Construction</u>. The covenants and agreements herein contained shall bind, and the benefits shall inure to, the respective heirs, legal and personal representatives, executors, administrators, successors and assigns of the parties hereto. Whenever used herein, the singular shall include the plural and the plural the singular, and the use of any gender shall include all other genders. As used in this Deed of Trust, the term "Lender" shall mean the Lender named herein, any future payee of the indebtedness evidenced by the Note and any transferee of the Note, whether by operation of law or otherwise. The headings of the Paragraphs of this Deed of Trust are for convenience of reference only and are not considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

27.    <u>Hazardous Materials</u>. (a) For the purposes of this Paragraph, "Hazardous Material" means and includes petroleum products and/or any hazardous, toxic or dangerous waste, substance or material defined as such in (or for the purposes of) the "Environmental Laws." For the purposes of this Paragraph, "Environmental Laws" means the comprehensive Environmental Response, Compensation and Liability Act, any "Super Fund" or "Super Lien" Law, or any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree, regulating, relating to or imposing liability or standards of conduct concerning any petroleum products and/or hazardous, toxic or dangerous waste, substance or material, as may now or at any time hereafter be in effect.

(b)    The Grantor represents and warrants that the Property is presently in compliance with all Environmental Laws, that there are no facts or circumstances presently existing upon or under the Property or relating to the Property which may violate any applicable Environmental Laws, and there is not now pending, or, to the best knowledge of the Grantor, threatened, any action, suit, investigation, claim or proceeding, nor investigation or review by any governmental authority, against the Grantor or the Property (or against any other party relating to the Property) seeking to enforce any right or remedy under any of the Environmental laws. There is no outstanding order, rule, judgment, writ, injunction or decree of any court, government, governmental agency or arbitrator against or affecting the Grantor with respect to the Property. The information contained in the Environmental Questionnaire and Disclosure Statement previously furnished to the Lender by the Grantor is true and correct to the best of its knowledge as of the date thereof. Notwithstanding the foregoing, if any such information is false or misleading in a material respect, it shall be an Event of

Default, as defined herein.

(c)     The Grantor and the Grantor's tenants on the Property (the "Tenants") have obtained all necessary governmental licenses, permits and approvals legally required or material to the conduct of each of their businesses as now conducted, including, without limitation, all Environmental Laws with respect to the registration and testing of underground or aboveground storage tanks, such licenses, permits and approvals are in full force and effect and the Grantor and the Tenants have complied with all applicable laws, regulations and restrictions relating to each of their businesses, including the terms and conditions of such governmental licenses, permits and approvals.

(d)     The Grantor and the Tenants have obtained and will at all times continue to obtain and/or maintain all licenses, permits and/or other governmental or regulatory actions necessary to comply with all Environmental Laws (the "Permits"). The Grantor and the Tenants are in full compliance with the terms and provisions of the Permits and will continue to comply with the terms and provisions of the Permits.

(e)     Neither the Grantor nor the tenants has received notice of or is otherwise aware that certain facts, events or conditions, interfere with or prevent continued compliance with or give rise to any common law or legal liability under any law or regulation related to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling, or the emission, discharge, release or threatened released into the environment of any Hazardous Material.

(f)     The Grantor and the Tenants have not and will not engage in any activities that constitute spilling, leaking, emitting, discharging, injecting, dumping or disposing into the environment above, below or surrounding the Property of any Hazardous Material and shall otherwise comply with all Environmental Laws relating to the Property.

(g)     The Grantor hereby agrees to indemnify the Lender and hold harmless the Lender from and against any and all losses, liabilities, damages, injuries, costs, expenses and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against the Lender for, with respect to or as a direct or indirect result of (i) the presence on or under, or the escape, seepage, leakage, spill, discharge, emission or release from the Property of any Hazardous Material (including, without limitation, any losses, liabilities, damages, injuries, costs, expenses, or claims asserted or arising under any Environmental Laws), whether or not caused by or within the control of the Grantor; (ii) the violation of any Environmental laws relating to or affecting the Property, whether or not caused by or within the control of the Property; (iii) the failure by the Grantor to comply fully with the terms and provisions of this Paragraph; (iv) any warranty or representation made by the Grantor in this Paragraph being false or untrue in any material respect; and (v) any and all costs, expenses, settlement payments or judgments (including, without limitation, reasonable attorneys' fees, accountants' and other professional fees and costs) incurred by the Lender and its successors and assigns in connection with any Action, as hereinafter defined, or any claim or judgment incident to any of the matters indemnified against under this Paragraph.

(h)     The Grantor shall give prompt written notice to the Lender of any order or pending or threatened action by any regulatory agency or other governmental body, or any claim made by any third party, relating to Hazardous Materials on or emanating from the Property, and shall promptly furnish the Lender with copies of any notice, correspondence, legal pleading or other written communication in connection therewith.

(i)     In the event any claim, action, suit or proceeding with respect to which the Grantor may have liability under this Paragraph (the "Action") is brought against the Grantor, the Action shall be defended by counsel chosen by the Grantor at the sole cost and expense of the Grantor.  In the event any Action is brought against the Grantor or the Lender, the Lender shall have the right to be represented by its own counsel, at the Grantor's sole cost and expense, and shall be kept fully informed as to the Action at all stages thereof.  The Grantor shall make available to the Lender and its attorneys all records of the Grantor relating to the Action and the Grantor agrees to render to the Lender such assistance as it may reasonably require of the Grantor in order to participate in the proper and adequate defense of the Action.  The Grantor shall not make any settlement of any Action without the prior written consent of the Lender.

(j)     Any and all amounts owed to the Lender pursuant to this Paragraph, with interest at the rate provided in the Note for default, shall be secured by this Deed of Trust.

(k)     The Lender shall have the right, but not the obligation, to undertake any action necessary to remedy any failure by the Grantor to comply fully with the terms and provisions of this Paragraph, and all sums paid or expended by the Lender in doing so, together with interest thereon at the rate provided in the Note, shall be payable by the Grantor to the Lender upon demand and shall be secured by this Deed of Trust as a further charge and lien upon the Property and held to be a prior charge in the event of foreclosure.

(l)     The Grantor acknowledges that the Lender has agreed to make the Loan in reliance upon the Grantor's representations, warranties and covenants contained in this Paragraph.  All representations, warranties and covenants of this Paragraph (including, without limitation, the indemnification provisions hereof) shall continue in full force and effect and shall survive the payment and/or cancellation of the Note and/or the cancellation of record or foreclosure of the Deed of Trust and/or the execution of a deed in lieu thereof.

28.     <u>Event of Default Defined</u>.  An Event of Default or Default as such terms are used herein shall mean:

(a)     failure to pay when due any sum due pursuant to the Note or this Deed of Trust;

(b)     failure to observe any of the terms, covenants, conditions and agreements of the Note or this Deed of Trust;

(c)     inability of Grantor to pay Grantor's debts when due, the insolvency of Grantor or the institution of proceedings by or against Grantor in

bankruptcy;

        (d)     default by Grantor in the payment or performance of any other deed of trust encumbering the Property;

        (e)     any default, breach of warranty or representation under any other document which evidences, secures or guarantees the payment of the indebtedness secured by this Deed of Trust or related to the Loan;

        (f)     Grantor's failure to pay, perform or comply with any other obligation of the Grantor to the Lender; and

        (g)     any other event defined in this Deed of Trust as a Default.

        (h)     default by the Borrower or Grantor in the terms of the Loan Agreement.

        (i)     Default in any other loan made by the Lender to the Borrower or any entity in which the Borrower or Robert E. Hicks is a member or for which Robert E. Hicks is a guarantor.

    29.    Miscellaneous.

        (a)     No amendment, modification, cancellation or discharge hereof shall be valid unless the Lender consents thereto in writing.

        (b)     This Deed of Trust shall be governed by and interpreted in accordance with the laws of the Commonwealth of Virginia.

WITNESS the following signatures:

Renew Properties, LLC
a Virginia limited liability company

By:_____
    Robert E. Hicks, Sole Member/Manager

#160174 MAY 26 ⁶

COMMONWEALTH OF VIRGINIA
CITY OF RICHMOND, to-wit:

The foregoing instrument was acknowledged before me this 26th day of May, 2016 by
Robert E. Hicks, Sole Member/Manager of Renew Properties, LLC.

My Commission Expires: 4/21/08 Registration Number: 7346065

Notary Public



INSTRUMENT #160009782
RECORDED IN THE CLERK'S OFFICE OF
CITY OF RICHMOND ON
MAY 26, 2016 AT 11:33AM

EDWARD F. JEWETT, CLERK
RECORDED BY: TMG

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT** (as amended or supplemented from time to time, (this "Guaranty") is made as of the **17th day of October, 2016**, among **ROBERT E. HICKS and APRIL STRAUS**, 3232 Grove Avenue, Richmond, Virginia 23221, jointly and severally, (the "Guarantor"), and **STONEBRIDGE INVESTMENT COMPANY, LLC,** a Virginia limited liability company (the "Noteholder"), 103 Canterbury Road, Richmond, Virginia 23221.

The Noteholder holds a Note dated October 17, 2016 (as may be amended or supplemented from time to time, the "Note") in the principal amount of **$675,000.00** made by **Renew Properties, LLC,** a Virginia limited liability company (the "Borrower"), which evidences a loan made by the Noteholder to the Borrower. The Note is secured by a Credit Line Deed of Trust of even date herewith (as may be amended or supplemented from time to time), the "Deed of Trust" from **Renew Properties, LLC,** to Alexander H. Ayers and Scott D. Stolte, Trustees. As a condition of making the above-referenced loan to the Borrower, the Noteholder has required that the Guarantors execute this Guaranty.

NOW, THEREFORE, the Guarantor agrees (for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged) as follows:

Section 1.     Interpretation.   Unless the context indicates otherwise, words used in this Guaranty in the singular number shall be deemed to include words in the plural number, and vice versa, and words in one gender shall be deemed to include words in the other genders. The section headings are for convenience only and neither limit nor amplify the provisions of this Guaranty.

Section 2.     Guaranty.   The Guarantor hereby unconditionally guarantees to the Noteholder (i) the full and prompt payment and performance when due (whether at maturity, by acceleration or otherwise) of all sums due under the Note, Deed of Trust and Loan Agreement (collectively with this Guaranty, the "Loan Documents"). This is a guaranty of payment and performance and not merely of collection. If the Borrower shall default in the payment of the principal of or interest on the Note, or if there shall be a default in the performance of any of its other obligations, the Guarantor, upon demand of the Noteholder, shall promptly pay the Noteholder any amount due the Noteholder or perform the obligation which is in default. The Guarantor further agrees to pay all costs and expenses, including reasonable attorney's fees, paid or incurred by the Noteholder in collecting any amount due the Noteholder or in performing any defaulted obligation. Each failure on the part of the Guarantor or the Borrower (each of the foregoing being hereinafter referred to as an "Obligor") to make a payment or perform any other obligation shall give rise to a separate cause of action hereunder.

Page 1 of 7



EXHIBIT

E

Section 3.    Guaranty Unconditional.  The obligations of the Guarantor hereunder shall be absolute, continuing and unconditional and, without limiting the generality of the foregoing, shall not be released, discharged or otherwise affected by:

(i)     any extension, renewal, compromise, settlement, waiver or release of any of the obligations of any other Obligor under any of the Loan Documents;

(ii)    any amendment or supplement to any Loan Document;

(iii)   any failure to perfect a lien granted by any of the Loan Documents with respect to any of the property securing the Loan Documents, the release of any such lien or the substitution or exchange of any property;

(iv)    any change in the structure, existence or ownership of the Borrower, or the filing or entry of a final order in any insolvency, bankruptcy, reorganization or other similar proceeding affecting the Borrower or its assets or releasing any Obligor from any of its obligations under any of the Loan Documents;

(V)     the existence of any claim, set-off or other right which the Guarantor may have at any time against the Borrower, the Noteholder or any other Obligor, whether arising from the execution of any of the Loan Documents or otherwise; provided that nothing contained herein shall prevent the assertion of such a claim in a separate suit;

(vi)    the unenforceability, for any reason, of any of the obligations of any other Obligor under any of the Loan Documents;

(vii)   the failure of the Noteholder (A) to file or enforce a claim against any other Obligor (or its estate in a bankruptcy or other proceeding); (B) to give notice of the creation or incurrence by any other Obligor of any new or additional indebtedness or obligation with respect to the property or under the Loan Documents; (C) to commence any action against any Obligor; (D) to disclose to the Guarantor any facts which the Noteholder may now or hereafter know with regard to the property or its construction; (E) to proceed with due diligence to collect any amount due to it under any of the Loan Documents or to realize upon any of the property; or

Section 4.    Discharge: Reinstatement in Certain Circumstances.  This Guaranty shall remain in full force and effect until the principal and interest of the Note and all of the other Obligations shall have been paid or performed in full.  If at any time any payment or performance by the Borrower under any of the Loan Documents is rescinded or is required to be restored or returned because of insolvency, bankruptcy, reorganization or otherwise, the Guarantor's obligations hereunder with respect to such payment or performance shall be reinstated as though such payment had been due or performance required, but not paid or performed, at the time of such rescission or requirement. The Guarantor agrees that payment or performance of any of the Obligations or other acts which toll any statute of limitations applicable to the Obligations shall also toll the statute of limitations applicable to the Guarantor's liability hereunder.

Section 5.    Subrogation. upon making any payment or taking any other action hereunder, the Guarantor shall be subrogated to the rights of the payee or beneficiary of such action against the Borrower with respect to such payment or action; provided, that no such right of subrogation shall be enforced until all of the Obligations have been fully paid or performed.

Section 6.    Stay of Acceleration. If acceleration of the time for payment of any amount payable by the Borrower pursuant to the Loan Documents is stayed upon insolvency or bankruptcy, such amount and all other amounts subject to acceleration under the terms of the Loan Documents shall, nevertheless, be payable by the Guarantor on demand by the Noteholder.

Section 7.    Rights of Noteholder Not Impaired. No act or omission of any kind or at any time upon the part of the Noteholder in respect of any matter whatsoever shall in any way affect or impair the rights of the Noteholder to enforce any right, power or benefit of the Noteholder under this Guaranty, and no set-off, claim, diminution of any obligation or defense of any kind or nature which the Guarantor have or may have against the Noteholder shall be available against the Noteholder in any suit or action brought by the Noteholder to enforce any of its rights under this Guaranty. Nothing in this Guaranty shall be construed as a waiver by the Guarantor of any rights or claims the Guarantor may have against the Noteholder under this Guaranty or otherwise, but any recovery upon such rights and claims shall be had from the Noteholder separately, it being the intent of this Guaranty that the Guarantor shall be unconditionally and absolutely obligated to perform fully all of the Guarantor's obligations hereunder for the benefit of the Noteholder.

Section 8.    Subordination by Guarantor; Payment or Distribution to Guarantor. The Guarantor hereby subordinates all indebtedness of the Borrower owing to them, whether now existing or hereafter arising, to the prior payment and performance in full of the obligations. So long as no Default exists and no Event of Default has occurred under the Loan Documents, the Guarantor may continue to receive and retain payments on such indebtedness. Upon any dissolution, winding-up, liquidation or reorganization of any Obligor, any payment or distribution of assets of any kind or character, whether in cash, property or securities, to which the Guarantor would be entitled but for the provisions of this Section 8, shall be paid or delivered directly to the Noteholder to be applied to the payment of the obligations before any payment or distribution is made to the Guarantor. If, notwithstanding the foregoing, the Guarantor shall receive any payment or distribution of assets of an Obligor to which it is not entitled under the provisions of this Section 8, the Guarantor will hold such payment in trust for the benefit of the Noteholder and will forthwith turn such payment over to the Noteholder to be applied to the payment of the obligations.

Section 9.    Representations of Guarantors. Each of the Guarantors hereby represent and warrants, as to himself, the following to the Noteholder:

(i)    He has full power and authority to execute and deliver this Guaranty and to perform his obligations hereunder.

(ii)    Neither the execution and delivery of this Guaranty nor the performance of his obligations hereunder will violate any agreement to which he is a party or by which he is bound or any laws, orders or decrees of governmental authorities and courts having jurisdiction over such

Section 16.    **IMPORTANT NOTICE:**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**CONFESSION OF JUDGMENT:** Upon a default in any payment of this note at maturity or during any installment when becoming due whether by acceleration or otherwise, Guarantor hereby irrevocably authorizes and empowers Scott D. Stolte, esquire or Alexander H. Ayers, Esquire as Borrower's attorney-in-fact to appear in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia and to confess judgment against Guarantor for the unpaid amount of the Note as evidenced by an affidavit signed by the Lender setting forth the amount them due, prepayment penalties, attorney's fees plus cost of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Guarantor waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

Furthermore, the Guarantor aggress that the above named Attorney-In Fact may appoint in his place and stead one or more substitute attorneys-in-fact to perform the duties granted to the named Attorney-In-Fact pursuant to this Note. The Guarantor hereby waives any claim, cause or right of action which may accrue against the named Attorney-In-Fact or any substitute attorneys-in-fact by confessing judgment, except those matters which result from willful or wanton misconduct. The Guarantor further acknowledges that the named Attorney-In-Fact has not given Guarantor any legal advice and has not entered into any attorney-client relationship with the Guarantor.

Section 17.    Notices, Demands and Requests.  All notices, demands, requests and other communications required or permitted hereunder shall be in writing and shall be given in person or shall be sent by courier or by registered or certified mail, postage prepaid, return receipt requested, (i) to the Guarantor at his address set forth herein and (ii) to the Noteholder at its address set forth in the Note, or to such other persons or addresses as the party entitled to notice shall have specified by at least ten days' prior notice given to the other parties in the manner provided herein.  All such notices, demands, requests and other communications shall be deemed to have been given upon the earlier of (i) delivery at the address specified above, whether in person, by express courier or by mail, or (ii) two business days after the postmark date of mailing.  Rejection or other refusal to accept or the

inability to deliver because of a changed address of which no notice was given shall not invalidate the effectiveness of any notice, demand, request or other communication.

Section 18. <u>Waiver</u>. The Guarantor hereby waives, to the extent permitted by law, (i) the benefits of Sections 49-25 and 49-26 of the Code of Virginia (1950), as amended, and any amendments thereto or any similar statutes or rules of law, (ii) the benefit of any homestead or similar exemption, state or federal, with respect to their obligations hereunder, (iii) notice of any of the matters referred to in Section 3 of this Guaranty, and (iv) any demand (except as expressly specified herein), proof or notice of nonpayment, or failure to comply with, any of the Obligations.

Section 19. <u>Amendments</u>. This Guaranty may only be amended, supplemented or terminated in writing, signed by all of the parties hereto.

Section 20. <u>Entire Agreement</u>. This Guaranty expresses the entire understanding and all agreements between the parties.

Section 21. <u>Counterparts</u>. This Guaranty may be executed in any number of counterparts, each of which shall be an original and all of which together shall constitute but one and the same instrument.

WITNESS the following signatures:

GUARANTORS:

_____        _____
Robert E. Hicks                         Date

_____        _____
April Straus                            Date

COMMONWEALTH OF VIRGINIA
CITY OF RICHMOND, to-wit:

The foregoing instrument was acknowledged before me this 17th day of September, 2016 by Robert E. Hicks, as a Guarantor.

My Commission Expires: 4/30/2018

_____
Notary Public

COMMONWEALTH OF VIRGINIA
CITY OF RICHMOND, to-wit:

The foregoing instrument was acknowledged before me this 17th day of October, 2016 by April
Straus, as a Guarantor.

My Commission Expires: 4/30/2018

_Tracy L. Trollinger_
Notary Public

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT** (as amended or supplemented from time to time, (this "Guaranty") is made as of the 14th **day of August, 2017,** among **ROBERT E. HICKS,** 3232 Grove Avenue, Richmond, Virginia 23221, (the "Guarantor"), and **STONEBRIDGE INVESTMENT COMPANY, LLC,** a Virginia limited liability company (the "Noteholder"), 103 Canterbury Road, Richmond, Virginia 23221.

The Noteholder holds a Note dated August 14, 2017 (as may be amended or supplemented from time to time, the "Note") in the principal amount of **$150,000.00** made by **Renew Properties, LLC,** a Virginia limited liability company (the "Borrower"), which evidences a loan made by the Noteholder to the Borrower. The Note is secured by a Modified Credit Line Deed of Trust of even date herewith (as may be amended or supplemented from time to time), the "Deed of Trust" from **Renew Properties, LLC,** to Alexander H. Ayers and Scott D. Stolte, Trustees. As a condition of making the above-referenced loan to the Borrower, the Noteholder has required that the Guarantors execute this Guaranty.

NOW, THEREFORE, the Guarantor agrees (for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged) as follows:

Section 1.    Interpretation.   Unless the context indicates otherwise, words used in this Guaranty in the singular number shall be deemed to include words in the plural number, and vice versa, and words in one gender shall be deemed to include words in the other genders. The section headings are for convenience only and neither limit nor amplify the provisions of this Guaranty.

Section 2.    Guaranty.    The Guarantor hereby unconditionally guarantees to the Noteholder (i) the full and prompt payment and performance when due (whether at maturity, by acceleration or otherwise) of all sums due under the Note, Deed of Trust and Loan Agreement (collectively with this Guaranty, the "Loan Documents"). This is a guaranty of payment and performance and not merely of collection. If the Borrower shall default in the payment of the principal of or interest on the Note, or if there shall be a default in the performance of any of its other obligations, the Guarantor, upon demand of the Noteholder, shall promptly pay the Noteholder any amount due the Noteholder or perform the obligation which is in default. The Guarantor further agrees to pay all costs and expenses, including reasonable attorney's fees, paid or incurred by the Noteholder in collecting any amount due the Noteholder or in performing any defaulted obligation. Each failure on the part of the Guarantor or the Borrower (each of the foregoing being hereinafter referred to as an "Obligor") to make a payment or perform any other obligation shall give rise to a separate cause of action hereunder.

**EXHIBIT**

F

Section 3.    Guaranty Unconditional.  The obligations of the Guarantor hereunder shall be absolute, continuing and unconditional and, without limiting the generality of the foregoing, shall not be released, discharged or otherwise affected by:

(i)    any extension, renewal, compromise, settlement, waiver or release of any of the obligations of any other Obligor under any of the Loan Documents;

(ii)    any amendment or supplement to any Loan Document;

(iii)    any failure to perfect a lien granted by any of the Loan Documents with respect to any of the property securing the Loan Documents, the release of any such lien or the substitution or exchange of any property;

(iv)    any change in the structure, existence or ownership of the Borrower, or the filing or entry of a final order in any insolvency, bankruptcy, reorganization or other similar proceeding affecting the Borrower or its assets or releasing any Obligor from any of its obligations under any of the Loan Documents;

(V)    the existence of any claim, set-off or other right which the Guarantor may have at any time against the Borrower, the Noteholder or any other Obligor, whether arising from the execution of any of the Loan Documents or otherwise; provided that nothing contained herein shall prevent the assertion of such a claim in a separate suit;

(vi)    the unenforceability, for any reason, of any of the obligations of any other Obligor under any of the Loan Documents;

(vii)    the failure of the Noteholder (A) to file or enforce a claim against any other Obligor (or its estate in a bankruptcy or other proceeding); (B) to give notice of the creation or incurrence by any other Obligor of any new or additional indebtedness or obligation with respect to the property or under the Loan Documents; (C) to commence any action against any Obligor; (D) to disclose to the Guarantor any facts which the Noteholder may now or hereafter know with regard to the property or its construction; (E) to proceed with due diligence to collect any amount due to it under any of the Loan Documents or to realize upon any of the property; or

Section 4.    Discharge; Reinstatement in Certain Circumstances.  This Guaranty shall remain in full force and effect until the principal and interest of the Note and all of the other Obligations shall have been paid or performed in full.  If at any time any payment or performance by the Borrower under any of the Loan Documents is rescinded or is required to be restored or returned because of insolvency, bankruptcy, reorganization or otherwise, the Guarantor's obligations hereunder with respect to such payment or performance shall be reinstated as though such payment had been due or performance required, but not paid or performed, at the time of such rescission or requirement. The Guarantor agrees that payment or performance of any of the Obligations or other acts which toll any statute of limitations applicable to the Obligations shall also toll the statute of limitations

applicable to the Guarantor's liability hereunder.

Section 5.     Subrogation. upon making any payment or taking any other action hereunder, the Guarantor shall be subrogated to the rights of the payee or beneficiary of such action against the Borrower with respect to such payment or action; provided, that no such right of subrogation shall be enforced until all of the Obligations have been fully paid or performed.

Section 6.     Stay of Acceleration.  If acceleration of the time for payment of any amount payable by the Borrower pursuant to the Loan Documents is stayed upon insolvency or bankruptcy, such amount and all other amounts subject to acceleration under the terms of the Loan Documents shall, nevertheless, be payable by the Guarantor on demand by the Noteholder.

Section 7.     Rights of Noteholder Not Impaired.  No act or omission of any kind or at any time upon the part of the Noteholder in respect of any matter whatsoever shall in any way affect or impair the rights of the Noteholder to enforce any right, power or benefit of the Noteholder under this Guaranty, and no set-off, claim, diminution of any obligation or defense of any kind or nature which the Guarantor have or may have against the Noteholder shall be available against the Noteholder in any suit or action brought by the Noteholder to enforce any of its rights under this Guaranty.  Nothing in this Guaranty shall be construed as a waiver by the Guarantor of any rights or claims the Guarantor may have against the Noteholder under this Guaranty or otherwise, but any recovery upon such rights and claims shall be had from the Noteholder separately, it being the intent of this Guaranty that the Guarantor shall be unconditionally and absolutely obligated to perform fully all of the Guarantor's obligations hereunder for the benefit of the Noteholder.

Section 8.     Subordination by Guarantor; Payment or Distribution to Guarantor.   The Guarantor hereby subordinates all indebtedness of the Borrower owing to them, whether now existing or hereafter arising, to the prior payment and performance in full of the obligations.  So long as no Default exists and no Event of Default has occurred under the Loan Documents, the Guarantor may continue to receive and retain payments on such indebtedness.  Upon any dissolution, winding-up, liquidation or reorganization of any Obligor, any payment or distribution of assets of any kind or character, whether in cash, property or securities, to which the Guarantor would be entitled but for the provisions of this Section 8, shall be paid or delivered directly to the Noteholder to be applied to the payment of the obligations before any payment or distribution is made to the Guarantor.   If, notwithstanding the foregoing, the Guarantor shall receive any payment or distribution of assets of an Obligor to which it is not entitled under the provisions of this Section 8, the Guarantor will hold such payment in trust for the benefit of the Noteholder and will forthwith turn such payment over to the Noteholder to be applied to the payment of the obligations.

Section 9.     Representations of Guarantors.  Each of the Guarantors hereby represent and warrants, as to himself, the following to the Noteholder:

(i)     He has full power and authority to execute and deliver this Guaranty and to perform his obligations hereunder.

(ii)     Neither the execution and delivery of this Guaranty nor the performance of his obligations

hereunder will violate any agreement to which he is a party or by which he is bound or any laws, orders or decrees of governmental authorities and courts having jurisdiction over such Guarantor.

(iii)    He has duly executed and delivered this Guaranty, and this Guaranty constitutes a valid and binding obligation of such Guarantor.

(iv)    There are no pending or, to the best of his knowledge, threatened actions, suits, proceedings or investigations of a legal, equitable, regulatory, administrative or legislative nature, the resolution of which could have a material adverse affect on his business, assets or condition (financial or otherwise) or its ability to perform his obligations under this Guaranty.

Section 10.    Financial Statements. The Guarantor shall, within 90 days after the end of each calendar year, furnish to the Noteholder a statement of his financial condition, as of the end of such preceding calendar year, in such detail as the Noteholder may reasonably request, as well as such other financial information as the Noteholder may from time to time reasonably request.

Section 11.    Noteholder's Right of Set-Off. Upon the acceleration of the maturity of the Note or the occurrence of any default under the Loan Documents, the Noteholder is hereby irrevocably authorized, at any time and from time to time without notice to the Guarantor, any such notice being expressly waived, to set off, appropriate and apply any amount, including any deposit, or claim, whether or not matured, owing by the Noteholder to or for the account of the Guarantor, or any part thereof against the obligations of the Guarantor to the Noteholder hereunder. The rights of the Noteholder under this Section 11 are in addition to any other rights and remedies which the Noteholder may have.

Section 12.    Venue; Waiver of Jury Trial. The Guarantor agrees that any suit, action or proceeding arising out of or relating to this Guaranty may be instituted in the circuit Court of the City of Richmond, Virginia, or in the United States District Court for the Eastern District of Virginia, Richmond Division (assuming such court has jurisdiction), at the option of the Noteholder, and the Guarantor hereby waive any objection which it may have to such venue and irrevocably submit to the jurisdiction of either of such courts in any such suit, action or proceeding. Nothing herein shall affect the right of the Noteholder to proceed against the Guarantor in any other jurisdiction. To the extent permitted by law, the Guarantor waive any right they may have to a trial by jury in any action or proceeding to enforce or collect any of the obligations of the Guarantor hereunder or otherwise relating to any of the Loan Documents, whether such action or proceeding is instituted by the Noteholder, the Guarantor or any other party.

Section 13.    Successors and Assigns. This Guaranty shall inure to the benefit of and be binding on the parties hereto and their respective heirs, personal representatives, successors and assigns.

Section 14.    Severability. If any provision of this Guaranty or the application thereof in any circumstance is held to be unenforceable, the remainder of this Guaranty shall not be affected thereby and shall remain enforceable.

Section 15.    Applicable Law. This Guaranty shall be governed by the laws of Virginia.

Section 16.    **IMPORTANT NOTICE:**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**CONFESSION OF JUDGMENT:** Upon a default in any payment of this note at maturity or during any installment when becoming due whether by acceleration or otherwise, Guarantor hereby irrevocably authorizes and empowers Scott D. Stolte, esquire or Alexander H. Ayers, Esquire as Borrower's attorney-in-fact to appear in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia and to confess judgment against Guarantor for the unpaid amount of the Note as evidenced by an affidavit signed by the Lender setting forth the amount them due, prepayment penalties, attorney's fees plus cost of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Guarantor waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

Furthermore, the Guarantor aggress that the above named Attorney-In Fact may appoint in his place and stead one or more substitute attorneys-in-fact to perform the duties granted to the named Attorney-In-Fact pursuant to this Note. The Guarantor hereby waives any claim, cause or right of action which may accrue against the named Attorney-In-Fact or any substitute attorneys-in-fact by confessing judgment, except those matters which result from willful or wanton misconduct. The Guarantor further acknowledges that the named Attorney-In-Fact has not given Guarantor any legal advice and has not entered into any attorney-client relationship with the Guarantor.

Section 17.    Notices, Demands and Requests. All notices, demands, requests and other communications required or permitted hereunder shall be in writing and shall be given in person or shall be sent by courier or by registered or certified mail, postage prepaid, return receipt requested, (i) to the Guarantor at his address set forth herein and (ii) to the Noteholder at its address set forth in the Note, or to such other persons or addresses as the party entitled to notice shall have specified by at least ten days' prior notice given to the other parties in the manner provided herein. All such notices,

demands, requests and other communications shall be deemed to have been given upon the earlier of (i) delivery at the address specified above, whether in person, by express courier or by mail, or (ii) two business days after the postmark date of mailing. Rejection or other refusal to accept or the inability to deliver because of a changed address of which no notice was given shall not invalidate the effectiveness of any notice, demand, request or other communication.

Section 18.   Waiver.  The Guarantor hereby waives, to the extent permitted by law, (i) the benefits of Sections 49-25 and 49-26 of the Code of Virginia (1950), as amended, and any amendments thereto or any similar statutes or rules of law, (ii) the benefit of any homestead or similar exemption, state or federal, with respect to their obligations hereunder, (iii) notice of any of the matters referred to in Section 3 of this Guaranty, and (iv) any demand (except as expressly specified herein), proof or notice of nonpayment, or failure to comply with, any of the Obligations.

Section 19.   Amendments.   This Guaranty may only be amended, supplemented or terminated in writing, signed by all of the parties hereto.

Section 20.   Entire Agreement.  This Guaranty expresses the entire understanding and all agreements between the parties.

Section 21.   Counterparts.  This Guaranty may be executed in any number of counterparts, each of which shall be an original and all of which together shall constitute but one and the same instrument.

WITNESS the following signatures:

GUARANTOR:

_____
Robert E. Hicks

_7_/_14_/_17_
Date

COMMONWEALTH OF VIRGINIA
CITY OF RICHMOND, to-wit:

The foregoing instrument was acknowledged before me this 14th day of ~~August~~, 2017, by Robert E. Hicks, as a Guarantor.

My Commission Expires: 4/30/2022

_____
Notary Public

TRACY L. TROLLINGER
NOTARY PUBLIC
MY COMMISSION
NUMBER
7346065
COMMONWEALTH OF VIRGINIA

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT** (as amended or supplemented from time to time, (this "Guaranty") is made as of the **26th day of May, 2015**, among **ROBERT E. HICKS and APRIL STRAUS**, 3232 Grove Avenue, Richmond, Virginia 23221, jointly and severally, (the "Guarantor"), and **STONEBRIDGE INVESTMENT COMPANY, LLC**, a Virginia limited liability company (the "Noteholder"), 103 Canterbury Road, Richmond, Virginia 23221.

The Noteholder holds a Note dated May 27, 2016 (as may be amended or supplemented from time to time, the "Note") in the principal amount of **$412,000.00** made by **Renew Properties, LLC**, a Virginia limited liability company (the "Borrower"), which evidences a loan made by the Noteholder to the Borrower. The Note is secured by a Credit Line Deed of Trust of even date herewith (as may be amended or supplemented from time to time), the "Deed of Trust" from **Renew Properties, LLC**, to Alexander H. Ayers and Scott D. Stolte, Trustees. As a condition of making the above-referenced loan to the Borrower, the Noteholder has required that the Guarantors execute this Guaranty.

NOW, THEREFORE, the Guarantor agrees (for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged) as follows:

Section 1.    <u>Interpretation</u>.  Unless the context indicates otherwise, words used in this Guaranty in the singular number shall be deemed to include words in the plural number, and vice versa, and words in one gender shall be deemed to include words in the other genders. The section headings are for convenience only and neither limit nor amplify the provisions of this Guaranty.

Section 2.    <u>Guaranty</u>.  The Guarantor hereby unconditionally guarantees to the Noteholder (i) the full and prompt payment and performance when due (whether at maturity, by acceleration or otherwise) of all sums due under the Note, Deed of Trust and Loan Agreement (collectively with this Guaranty, the "Loan Documents").  This is a guaranty of payment and performance and not merely of collection.  If the Borrower shall default in the payment of the principal of or interest on the Note, or if there shall be a default in the performance of any of its other obligations, the Guarantor, upon demand of the Noteholder, shall promptly pay the Noteholder any amount due the Noteholder or perform the obligation which is in default.  The Guarantor further agrees to pay all costs and expenses, including reasonable attorney's fees, paid or incurred by the Noteholder in collecting any amount due the Noteholder or in performing any defaulted obligation. Each failure on the part of the Guarantor or the Borrower (each of the foregoing being hereinafter referred to as an "Obligor") to make a payment or perform any other obligation shall give rise to a separate cause of action hereunder.

Page 1 of 7



Section 3.     Guaranty Unconditional.  The obligations of the Guarantor hereunder shall be absolute, continuing and unconditional and, without limiting the generality of the foregoing, shall not be released, discharged or otherwise affected by:

(i)      any extension, renewal, compromise, settlement, waiver or release of any of the obligations of any other Obligor under any of the Loan Documents;

(ii)     any amendment or supplement to any Loan Document;

(iii)    any failure to perfect a lien granted by any of the Loan Documents with respect to any of the property securing the Loan Documents, the release of any such lien or the substitution or exchange of any property;

(iv)     any change in the structure, existence or ownership of the Borrower, or the filing or entry of a final order in any insolvency, bankruptcy, reorganization or other similar proceeding affecting the Borrower or its assets or releasing any Obligor from any of its obligations under any of the Loan Documents;

(V)      the existence of any claim, set-off or other right which the Guarantor may have at any time against the Borrower, the Noteholder or any other Obligor, whether arising from the execution of any of the Loan Documents or otherwise; provided that nothing contained herein shall prevent the assertion of such a claim in a separate suit;

(vi)     the unenforceability, for any reason, of any of the obligations of any other Obligor under any of the Loan Documents;

(vii)    the failure of the Noteholder (A) to file or enforce a claim against any other Obligor (or its estate in a bankruptcy or other proceeding); (B) to give notice of the creation or incurrence by any other Obligor of any new or additional indebtedness or obligation with respect to the property or under the Loan Documents; (C) to commence any action against any Obligor; (D) to disclose to the Guarantor any facts which the Noteholder may now or hereafter know with regard to the property or its construction; (E) to proceed with due diligence to collect any amount due to it under any of the Loan Documents or to realize upon any of the property; or

Section 4.     Discharge; Reinstatement in Certain Circumstances.  This Guaranty shall remain in full force and effect until the principal and interest of the Note and all of the other Obligations shall have been paid or performed in full.  If at any time any payment or performance by the Borrower under any of the Loan Documents is rescinded or is required to be restored or returned because of insolvency, bankruptcy, reorganization or otherwise, the Guarantor's obligations hereunder with respect to such payment or performance shall be reinstated as though such payment had been due or performance required, but not paid or performed, at the time of such rescission or requirement. The Guarantor agrees that payment or performance of any of the Obligations or other acts which toll any statute of limitations applicable to the Obligations shall also toll the statute of limitations applicable to the Guarantor's liability hereunder.

Section 5.    Subrogation. upon making any payment or taking any other action hereunder, the Guarantor shall be subrogated to the rights of the payee or beneficiary of such action against the Borrower with respect to such payment or action; provided, that no such right of subrogation shall be enforced until all of the Obligations have been fully paid or performed.

Section 6.    Stay of Acceleration.  If acceleration of the time for payment of any amount payable by the Borrower pursuant to the Loan Documents is stayed upon insolvency or bankruptcy, such amount and all other amounts subject to acceleration under the terms of the Loan Documents shall, nevertheless, be payable by the Guarantor on demand by the Noteholder.

Section 7.    Rights of Noteholder Not Impaired.  No act or omission of any kind or at any time upon the part of the Noteholder in respect of any matter whatsoever shall in any way affect or impair the rights of the Noteholder to enforce any right, power or benefit of the Noteholder under this Guaranty, and no set-off, claim, diminution of any obligation or defense of any kind or nature which the Guarantor have or may have against the Noteholder shall be available against the Noteholder in any suit or action brought by the Noteholder to enforce any of its rights under this Guaranty.  Nothing in this Guaranty shall be construed as a waiver by the Guarantor of any rights or claims the Guarantor may have against the Noteholder under this Guaranty or otherwise, but any recovery upon such rights and claims shall be had from the Noteholder separately, it being the intent of this Guaranty that the Guarantor shall be unconditionally and absolutely obligated to perform fully all of the Guarantor's obligations hereunder for the benefit of the Noteholder.

Section 8.    Subordination by Guarantor; Payment or Distribution to Guarantor.   The Guarantor hereby subordinates all indebtedness of the Borrower owing to them, whether now existing or hereafter arising, to the prior payment and performance in full of the obligations.  So long as no Default exists and no Event of Default has occurred under the Loan Documents, the Guarantor may continue to receive and retain payments on such indebtedness.  Upon any dissolution, winding-up, liquidation or reorganization of any Obligor, any payment or distribution of assets of any kind or character, whether in cash, property or securities, to which the Guarantor would be entitled but for the provisions of this Section 8, shall be paid or delivered directly to the Noteholder to be applied to the payment of the obligations before any payment or distribution is made to the Guarantor.  If, notwithstanding the foregoing, the Guarantor shall receive any payment or distribution of assets of an Obligor to which it is not entitled under the provisions of this Section 8, the Guarantor will hold such payment in trust for the benefit of the Noteholder and will forthwith turn such payment over to the Noteholder to be applied to the payment of the obligations.

Section 9.    Representations of Guarantors.  Each of the Guarantors hereby represent and warrants, as to himself, the following to the Noteholder:

(i)    He has full power and authority to execute and deliver this Guaranty and to perform his obligations hereunder.

(ii)    Neither the execution and delivery of this Guaranty nor the performance of his obligations hereunder will violate any agreement to which he is a party or by which he is bound or any laws, orders or decrees of governmental authorities and courts having jurisdiction over such

Guarantor.

(iii)   He has duly executed and delivered this Guaranty, and this Guaranty constitutes a valid and binding obligation of such Guarantor.

(iv)   There are no pending or, to the best of his knowledge, threatened actions, suits, proceedings or investigations of a legal, equitable, regulatory, administrative or legislative nature, the resolution of which could have a material adverse affect on his business, assets or condition (financial or otherwise) or its ability to perform his obligations under this Guaranty.

Section 10.   _Financial Statements_. The Guarantor shall, within 90 days after the end of each calendar year, furnish to the Noteholder a statement of his financial condition, as of the end of such preceding calendar year, in such detail as the Noteholder may reasonably request, as well as such other financial information as the Noteholder may from time to time reasonably request.

Section 11.   _Noteholder's Right of Set-Off_. Upon the acceleration of the maturity of the Note or the occurrence of any default under the Loan Documents, the Noteholder is hereby irrevocably authorized, at any time and from time to time without notice to the Guarantor, any such notice being expressly waived, to set off, appropriate and apply any amount, including any deposit, or claim, whether or not matured, owing by the Noteholder to or for the account of the Guarantor, or any part thereof against the obligations of the Guarantor to the Noteholder hereunder. The rights of the Noteholder under this Section 11 are in addition to any other rights and remedies which the Noteholder may have.

Section 12.   _Venue; Waiver of Jury Trial_. The Guarantor agrees that any suit, action or proceeding arising out of or relating to this Guaranty may be instituted in the circuit Court of the City of Richmond, Virginia, or in the United States District Court for the Eastern District of Virginia, Richmond Division (assuming such court has jurisdiction), at the option of the Noteholder, and the Guarantor hereby waive any objection which it may have to such venue and irrevocably submit to the jurisdiction of either of such courts in any such suit, action or proceeding. Nothing herein shall affect the right of the Noteholder to proceed against the Guarantor in any other jurisdiction. To the extent permitted by law, the Guarantor waive any right they may have to a trial by jury in any action or proceeding to enforce or collect any of the obligations of the Guarantor hereunder or otherwise relating to any of the Loan Documents, whether such action or proceeding is instituted by the Noteholder, the Guarantor or any other party.

Section 13.   _Successors and Assigns_. This Guaranty shall inure to the benefit of and be binding on the parties hereto and their respective heirs, personal representatives, successors and assigns.

Section 14.   _Severability_. If any provision of this Guaranty or the application thereof in any circumstance is held to be unenforceable, the remainder of this Guaranty shall not be affected thereby and shall remain enforceable.

Section 15.   _Applicable Law_. This Guaranty shall be governed by the laws of Virginia.

Section 16.    **IMPORTANT NOTICE:**

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

**CONFESSION OF JUDGMENT:** Upon a default in any payment of this note at maturity or during any installment when becoming due whether by acceleration or otherwise, Guarantor hereby irrevocably authorizes and empowers Scott D. Stolte or Alexander H. Ayers, Esquire as Borrower's attorney-in-fact to appear in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia and to confess judgment against Guarantor for the unpaid amount of the Note as evidenced by an affidavit signed by the Lender setting forth the amount them due, prepayment penalties, attorney's fees plus cost of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Guarantor waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

Furthermore, the Guarantor aggress that the above named Attorney-In Fact may appoint in his place and stead one or more substitute attorneys-in-fact to perform the duties granted to the named Attorney-In-Fact pursuant to this Note. The Guarantor hereby waives any claim, cause or right of action which may accrue against the named Attorney-In-Fact or any substitute attorneys-in-fact by confessing judgment, except those matters which result from willful or wanton misconduct.

Section 17.    Notices, Demands and Requests. All notices, demands, requests and other communications required or permitted hereunder shall be in writing and shall be given in person or shall be sent by courier or by registered or certified mail, postage prepaid, return receipt requested, (i) to the Guarantor at his address set forth herein and (ii) to the Noteholder at its address set forth in the Note, or to such other persons or addresses as the party entitled to notice shall have specified by at least ten days' prior notice given to the other parties in the manner provided herein. All such notices, demands, requests and other communications shall be deemed to have been given upon the earlier of (i) delivery at the address specified above, whether in person, by express courier or by mail, or (ii) two business days after the postmark date of mailing. Rejection or other refusal to accept or the inability to deliver because of a changed address of which no notice was given shall not invalidate the effectiveness of any notice, demand, request or other communication.

Section 18.    <u>Waiver</u>.  The Guarantor hereby waives, to the extent permitted by law, (i) the benefits of Sections 49-25 and 49-26 of the Code of Virginia (1950), as amended, and any amendments thereto or any similar statutes or rules of law, (ii) the benefit of any homestead or similar exemption, state or federal, with respect to their obligations hereunder, (iii) notice of any of the matters referred to in Section 3 of this Guaranty, and (iv) any demand (except as expressly specified herein), proof or notice of nonpayment, or failure to comply with, any of the Obligations.

Section 19.    <u>Amendments</u>.  This Guaranty may only be amended, supplemented or terminated in writing, signed by all of the parties hereto.

Section 20.    <u>Entire Agreement</u>.  This Guaranty expresses the entire understanding and all agreements between the parties.

Section 21.    <u>Counterparts</u>.  This Guaranty may be executed in any number of counterparts, each of which shall be an original and all of which together shall constitute but one and the same instrument.

WITNESS the following signatures:

GUARANTORS:

Robert E. Hicks

_____
Date

April Straus

_____
Date

COMMONWEALTH OF VIRGINIA
CITY OF RICHMOND, to-wit:

The foregoing instrument was acknowledged before me this 26th day of May, 2016 by Robert E. Hicks, as a Guarantor.

My Commission Expires: 4/30/2018

Notary Public



TRACY L. TROLLINGER
NOTARY PUBLIC
MY COMMISSION
NUMBER
7346065
COMMONWEALTH OF VIRGINIA

COMMONWEALTH OF VIRGINIA
CITY OF RICHMOND, to-wit:

The foregoing instrument was acknowledged before me this 26th day of May, 2016, by April
Straus, as a Guarantor.

My Commission Expires: 4/30/2018

Notary Public



**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**THIS LOAN IS FOR BUSINESS PURPOSE ONLY**

**<u>COMMERCIAL DEED OF TRUST NOTE</u>**

|  |  |
|---|---|
| **U.S. $675,000.00** | **Richmond, Virginia**<br>**October 17, 2016** |

1. <u>BORROWER'S PROMISE TO PAY.</u>

FOR VALUE RECEIVED, **Renew Properties, LLC,** a Virginia limited liability company (hereinafter, "Borrower") 3232 Grove Avenue, Richmond, Virginia 23221, hereby promises to pay to **STONEBRIDGE INVESTMENT COMPANY, LLC,** a Virginia limited liability company, or order, (hereinafter referred to as the "Noteholder"), 103 Canterbury Road, Richmond, Virginia 23221 or to such other address as the Noteholder shall specify to the Borrower, in lawful money of the United States of America, the principal sum of **SIX HUNDRED SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($675,000.00),** together with interest on the unpaid principal balance outstanding in accordance with the following terms and conditions. Provided, however, if not sooner paid the entire indebtedness evidenced hereby shall be fully due and payable on May 1, 2017.

2. <u>INTEREST AND MONTHLY PAYMENT.</u>

Borrower shall pay interest on all principal outstanding under this Note at the rate of **Twelve per centum (12%)** per annum, calculated based on a 360 day year, which payments shall be interest-only payments in monthly installments of **SIX THOUSAND SEVEN HUNDRED FIFTY AND NO/100 DOLLARS ($6,750.00),** and which payments must be received by Noteholder on or before the first day of each month, the first payment being due and payable **December 1, 2016**, TIME BEING OF THE ESSENCE.

For the convenience of the Lender, all Payments shall be made payable to Ayers & Stolte, P.C. 710 North Hamilton Street, Richmond, Virginia 23221 who shall deposit said funds into its escrow account and then wire the funds to the Lender.

In addition to the above principal and interest payments, the maker agrees to pay the Lender, an origination fee in the amount of **$13,500.00** which has been earned by the Lender, $10,000.00 of which is now due and payable.



3.    BORROWER'S FAILURE TO PAY AS REQUIRED/DEFAULT.

(a)    If the Noteholder has not received the full amount of any Borrower's monthly payments by the end of five (5) calendar days after the payment is due, TIME BEING OF THE ESSENCE, Borrower will be in default and will pay a late handling fee to the Noteholder.  The amount of the fee will be five percent (5%) of Borrower's overdue installment payment.  Borrower will pay the late charge promptly but only once on any late payment.  Collection of the late charge shall not be deemed a waiver by the Noteholder of any of its rights under this Note.

(b)    A default in any of the Loan Documents for any other loan made by the Lender to the Borrower or any entity in which the Borrower has an ownership interest shall be deemed a default in all of the loan documents for this Loan and the Lender shall have all such rights as are set out in said Loan Documents upon default.

(c)    A default in any other loan secured by any of the real property that also acts as security for this loan shall be deemed a default in all of the loan documents for this Loan and the Lender shall have all such rights as are set out in said Loan Documents upon default.

(d)    In the event of a default hereunder or event of default under any of the other Loan Documents the Noteholder shall have the right to accelerate the payments and all sums due hereunder and declare the entire indebtedness evidenced hereby immediately due and payable.

(e)    In the event Borrower violates any term, covenant or condition of this Note, the Deed of Trust, or any other Loan Documents (hereinafter defined), whether or not Noteholder declares a default, then Borrower shall be liable to Noteholder for all of Noteholder's costs and expenses occasioned by such event including, without limitation, Noteholder's reasonable attorney's fees.  All of such costs and expenses shall be owed to Noteholder by Borrower under this Note and shall be secured by the Deed of Trust securing this Note.  In the event suite is brought to collect this Note, Borrower shall pay Noteholder's reasonable attorney's fees and costs.

(f)    In the event any payment due hereunder is not paid when due (whether upon acceleration, at maturity or otherwise), such overdue payment shall continue to bear interest (including, to the extent permitted by law, interest on any overdue installment of interest) from the date on which such payment was due at an annual rate of eighteen percent (18.0%).  In addition, the Borrower shall pay the Lender the late charge specified above.

4.  GENERAL PAYMENT TERMS.

Interest shall be calculated using a 360-day year.  Receipt of a check shall not constitute final payment hereunder until such check is fully and finally honored by Bank or other financial institution upon which it is drawn, and any wire transfer of funds shall not

constitute payment until actually credited to such bank account of the Noteholder as the Noteholder may from time to time designate.

In addition thereto, any payment, whether a prepayment of regular interest installment payment, is not considered properly paid unless the said payment is paid through the first day of the month next succeeding the payment unless the said payment is received by Noteholder prior to 12:00 P.M. (noon) on the first day of a month.

5.    LOAN DOCUMENTS.

This Note, the Credit Line Deed of Trust, Assignment of Lease Rents and Profits and Security Agreement, (hereinafter defined), the Commercial Loan Commitment Letter (the "Loan Commitment"), the Loan Agreement, the Financing Statements and all other documents evidencing and securing the indebtedness evidenced hereby are sometimes herein referred to collectively as "the Loan Documents".

6.    PREPAYMENT; RENEWAL.

The right is reserved to anticipate this Note from time to time, in whole or in part, without penalty, provided however, the Lender must be paid twelve (12) month's worth of interest on the sum of $100,000.00 which is $12,000.00.

The Lender may, in the Lender's sole discretion and with no obligation to do so, extend the loan for an additional period of time upon the written request of Borrower not less than thirty (30) days prior to the initial maturity provided that Borrower pays an extension fee of two percent (2.0%) of the unpaid principal balance not later than the initial maturity date. If said renewal fee is not paid on or before the initial maturity date, it shall be added to the principal balance due under the Loan Documents and shall bear interest at the rate of twelve percent (12%) per annum.

7.    SECURITY.

This Note is secured by a Credit Line Deed of Trust, Assignment of Leases and Security Agreement of even date herewith (the "Deed of Trust") granting a first lien on 1702 Grove Avenue, Richmond, Virginia 23220 (City of Richmond).

8.    WAIVER; EXTENTIONS

(a)    Presentment, demand, notice of dishonor and protest and (to the extent permitted by applicable law) the benefits of the Homestead and all other exemptions provided the Borrower are hereby waived. To the extent permitted by applicable law, the Borrower hereby further waives and renounces for himself, his legal representatives, heirs, beneficiaries, successors and assigns, all rights to any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided, or which may hereafter be provided, by the laws of the Commonwealth of Virginia or of the United States of America or of any other State

thereof, both as to himself and in and to all of his property, real and personal, against the enforcement and collection of the indebtedness evidenced hereby. The Borrower agrees that he shall remain liable for the payment hereof notwithstanding any agreement for the extension of the due date of any amount payable hereunder made by the Noteholder after the maturity thereof. The Noteholder shall not be deemed to have waived any of the Noteholder's rights or remedies hereunder unless such waiver is expressly set forth in a writing signed by the Noteholder, and no delay or omission by the Noteholder in exercising, or failure by the Noteholder on any one or more occasions to exercise any of the Noteholder's rights hereunder, under the other Loan Documents, or at law or in equity, including, without limitation, the Noteholder's right, after any default hereunder or event of default under any of 'the other Loan Documents, to declare the entire indebtedness evidenced hereby immediately due and payable, shall be construed as a novation of this Note or shall operate as a waiver or prevent the subsequent exercise of any or all of such rights. Acceptance by the Noteholder of any portion or all of any sum payable hereunder whether before, on, or after the due date of such payment, shall not be a waiver of the Noteholder's right either to require prompt payment when due of all other sums payable hereunder or to exercise any of Noteholder's rights, powers and remedies hereunder or under the other Loan Documents. A waiver of any right in writing on one occasion shall not be construed as a waiver of the Noteholder's right to insist thereafter upon strict compliance with the terms hereof without previous notice of such intention being given to the Borrower, and no exercise of any right by the Noteholder shall constitute or be deemed to constitute an election of remedies by the Noteholder precluding the subsequent exercise by the Noteholder of any or all of the rights, powers and remedies available to it hereunder, under any of the other Loan Documents, or at law or in equity. The Borrower expressly waives the benefit of statute or rule of law or equity now provided, or which hereafter be provided, which would produce a result contrary to, or in conflict with, the foregoing. The Borrower consents to any and all renewals and extensions in the time of payment hereof without in any way affecting the liability of the Borrower or any person liable or to become liable with respect to any indebtedness evidenced hereby. No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person or entity now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change or affect the original liability of the undersigned under this Note, either in whole or in part, unless the Noteholder agrees otherwise in writing.

(b)    The Borrower agrees that in the event Borrower, or any member of Borrower if Borrower is a limited liability company, or any general partner of Borrower if Borrower is a partnership, or any Guarantor of this Note shall: (a) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended; (b) be the subject of any order for relief issued under Title 11 of the U.S. Code, as amended; (c) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency or other relief for debtors; (d) seek or consent to or acquiesce in the appointment of any trustee, receiver, conservator, or liquidator; (e) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition,

readjustment, liquidation, dissolution or similar relief under any present or future federal or state law or law relating to bankruptcy, insolvency, or relief for debtors, the Noteholder immediately shall be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code, as amended, or otherwise, on or against the exercise of the rights and remedies available to it under the Loan Documents.

(c)   The Borrower consents to and agrees that the venue for any action brought under this Note or any of the Loan Documents will be in the Circuit Court of the City of Richmond, Virginia.

(d)   By executing this Note, the Borrower irrevocably waives any right to trial by jury in any action, proceeding or counterclaim arising out of or related to this Note or any of the Loan Documents or the transactions contemplated herein or in the Loan Documents.

(e)   The Borrower represents and warrants that it was represented by legal counsel of its choice, which counsel has reviewed this Note and has advised Borrower of its content and meaning and that it has reviewed the waivers and provisions contained in this Note, or that it has been advised to seek such legal counsel and has voluntarily decided to forego same, and in either event he has freely, voluntarily and without duress agreed to execute this Note.

9.   **CONFESSION OF JUDGMENT NOTICE:**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**CONFESSION OF JUDGMENT**: Upon a default in any payment of this note at maturity or during any installment when becoming due whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers Scott D. Stolte, Esquire, or Alexander H. Ayers, Esquire, as Borrower's attorney-in-fact to appear in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by the Noteholder setting forth the amount them due, prepayment penalties, attorney's fees plus cost of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing .warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised

from time to time as Noteholder may elect until all amounts owing on this Note have been paid in full.

Furthermore, the Guarantor aggress that the above named Attorney-In Fact may appoint in his place and stead one or more substitute attorneys-in-fact to perform the duties granted to the named Attorney-In-Fact pursuant to this Guaranty. The Guarantor hereby waives any claim, cause or right of action which may accrue against the named Attorney-In-Fact or any substitute attorneys-in-fact by confessing judgment, except those matters which result from willful or wanton misconduct. The Guarantor further acknowledges that the named Attorney-In-Fact has not given Guarantor any legal advice and has not entered into any attorney-client relationship with the Guarantor.

10.    OBLIGATIONS OF PERSONS UNDER THIS NOTE.

If more than one person or entity executes this Note, then each such person or entity is fully and personally obligated to keep and perform all of the promises, covenants and provisions set forth in this Note, including, without limitation, the promise to pay the full amount secured. All guarantors, sureties or endorsers of this Note and any person, firm or entity who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note are also obligated to keep all of the promises, covenants and provisions made in this note, including, without limitation the promise to pay the full amount secured. The obligations of all Borrowers and other entities and persons liable hereunder are joint and several.

11.    LIMITS.

a.    If a law which applies to this Loan and which sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Loan exceed the permitted limits, and so that Borrower is entitled to plead such law affirmatively or as a defense to the collection of such interest or other loan charges, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Borrower which exceed permitted limits will be refunded to Borrower. The Noteholder may choose to make this refund by reducing the principal Borrower owes under this Note or by making direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

b.    Should any term, covenant, provision or condition of this Note be held by a court of competent jurisdiction to be void or invalid, the same shall not affect any other term, covenant, provision or condition of this Note and the remainder shall be effective as though such term, covenant, provision or condition had not been contained herein.

12.    NOTICE.

All notices, requests, demands and other communications to the Borrower, or either of them if more than one, or to any officer, director, manager, member manager, general partner or trustee of Borrower if Borrower is a Corporation, Partnership, Limited Liability Company or Trust, with respect to this Note, shall be delivered by hand, or sent prepaid by Federal Express or United Parcel Service (or comparable overnight delivery service), or sent by United States mail, certified, postage prepaid, return receipt required to the Borrower's address at 3232 Grove Avenue, Richmond, Virginia 23221, or to the most recent address of Borrower appearing on Noteholder's records. Any notice to the Noteholder shall be given in the same manner, to the Noteholder's address stated herein, or to such other address as the Noteholder may designate in writing to Borrower from time to time.

11.    AMENDMENTS ONLY IN WRITING.

The provisions hereof may not be waived, changed, modified or discharged orally, but only by an agreement in writing signed by the Borrower and the Noteholder and executed with the same formality as this instrument.

WITNESS the following signatures:

BORROWER:

Renew Properties, LLC
a Virginia limited liability company

By: _____
        Robert E. Hicks, Sole Member/Manager

COMMONWEALTH OF VIRGINIA
CITY OF RICHMOND, to-wit:

The foregoing instrument was acknowledged before me this 17th day of October, 2016 by Robert E. Hicks, Sole Member/Manager of Renew Properties, LLC.

My Commission Expires: 4-30-2019 Registration Number: 7346065

_____
Notary Public

**EXHIBIT**

I

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**THIS LOAN IS FOR BUSINESS PURPOSE ONLY**

**COMMERCIAL DEED OF TRUST NOTE**

**Richmond, Virginia**
**August 14, 2017**

**U.S. $150,000.00**

1.  BORROWER'S PROMISE TO PAY.

    FOR VALUE RECEIVED, **Renew Properties, LLC**, a Virginia limited liability company (hereinafter, "Borrower") 3232 Grove Avenue, Richmond, Virginia 23221, hereby promises to pay to **STONEBRIDGE INVESTMENT COMPANY, LLC**, a Virginia limited liability company, or order, (hereinafter referred to as the "Noteholder"), 103 Canterbury Road, Richmond, Virginia 23221 or to such other address as the Noteholder shall specify to the Borrower, in lawful money of the United States of America, the principal sum of **One Hundred Fifty Thousand and No/100 Dollars ($150,000.00),** together with interest on the unpaid principal balance outstanding in accordance with the following terms and conditions. Provided, however, if not sooner paid the entire indebtedness evidenced hereby shall be fully due and payable on DEMAND.

2.  INTEREST AND MONTHLY PAYMENT.

    Borrower shall pay interest on all principal outstanding under this Note at the rate of **Twelve per centum (12%)** per annum, calculated based on a 360 day year.

    For the convenience of the Lender, all Payments shall be made payable to Ayers & Stolte, P.C. 710 North Hamilton Street, Richmond, Virginia 23221 who shall deposit said funds into its escrow account and then wire the funds to the Lender.

3.  BORROWER'S FAILURE TO PAY AS REQUIRED/DEFAULT.

    (a)   If the Noteholder has not received the full amount of any Borrower's monthly payments by the end of five (5) calendar days after the payment is due, TIME BEING OF THE ESSENCE, Borrower will be in default and will pay a late handling fee to the Noteholder. The amount of the fee will be five percent (5%) of Borrower's overdue installment payment. Borrower will pay the late charge promptly but only once on any late payment. Collection of the late charge shall not be deemed a waiver by the Noteholder of any of its rights under this Note.

    (b)   A default in any of the Loan Documents for any other loan made by the Lender to the Borrower or any entity in which the Borrower has an ownership interest shall be

deemed a default in all of the loan documents for this Loan and the Lender shall have all such rights as are set out in said Loan Documents upon default.

(c)    A default in any other loan secured by any of the real property that also acts as security for this loan shall be deemed a default in all of the loan documents for this Loan and the Lender shall have all such rights as are set out in said Loan Documents upon default.

(d)    In the event of a default hereunder or event of default under any of the other Loan Documents the Noteholder shall have the right to accelerate the payments and all sums due hereunder and declare the entire indebtedness evidenced hereby immediately due and payable.

(e)    In the event Borrower violates any term, covenant or condition of this Note, the Deed of Trust, or any other Loan Documents (hereinafter defined), whether or not Noteholder declares a default, then Borrower shall be liable to Noteholder for all of Noteholder's costs and expenses occasioned by such event including, without limitation, Noteholder's reasonable attorney's fees. All of such costs and expenses shall be owed to Noteholder by Borrower under this Note and shall be secured by the Deed of Trust securing this Note. In the event suite is brought to collect this Note, Borrower shall pay Noteholder's reasonable attorney's fees and costs.

(f)    In the event any payment due hereunder is not paid when due (whether upon acceleration, at maturity or otherwise), such overdue payment shall continue to bear interest (including, to the extent permitted by law, interest on any overdue installment of interest) from the date on which such payment was due at an annual rate of eighteen percent (18.0%). In addition, the Borrower shall pay the Lender the late charge specified above.

4. GENERAL PAYMENT TERMS.

Interest shall be calculated using a 360-day year. Receipt of a check shall not constitute final payment hereunder until such check is fully and finally honored by Bank or other financial institution upon which it is drawn, and any wire transfer of funds shall not constitute payment until actually credited to such bank account of the Noteholder as the Noteholder may from time to time designate.

In addition thereto, any payment, whether a prepayment of regular interest installment payment, is not considered properly paid unless the said payment is paid through the first day of the month next succeeding the payment unless the said payment is received by Noteholder prior to 12:00 P.M. (noon) on the first day of a month.

5.    LOAN DOCUMENTS.

This Note, the Credit Line Deed of Trust, Assignment of Lease Rents and Profits and Security Agreement, (hereinafter defined), the Commercial Loan Commitment Letter (the "Loan Commitment"), the Loan Agreement, the Financing Statements and all other

documents evidencing and securing the indebtedness evidenced hereby are sometimes herein referred to collectively as "the Loan Documents".

6.     PREPAYMENT; RENEWAL.

The right is reserved to anticipate this Note from time to time, in whole or in part, without penalty.

The Lender may, in the Lender's sole discretion and with no obligation to do so, extend the loan for an additional period of time upon the written request of Borrower not less than thirty (30) days prior to the initial maturity provided that Borrower pays an extension fee of two percent (2.0%) of the unpaid principal balance not later than the initial maturity date. If said renewal fee is not paid on or before the initial maturity date, it shall be added to the principal balance due under the Loan Documents and shall bear interest at the rate of twelve percent (12%) per annum.

7.     SECURITY.

This Note is secured by a Credit Line Deed of Trust, Assignment of Leases and Security Agreement of even date herewith (the "Deed of Trust") granting a first lien on 1702 Grove Avenue, Richmond, Virginia 23220 (City of Richmond).

8.     WAIVER; EXTENTIONS

(a)     Presentment, demand, notice of dishonor and protest and (to the extent permitted by applicable law) the benefits of the Homestead and all other exemptions provided the Borrower are hereby waived. To the extent permitted by applicable law, the Borrower hereby further waives and renounces for himself, his legal representatives, heirs, beneficiaries, successors and assigns, all rights to any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided, or which may hereafter be provided, by the laws of the Commonwealth of Virginia or of the United States of America or of any other State thereof, both as to himself and in and to all of his property, real and personal, against the enforcement and collection of the indebtedness evidenced hereby. The Borrower agrees that he shall remain liable for the payment hereof notwithstanding any agreement for the extension of the due date of any amount payable hereunder made by the Noteholder after the maturity thereof. The Noteholder shall not be deemed to have waived any of the Noteholder's rights or remedies hereunder unless such waiver is expressly set forth in a writing signed by the Noteholder, and no delay or omission by the Noteholder in exercising, or failure by the Noteholder on any one or more occasions to exercise any of the Noteholder's rights hereunder, under the other Loan Documents, or at law or in equity, including, without limitation, the Noteholder's right, after any default hereunder or event of default under any of 'the other Loan Documents, to declare the entire indebtedness evidenced hereby immediately due and payable, shall be construed as a novation of this Note or shall operate as a waiver or prevent the subsequent exercise of any or all of such rights. Acceptance by the Noteholder of any portion or all of any sum payable hereunder

whether before, on, or after the due date of such payment, shall not be a waiver of the Noteholder's right either to require prompt payment when due of all other sums payable hereunder or to exercise any of Noteholder's rights, powers and remedies hereunder or under the other Loan Documents. A waiver of any right in writing on one occasion shall not be construed as a waiver of the Noteholder's right to insist thereafter upon strict compliance with the terms hereof without previous notice of such intention being given to the Borrower, and no exercise of any right by the Noteholder shall constitute or be deemed to constitute an election of remedies by the Noteholder precluding the subsequent exercise by the Noteholder of any or all of the rights, powers and remedies available to it hereunder, under any of the other Loan Documents, or at law or in equity. The Borrower expressly waives the benefit of statute or rule of law or equity now provided, or which hereafter be provided, which would produce a result contrary to, or in conflict with, the foregoing. The Borrower consents to any and all renewals and extensions in the time of payment hereof without in any way affecting the liability of the Borrower or any person liable or to become liable with respect to any indebtedness evidenced hereby. No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person or entity now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change or affect the original liability of the undersigned under this Note, either in whole or in part, unless the Noteholder agrees otherwise in writing.

(b)     The Borrower agrees that in the event Borrower, or any member of Borrower if Borrower is a limited liability company, or any general partner of Borrower if Borrower is a partnership, or any Guarantor of this Note shall: (a) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended; (b) be the subject of any order for relief issued under Title 11 of the U.S. Code, as amended; (c) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency or other relief for debtors; (d) seek or consent to or acquiesce in the appointment of any trustee, receiver, conservator, or liquidator; (e) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state law or law relating to bankruptcy, insolvency, or relief for debtors, the Noteholder immediately shall be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code, as amended, or otherwise, on or against the exercise of the rights and remedies available to it under the Loan Documents.

(c)     The Borrower consents to and agrees that the venue for any action brought under this Note or any of the Loan Documents will be in the Circuit Court of the City of Richmond, Virginia.

(d)     By executing this Note, the Borrower irrevocably waives any right to trial by jury in any action, proceeding or counterclaim arising out of or related to this Note or any of the Loan Documents or the transactions contemplated herein or in the Loan Documents.

(e)     The Borrower represents and warrants that it was represented by legal counsel of its choice, which counsel has reviewed this Note and has advised Borrower of its content and meaning and that it has reviewed the waivers and provisions contained in this Note, or that it has been advised to seek such legal counsel and has voluntarily decided to forego same, and in either event he has freely, voluntarily and without duress agreed to execute this Note.

9.     **CONFESSION OF JUDGMENT NOTICE:**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**CONFESSION OF JUDGMENT**: Upon a default in any payment of this note at maturity or during any installment when becoming due whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers Scott D. Stolte, Esquire, or Alexander H. Ayers, Esquire, as Borrower's attorney-in-fact to appear in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by the Noteholder setting forth the amount them due, prepayment penalties, attorney's fees plus cost of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Noteholder may elect until all amounts owing on this Note have been paid in full.

Furthermore, the Guarantor aggress that the above named Attorney-In Fact may appoint in his place and stead one or more substitute attorneys-in-fact to perform the duties granted to the named Attorney-In-Fact pursuant to this Guaranty. The Guarantor hereby waives any claim, cause or right of action which may accrue against the named Attorney-In-Fact or any substitute attorneys-in-fact by confessing judgment, except those matters which result from willful or wanton misconduct. The Guarantor further acknowledges that the named Attorney-In-Fact has not given Guarantor any legal advice and has not entered into any attorney-client relationship with the Guarantor.

10.    OBLIGATIONS OF PERSONS UNDER THIS NOTE.

If more than one person or entity executes this Note, then each such person or entity is fully and personally obligated to keep and perform all of the promises, covenants and provisions set forth in this Note, including, without limitation, the promise to pay the full amount secured. All guarantors, sureties or endorsers of this Note and any person, firm or entity who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note are also obligated to keep all of the promises, covenants and provisions made in this note, including, without limitation the promise to pay the full amount secured. The obligations of all Borrowers and other entities and persons liable hereunder are joint and several.

11.    LIMITS.

a.    If a law which applies to this Loan and which sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Loan exceed the permitted limits, and so that Borrower is entitled to plead such law affirmatively or as a defense to the collection of such interest or other loan charges, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Borrower which exceed permitted limits will be refunded to Borrower. The Noteholder may choose to make this refund by reducing the principal Borrower owes under this Note or by making direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

b.    Should any term, covenant, provision or condition of this Note be held by a court of competent jurisdiction to be void or invalid, the same shall not affect any other term, covenant, provision or condition of this Note and the remainder shall be effective as though such term, covenant, provision or condition had not been contained herein.

12.    NOTICE.

All notices, requests, demands and other communications to the Borrower, or either of them if more than one, or to any officer, director, manager, member manager, general partner or trustee of Borrower if Borrower is a Corporation, Partnership, Limited Liability Company or Trust, with respect to this Note, shall be delivered by hand, or sent prepaid by Federal Express or United Parcel Service (or comparable overnight delivery service), or sent by United States mail, certified, postage prepaid, return receipt required to the Borrower's address at 3232 Grove Avenue, Richmond, Virginia 23221, or to the most recent address of Borrower appearing on Noteholder's records. Any notice to the Noteholder shall be given in the same manner, to the Noteholder's address stated herein, or to such other address as the Noteholder may designate in writing to Borrower from time to time.

11.    <u>AMENDMENTS ONLY IN WRITING.</u>

The provisions hereof may not be waived, changed, modified or discharged orally, but only by an agreement in writing signed by the Borrower and the Noteholder and executed with the same formality as this instrument.

WITNESS the following signatures:

BORROWER:

Renew Properties, LLC
a Virginia limited liability company

By: _____
        Robert E. Hicks, Sole Member/Manager

COMMONWEALTH OF VIRGINIA
CITY OF RICHMOND, to-wit:

The foregoing instrument was acknowledged before me this 14th day of August, 2017 by Robert E. Hicks, Sole Member/Manager of Renew Properties, LLC.

My Commission Expires: ~~4/30/2022~~ Registration Number: 7346065

_____
Notary Public

[Notary Seal: TRACY L. TROLLINGER, NOTARY PUBLIC, MY COMMISSION NUMBER 7346065, COMMONWEALTH OF VIRGINIA]

**EXHIBIT**

J

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### THIS LOAN IS FOR BUSINESS PURPOSE ONLY

### <u>COMMERCIAL DEED OF TRUST NOTE</u>

**U.S. $412,000.00**                                     **Richmond, Virginia**
                                                         **May 26, 2016**

1.        <u>BORROWER'S PROMISE TO PAY.</u>

FOR VALUE RECEIVED, **Renew Properties, LLC,** a Virginia limited liability company (hereinafter, "Borrower") 3232 Grove Avenue, Richmond, Virginia 23221, hereby promises to pay to **STONEBRIDGE INVESTMENT COMPANY, LLC,** a Virginia limited liability company, or order, (hereinafter referred to as the "Noteholder"), 103 Canterbury Road, Richmond, Virginia 23221 or to such other address as the Noteholder shall specify to the Borrower, in lawful money of the United States of America, the principal sum of **FOUR HUNDRED TWELVE THOUSAND AND NO/100 DOLLARS ($412,000.00),** together with interest on the unpaid principal balance outstanding in accordance with the following terms and conditions. Provided, however, if not sooner paid the entire indebtedness evidenced hereby shall be fully due and payable on November 1, 2016.

2.        <u>INTEREST AND MONTHLY PAYMENT.</u>

Borrower shall pay interest on all principal outstanding under this Note at the rate of **Twelve per centum (12%)** per annum, calculated based on a 360 day year, which payments shall be interest-only payments in monthly installments of **FOUR THOUSAND ONE HUNDRED TWENTY DOLLARS ($4,120.00),** and which payments must be received by Noteholder on or before the first day of each month, the first payment being due and payable **July 1, 2016,** TIME BEING OF THE ESSENCE.

For the convenience of the Lender, all Payments shall be made payable to Ayers & Stolte, P.C. 710 North Hamilton Street, Richmond, Virginia 23221 who shall deposit said funds into its escrow account and then wire the funds to the Lender.

In addition to the above principal and interest payments, the maker agrees to pay the Lender, an origination fee in the amount of $8,240.00 which has been earned by the Lender and which is now due. In addition, the maker agrees to pay the Lender a Loan Fee of $12,960.00 as an inducement for the Lender to advance one hundred percent of the project as set forth in the Loan Commitment Letter and which is now due.

3.    BORROWER'S FAILURE TO PAY AS REQUIRED/DEFAULT.

(a)    If the Noteholder has not received the full amount of any Borrower's monthly payments by the end of five (5) calendar days after the payment is due, TIME BEING OF THE ESSENCE, Borrower will be in default and will pay a late handling fee to the Noteholder. The amount of the fee will be five percent (5%) of Borrower's overdue installment payment. Borrower will pay the late charge promptly but only once on any late payment. Collection of the late charge shall not be deemed a waiver by the Noteholder of any of its rights under this Note.

(b)    A default in any of the Loan Documents for any other loan made by the Lender to the Borrower or any entity in which the Borrower has an ownership interest shall be deemed a default in all of the loan documents for this Loan and the Lender shall have all such rights as are set out in said Loan Documents upon default.

(c)    A default in any other loan secured by any of the real property that also acts as security for this loan shall be deemed a default in all of the loan documents for this Loan and the Lender shall have all such rights as are set out in said Loan Documents upon default.

(d)    In the event of a default hereunder or event of default under any of the other Loan Documents the Noteholder shall have the right to accelerate the payments and all sums due hereunder and declare the entire indebtedness evidenced hereby immediately due and payable.

(e)    In the event Borrower violates any term, covenant or condition of this Note, the Deed of Trust, or any other Loan Documents (hereinafter defined), whether or not Noteholder declares a default, then Borrower shall be liable to Noteholder for all of Noteholder's costs and expenses occasioned by such event including, without limitation, Noteholder's reasonable attorney's fees. All of such costs and expenses shall be owed to Noteholder by Borrower under this Note and shall be secured by the Deed of Trust securing this Note. In the event suite is brought to collect this Note, Borrower shall pay Noteholder's reasonable attorney's fees and costs.

(f)    In the event any payment due hereunder is not paid when due (whether upon acceleration, at maturity or otherwise), such overdue payment shall continue to bear interest (including, to the extent permitted by law, interest on any overdue installment of interest) from the date on which such payment was due at an annual rate of eighteen percent (18.0%). In addition, the Borrower shall pay the Lender the late charge specified above.

4.  GENERAL PAYMENT TERMS.

Interest shall be calculated using a 360-day year. Receipt of a check shall not constitute final payment hereunder until such check is fully and finally honored by Bank or

other financial institution upon which it is drawn, and any wire transfer of funds shall not constitute payment until actually credited to such bank account of the Noteholder as the Noteholder may from time to time designate.

In addition thereto, any payment, whether a prepayment of regular interest installment payment, is not considered properly paid unless the said payment is paid through the first day of the month next succeeding the payment unless the said payment is received by Noteholder prior to 12:00 P.M. (noon) on the first day of a month.

5.     LOAN DOCUMENTS.

This Note, the Credit Line Deed of Trust, Assignment of Lease Rents and Profits and Security Agreement, (hereinafter defined), the Commercial Loan Commitment Letter (the "Loan Commitment"), the Loan Agreement, the Financing Statements and all other documents evidencing and securing the indebtedness evidenced hereby are sometimes herein referred to collectively as "the Loan Documents".

6.     PREPAYMENT; RENEWAL.

The right is reserved to anticipate this Note from time to time, in whole or in part, without penalty.

The Lender may, in the Lender's sole discretion and with no obligation to do so, extend the loan for an additional period of time upon the written request of Borrower not less than thirty (30) days prior to the initial maturity provided that Borrower pays an extension fee of two percent (2.0%) of the unpaid principal balance not later than the initial maturity date. If said renewal fee is not paid on or before the initial maturity date, it shall be added to the principal balance due under the Loan Documents and shall bear interest at the rate of twelve percent (12%) per annum.

7.     SECURITY.

This Note is secured by a Credit Line Deed of Trust, Assignment of Leases and Security Agreement of even date herewith (the "Deed of Trust") granting a first lien on 3207 Hanover Avenue, Richmond, Virginia 23221 (City of Richmond).

8.     WAIVER; EXTENTIONS

(a)     Presentment, demand, notice of dishonor and protest and (to the extent permitted by applicable law) the benefits of the Homestead and all other exemptions provided the Borrower are hereby waived. To the extent permitted by applicable law, the Borrower hereby further waives and renounces for himself, his legal representatives, heirs, beneficiaries, successors and assigns, all rights to any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided, or which may hereafter be provided, by the laws of the Commonwealth of Virginia or of the United States of America or of any other State

thereof, both as to himself and in and to all of his property, real and personal, against the enforcement and collection of the indebtedness evidenced hereby. The Borrower agrees that he shall remain liable for the payment hereof notwithstanding any agreement for the extension of the due date of any amount payable hereunder made by the Noteholder after the maturity thereof. The Noteholder shall not be deemed to have waived any of the Noteholder's rights or remedies hereunder unless such waiver is expressly set forth in a writing signed by the Noteholder, and no delay or omission by the Noteholder in exercising, or failure by the Noteholder on any one or more occasions to exercise any of the Noteholder's rights hereunder, under the other Loan Documents, or at law or in equity, including, without limitation, the Noteholder's right, after any default hereunder or event of default under any of 'the other Loan Documents, to declare the entire indebtedness evidenced hereby immediately due and payable, shall be construed as a novation of this Note or shall operate as a waiver or prevent the subsequent exercise of any or all of such rights. Acceptance by the Noteholder of any portion or all of any sum payable hereunder whether before, on, or after the due date of such payment, shall not be a waiver of the Noteholder's right either to require prompt payment when due of all other sums payable hereunder or to exercise any of Noteholder's rights, powers and remedies hereunder or under the other Loan Documents. A waiver of any right in writing on one occasion shall not be construed as a waiver of the Noteholder's right to insist thereafter upon strict compliance with the terms hereof without previous notice of such intention being given to the Borrower, and no exercise of any right by the Noteholder shall constitute or be deemed to constitute an election of remedies by the Noteholder precluding the subsequent exercise by the Noteholder of any or all of the rights, powers and remedies available to it hereunder, under any of the other Loan Documents, or at law or in equity. The Borrower expressly waives the benefit of statute or rule of law or equity now provided, or which hereafter be provided, which would produce a result contrary to, or in conflict with, the foregoing. The Borrower consents to any and all renewals and extensions in the time of payment hereof without in any way affecting the liability of the Borrower or any person liable or to become liable with respect to any indebtedness evidenced hereby. No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person or entity now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change or affect the original liability of the undersigned under this Note, either in whole or in part, unless the Noteholder agrees otherwise in writing.

(b)     The Borrower agrees that in the event Borrower, or any member of Borrower if Borrower is a limited liability company, or any general partner of Borrower if Borrower is a partnership, or any Guarantor of this Note shall: (a) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended; (b) be the subject of any order for relief issued under Title 11 of the U.S. Code, as amended; (c) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency or other relief for debtors; (d) seek or consent to or acquiesce in the appointment of any trustee, receiver, conservator, or liquidator; (e) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition,

readjustment, liquidation, dissolution or similar relief under any present or future federal or state law or law relating to bankruptcy, insolvency, or relief for debtors, the Noteholder immediately shall be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code, as amended, or otherwise, on or against the exercise of the rights and remedies available to it under the Loan Documents.

(c)    The Borrower consents to and agrees that the venue for any action brought under this Note or any of the Loan Documents will be in the Circuit Court of the City of Richmond, Virginia.

(d)    By executing this Note, the Borrower irrevocably waives any right to trial by jury in any action, proceeding or counterclaim arising out of or related to this Note or any of the Loan Documents or the transactions contemplated herein or in the Loan Documents.

(e)    The Borrower represents and warrants that it was represented by legal counsel of its choice, which counsel has reviewed this Note and has advised Borrower of its content and meaning and that it has reviewed the waivers and provisions contained in this Note, or that it has been advised to seek such legal counsel and has voluntarily decided to forego same, and in either event he has freely, voluntarily and without duress agreed to execute this Note.

9.    **CONFESSION OF JUDGMENT NOTICE:**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGEMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**CONFESSION OF JUDGMENT**: Upon a default in any payment of this note at maturity or during any installment when becoming due whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers Scott D. Stolte, Esquire, or Alexander H. Ayers, Esquire, as Borrower's attorney-in-fact to appear in the Clerk's Office of the Circuit Court of the City of Richmond, Virginia and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by the Noteholder setting forth the amount them due, prepayment penalties, attorney's fees plus cost of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised

from time to time as Noteholder may elect until all amounts owing on this Note have been paid in full.

Furthermore, the Guarantor aggress that the above named Attorney-In Fact may appoint in his place and stead one or more substitute attorneys-in-fact to perform the duties granted to the named Attorney-In-Fact pursuant to this Guaranty. The Guarantor hereby waives any claim, cause or right of action which may accrue against the named Attorney-In-Fact or any substitute attorneys-in-fact by confessing judgment, except those matters which result from willful or wanton misconduct.

10.     OBLIGATIONS OF PERSONS UNDER THIS NOTE.

If more than one person or entity executes this Note, then each such person or entity is fully and personally obligated to keep and perform all of the promises, covenants and provisions set forth in this Note, including, without limitation, the promise to pay the full amount secured. All guarantors, sureties or endorsers of this Note and any person, firm or entity who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note are also obligated to keep all of the promises, covenants and provisions made in this note, including, without limitation the promise to pay the full amount secured. The obligations of all Borrowers and other entities and persons liable hereunder are joint and several.

11.     LIMITS.

a.      If a law which applies to this Loan and which sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Loan exceed the permitted limits, and so that Borrower is entitled to plead such law affirmatively or as a defense to the collection of such interest or other loan charges, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Borrower which exceed permitted limits will be refunded to Borrower. The Noteholder may choose to make this refund by reducing the principal Borrower owes under this Note or by making direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

b.      Should any term, covenant, provision or condition of this Note be held by a court of competent jurisdiction to be void or invalid, the same shall not affect any other term, covenant, provision or condition of this Note and the remainder shall be effective as though such term, covenant, provision or condition had not been contained herein.

12.     NOTICE.

All notices, requests, demands and other communications to the Borrower, or either of them if more than one, or to any officer, director, manager, member manager, general partner or trustee of Borrower if Borrower is a Corporation, Partnership, Limited Liability

Company or Trust, with respect to this Note, shall be delivered by hand, or sent prepaid by Federal Express or United Parcel Service (or comparable overnight delivery service), or sent by United States mail, certified, postage prepaid, return receipt required to the Borrower's address at 3232 Grove Avenue, Richmond, Virginia 23221, or to the most recent address of Borrower appearing on Noteholder's records. Any notice to the Noteholder shall be given in the same manner, to the Noteholder's address stated herein, or to such other address as the Noteholder may designate in writing to Borrower from time to time.

11.    <u>AMENDMENTS ONLY IN WRITING.</u>

The provisions hereof may not be waived, changed, modified or discharged orally, but only by an agreement in writing signed by the Borrower and the Noteholder and executed with the same formality as this instrument.

WITNESS the following signatures:

BORROWER:

Renew Properties, LLC
a Virginia limited liability company

By: _____
        Robert E. Hicks, Sole Member/Manager

COMMONWEALTH OF VIRGINIA
CITY OF RICHMOND, to-wit:

The foregoing instrument was acknowledged before me this 26th day of May, 2015 by Robert E. Hicks, Sole Member/Manager of Renew Properties, LLC.

My Commission Expires: 4/30/2018   Registration Number: 7346065

_____
Notary Public

*[Notary seal: TRACY L. TROLLINGER, NOTARY PUBLIC, MY COMMISSION NUMBER 7346065, COMMONWEALTH OF VIRGINIA]*

**EXHIBIT**

K


MLS





**Central Virginia Regional MLS**
**Purchase Agreement**

This is a legally binding document for the purchase of real property. If not understood, seek competent advice before signing.
(Paragraphs marked with an asterisk * require a blank to be filled in or checked.)

*This Purchase Agreement (the "Agreement") is dated __Jun   21st, 20_18_, between _Castle Kanawha 1508 LLC_ _____ ("Purchaser") and __Renew Properties__ _____ ("Seller"). The parties acknowledge _____ N/A _____ ("Listing Broker") represents Seller, and __One South Realty Group, LLC_ ("Selling Broker") represents Purchaser.

**\* 1. REAL PROPERTY:** Purchaser agrees to buy and Seller agrees to sell the land, all improvements thereon, and appurtenances thereto belonging, located in the City/County of _____ Richmond _____, Virginia, Lot _2036_ Block ___ Section ___ of _____ subdivision. Tax Parcel # ___W0001450017____ and more commonly known as: _3207 Hanover AVE_ _____ Richmond ___ VA ___ 23221 together with the items of personal property described in paragraph 2 (the "Property").

**\*2. PERSONAL PROPERTY INCLUDED:** Included with the sale of the above real estate (if located within said Property at the time of signing this Agreement, unless otherwise noted) are the shades, plantation shutters, blinds, curtain and drapery rods, screens and screen doors, storm windows and doors, light fixtures, wall to wall carpeting, garbage disposal, built-in range, built-in oven, built-in dishwasher, laundry tubs, attic fan, smoke and heat detectors, awnings, electrical wiring connections for appliances, ceiling fan(s), garage door opener(s) and remotes, mailbox and post, outbuildings and sheds, gas logs, fireplace inserts and all other items attached to the real estate and being a part thereof, including all shrubbery and plantings on the Property. Also included are the following items:

_____
_____
_____

**\*3. ADDENDA:** The following addenda are made a part of this Agreement:

☒ Lead-Based Paint Disclosure (required on all pre-1978 homes)   ☐ Right of First Refusal   ☐ Short Sale Addendum

☐ "AS IS" Addendum   ☐ Other _____

**\*4. PURCHASE PRICE:** The Purchase Price of the Property is _Two Hundred Twenty-Five Thousand_ Dollars ($_____225,000.00_____), which shall be paid to Seller at settlement, subject to the pro-rations described herein and/or from the following sources (check all applicable box(es)):

☒ This sale is **not** subject to financing. Purchaser shall pay all cash at closing by bank certified funds or bank wire.

☐ This sale **is** subject to financing. This is subject to Purchaser being able to obtain or assume a [select loan type]:

☐ Conventional; ☐ FHA; ☐ VA; ☐ VHDA or ☐ other _____ loan in the principal amount of ____% of the Purchase Price **OR** $_____ ("Loan Amount"), secured by a first deed of trust lien on the Property bearing interest at a [select one box]:

☐ fixed rate not exceeding ____% per year **OR**

☐ at an adjustable rate with an initial rate not to exceed ____% per year and a maximum rate not to exceed ____% during the term of the loan **OR**

☐ at the prevailing rate of interest at the time of settlement.

The loan shall be amortized for a term of ____ years and shall require not more than a total of ____ discount and origination points. (For loan assumption, the balance set forth above is approximate. The principal amount to be assumed will be the outstanding principal balance on the date of settlement. Purchaser shall assume all obligations of Seller under such loan with the exception of past due charges for which Seller shall be liable). Purchaser shall pay the balance of the Purchase Price at settlement, less any deposit, loan amount and/or other credits set forth in this Agreement. Nothing in this Agreement prohibits Purchaser from seeking financing other than as specified above so long as settlement is not delayed and there is no cost to Seller. Purchaser's failure to obtain such alternative financing does not relieve Purchaser from the obligations to obtain the financing specified above.

☐ Seller agrees to pay at settlement (to be reflected on the settlement statement) the sum of $_____ towards Purchaser's closing costs, prepaids, discount points and loan expenses.

Instanet

This form was produced by Ben Partridge. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS

*5. APPRAISAL: This sale [select one]: ☐ is  OR  ☒ is not further subject to the Property's appraised value equaling or exceeding the Purchase Price, which value shall be determined by an appraiser selected by Purchaser's lender (if a cash purchase, the appraiser shall be selected by Purchaser). The appraisal shall be ordered within fifteen (15) days of the Date of loan application. It shall be the responsibility of Purchaser to advise Purchaser's lender of this requirement. If the appraisal is not ordered within 15 days of the Date of Ratification, then Seller may terminate this Agreement by written notice to Purchaser and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. If the appraisal is ordered after the 15 day period but Seller has not yet terminated this Agreement, then Seller's right to terminate this Agreement for said purpose is waived.

Regarding the appraisal, if the Purchase Price exceeds the appraised value, Purchaser shall either: (i) proceed with consummation of this Agreement without regard to the amount of the appraised value, or (ii) make a written request to Seller within five (5) days of receipt of the appraisal for a reduction in the Purchase Price so long as the reduced Purchase Price is not lower than the appraised value, and provide Seller a copy of the appraisal (or lender verification of the appraised value). Seller shall then have five (5) days to respond to Purchaser's request for a reduction in the Purchase Price (the "Response Deadline"). If the parties are unable to agree in writing as to a Purchase Price within five (5) days following the Response Deadline, then either Purchaser or Seller may terminate this Agreement by written notice to the other party, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. For purposes of this paragraph, Purchaser is deemed to have received a copy of the appraisal when Purchaser is notified in writing of the appraised value of the Property. If Purchaser does not request a reduction in the Purchase Price within five (5) days after receipt of the appraisal, then this condition shall be deemed waived by Purchaser.

6. FINANCING: If this Agreement is conditioned upon Purchaser obtaining financing, Purchaser shall make written application for such loan within seven (7) days after the Date of Ratification (as defined in Paragraph 27) and shall make diligent effort to secure a written loan commitment no later than 5:00 p.m. on the settlement date set forth in Paragraph 9. If, at the time of such loan application, Purchaser chooses not to lock-in the rate and/or points that meet or exceed the requirements set forth in Paragraph 4, Purchaser waives such rate and point contingency. If this Agreement is not conditioned upon Purchaser obtaining financing, Purchaser shall provide Seller with written verification from a third-party in possession of Purchaser's assets within seven (7) days after the Date of Ratification that Purchaser has sufficient assets to pay the balance of the Purchase Price at settlement. If Purchaser fails to comply with any of the provisions of this paragraph or fails to obtain a written loan commitment by 5:00 p.m. on the settlement date, then Seller may terminate this Agreement by written notice to Purchaser, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder. As used in this paragraph, "diligent effort" shall mean that Purchaser has provided all information or documentation requested by a lender within seven (7) days of each such request and paid all costs associated with such loan application, including but not limited to, application fees, credit reports and appraisal(s). Purchaser authorizes the lender to: (i) disclose to the Listing Broker and Selling Broker information about the progress of Purchaser's loan application and approval, including whether Purchaser has complied with the lender's requests and paid all costs associated with such application; and (ii) furnish a copy of Purchaser's loan estimate(s) and closing disclosure(s) to the Selling Broker. If, after diligent effort, Purchaser is unable to obtain financing, then this Agreement shall terminate, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

7. WIRE FRAUD ALERT: Criminals are hacking email accounts of real estate agents, settlement attorneys/agents and others resulting in fraudulent wire instructions being sent to divert Seller or Purchaser's funds to the criminal's account. These emails look legitimate, but they are not. *Purchaser and Seller are advised not to wire any funds without personally speaking with the intended recipient of the wire to confirm the bank routing number and account number.*

*8. DEPOSIT: Purchaser shall make a deposit of $ _1,000.00_ to be held by _____Scott Stolte Attorney_____ (the "Escrow Agent") in the form of: x check ☐ cash ☐ other _____ (the "Deposit"). Purchaser [select one]: ☐ has paid the Deposit to the Escrow Agent OR x will pay the Deposit to the Escrow Agent within __3__ days (the "Extended Deposit Date") after the Date of Ratification. If Purchaser fails to pay the Deposit as set forth herein, then Purchaser shall be in breach of this Agreement. At Seller's option and in lieu of all other remedies set forth in this Agreement, Seller may terminate this Agreement by written notice to Purchaser and neither party shall have any further obligation hereunder. If the Escrow Agent is a Virginia Real Estate Board ("VREB") licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account by the end of the fifth business banking day following the latter of: (i) ratification and delivery of this Agreement as defined in Paragraph 27, or (ii) the Extended Deposit Date. If the Escrow Agent is not a VREB licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account in conformance with applicable Federal or Virginia law and regulations. The Deposit may be held in an interest bearing

This form was produced by Sam Partridge. CVR MLS forms may be used only by members in good standing of the Central
Virginia Regional MLS

account and the parties waive any claim to interest resulting from such Deposit. The Deposit shall not be released by the Escrow Agent until (i) credited toward the purchase price at settlement, (ii) Seller and Purchaser agree in writing as to its disposition, (iii) a court of competent jurisdiction orders a disbursement of the funds, or (iv) disbursed in such manner as authorized by the terms of this Agreement subject to Virginia law and/or VREB Regulations  Seller and Purchaser agree that Escrow Agent shall have no liability to any party for disbursing the Deposit in accordance with this paragraph, except in the event of Escrow Agent's negligence or willful misconduct.

If the Property is foreclosed upon while this Agreement is pending, the terms of Virginia Code Section 54.1-2108.1 shall apply to the disbursement of the Deposit. The foreclosure shall be deemed a termination of this Agreement by Seller and, absent any default by Purchaser, the Deposit shall be disbursed to Purchaser.

**\*9. SETTLEMENT; POSSESSION:** Settlement shall be made at the offices of _____ Scott Stolte _____
on or before [select one box and insert closing date]:

☑      July      9th , 20 18 ____, or a reasonable time thereafter if the Purchaser or Seller is making diligent effort to satisfy any contingencies contained in this Agreement.

OR

☐ _____, 20___, and subject to Seller's right to cure any title defects as set forth in Paragraph 24B, if settlement does not occur within ten (10) days following such date, a party who is ready, willing and able to close under the terms of this Agreement may terminate this Agreement by written notice to the other party, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

Possession of the Property shall be given at settlement, unless otherwise agreed in writing by the parties. Failure to check one box above shall not invalidate this Agreement. The settlement date shall be as inserted above. Seller and Purchaser authorize and direct the settlement agent to provide a copy of Purchaser's closing disclosure (if Purchaser obtains lender financing), settlement statement, and/or disbursement summary for this transaction to the Seller, Purchaser, Listing Broker and Selling Broker.

**\*10. OCCUPANCY DISCLOSURE:** Purchaser intends to [select one]: ☐ occupy OR ☒ not occupy the Property as a principal residence.

**\*11. RESIDENTIAL PROPERTY DISCLOSURE:** Seller represents the Property [select one]: ☒ is OR ☐ is not subject to the Virginia Residential Property Disclosure Act, Sections 55-517 et. seq. of the Code of Virginia, which requires the Seller of certain residential property to furnish the Purchaser with a Residential Property Disclosure Statement. Property Disclosure [select one]: ☒ is OR ☐ is not attached. (Attachment does not become part of this Agreement.)

12. **FAIR HOUSING DISCLOSURE:** All offers shall be presented and considered without regard to race, color, religion, sex, handicap, familial status, elderliness or national origin as well as all classes protected by the laws of the United States, the Commonwealth of Virginia and applicable local jurisdiction.

**\*13. PROPERTY OWNERS' ASSOCIATION DISCLOSURE:** The Seller represents that the Property [select one]: ☐ is OR ☒ is not located within a development which is subject to the Virginia Property Owners' Association Act (Sections 55-509 et. seq. of the Code of Virginia) (the "Act"). If the Property is within such a development, the Act requires the Seller to obtain from the property owners' association an association disclosure packet and provide it to the Purchaser, or Purchaser's authorized agent. The information contained in the association disclosure packet shall be current as of the specified date on the disclosure packet. The Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that the Purchaser signs this Agreement, the Purchaser receives the association disclosure packet or is notified that the association disclosure packet is not available; (b) within 3 days after receiving the association disclosure packet, if the association disclosure packet or notice that the association disclosure packet will not be available is hand delivered, delivered by electronic means or delivered by a commercial overnight delivery service or the United Parcel Service, and a receipt obtained; or (c) within 6 days after the postmark date if the association disclosure packet or notice that the association disclosure packet will not be available is sent to the Purchaser by United States mail. The Purchaser may also cancel this Agreement at any time prior to settlement if the Purchaser has not been notified that the association disclosure packet will not be available and the association disclosure packet is not delivered to the Purchaser. Notice of cancellation shall be provided to the Seller (owner) or his agent by one of the following methods: (i) hand delivery; (ii) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (iii) electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a

This form was produced by Ben Partridge, CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS

certificate of service prepared by the sender confirming the electronic delivery; or (iv) overnight delivery using a commercial service or the United States Postal Service. In the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the Seller shall cause any deposit to be returned promptly to the Purchaser, but not later than thirty days from the date of cancellation. Seller shall provide written instructions to the Association for delivery of the disclosure packet to Purchaser or Purchaser's authorized agent. The right to receive the association disclosure packet and to cancel this Agreement terminates at settlement. If the Purchaser has received the association disclosure packet, the Purchaser has a right, at Purchaser's sole expense, to request an update of such disclosure packet from the property owners' association in accordance with subsection G of Section 55-509.6 or subsection C of Section 55-509.7 as appropriate. A request for an updated disclosure packet does not extend the cancellation periods set forth above.

\*14. CONDOMINIUM DISCLOSURE: The Seller represents that the Property [select one]:  ☐ is OR ☐ is not  a condominium resale, which is subject to the Virginia Condominium Act (Section 55-79.39 et seq. of the Code of Virginia) (the "Condominium Act"). If the Property is a condominium resale, the Condominium Act requires the Seller to obtain from the unit owners' association a resale certificate and provide it to the Purchaser or Purchaser's authorized agent. The information contained in the resale certificate shall be current as of the specified date on the resale certificate. The Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that the Purchaser signs this Agreement, the Purchaser receives the resale certificate; (b) within 3 days after receiving the resale certificate if the resale certificate is hand delivered, delivered by electronic means or delivered by a commercial overnight delivery service or the United States Postal Service, and a receipt obtained; or (c) within 6 days after the postmark date if the resale certificate is sent to the Purchaser by United States mail. Notice of cancellation shall be provided to the Seller (owner) or his agent by one of the following methods: (i) hand delivery; (ii) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (iii) electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (iv) overnight delivery using a commercial service or the United States Postal Service. In the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the Seller shall cause any deposit to be returned promptly to the Purchaser, but not later than thirty days from the date of cancellation. Seller shall provide written instructions to the Association for the delivery of the resale certificate to Purchaser or Purchaser's authorized agent. The right to receive the resale certificate and to cancel this Agreement terminates at settlement. If the Purchaser has received the resale certificate, the Purchaser has a right, at Purchaser's sole expense, to request from the unit owners' association a resale certificate update or financial update in accordance with Section 55-79.97:1. A request for an updated resale certificate does not extend the cancellation periods set forth above.

15. OWNERS' ASSOCIATION REPAIRS: If a disclosure packet, resale certificate or inspection report from a Property or Condominium Owners' Association indicates the Property is not in compliance with the Association's governing documents, then Purchaser may request in writing within five (5) days from receipt of any such disclosure packet, resale certificate or inspection report that Seller, at Seller's expense, make any repairs, perform any maintenance or take any corrective action required to conform the Property to the Association's requirements prior to settlement. If any such repairs, maintenance or corrective action is not performed prior to settlement, then Purchaser may terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. If Purchaser does not make a written request to Seller within five (5) days after receipt of the disclosure packet, resale certificate or inspection report containing such non-compliance notice, then Purchaser's right to make such request to Seller or to terminate this Agreement shall be deemed waived.

\*16. PROPERTY INSPECTION [select one]:

☒ Purchaser waives a property inspection of the Property.

  OR

☐ Seller hereby grants to Purchaser the right to have the Property inspected by a licensed home inspector or other person(s) selected by Purchaser at Purchaser's expense and to request repair of defects revealed and/or a Seller paid closing cost credit to Purchaser (Purchaser's requested repairs and Seller paid closing cost credit shall be collectively referred to herein as the "Repair Request"). Inspections may include, but are not limited to, all structural and building components and systems, radon gas, underground storage tanks, soil condition, environmental testing and engineering studies. The term "*defects*" as used in this paragraph 16 shall mean (*i*) *a condition which impairs the normal stability, safety or use of any improvements (buildings) on the Property, or (ii) damage to any part of the*

This form was produced by Ben Partridge. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS

*Improvements, but shall exclude any cosmetic flaws, antiquated systems or grandfathered components that are in working order but would not comply with current building code if constructed or installed today.*

Purchaser shall provide Seller with all inspection reports, cost of repairs and Purchaser's written Repair Request no later than [select one]: □ ____ days after the Date of Ratification  OR  □ _____ ( a.m./ p.m.) on _____. If no box is checked, the parties agree that Purchaser shall provide Seller with all inspection reports, cost of repairs and a written Repair Request no later than ten (10) days after the Date of Ratification.  In the Repair Request, Purchaser reserves the right to request certain repairs be performed by a contractor currently licensed by the Virginia Board of Contractors, but shall not request Seller to perform any inspections of the Property.  If Purchaser does not submit to Seller all inspection reports, cost of repairs and the Repair Request by said date, then Purchaser waives the right to request repairs and/or a Seller paid closing cost credit, agrees that the present condition of the Property is satisfactory, and will proceed to settlement in accordance with the Purchase Agreement. Seller shall respond in writing to Purchaser's Repair Request within seven (7) days of its receipt (the "Negotiation Period"). If Seller agrees in writing to accept such Repair Request, then the parties shall proceed to settlement. If Seller does not respond in writing within the Negotiation Period, then Seller shall be deemed to have rejected Purchaser's Repair Request.

If Purchaser's Repair Request is not accepted by Seller, then the parties may continue to negotiate the terms of the Repair Request during the Negotiation Period. Once a party rejects an offer or presents a counteroffer to the other party, then all prior offers and counteroffers made by either party regarding the Repair Request shall be deemed rejected so that only one Repair Request offer or counteroffer at a time shall be considered.  Seller may not require Purchaser to accept a Seller paid closing cost credit to Purchaser in lieu of repairs requested by Purchaser.  Further, no party may unilaterally terminate this Agreement during the Negotiation Period.

If, by 5:00 p.m. on the seventh (7th) day of the Negotiation Period, no final agreement is reached as to the Repair Request, then Purchaser shall have until 5:00 p.m. on the second (2nd) day after the end of the Negotiation Period to either: (i) terminate this Agreement by written notice to Seller, or (ii) accept in writing Seller's last offer regarding the Repair Request and proceed to settlement.  If Purchaser terminates this Agreement or fails to notify Seller of its election within the said two (2) day period, then this Agreement shall terminate, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

All repairs pursuant to Paragraph 16 shall be made in a workmanlike manner prior to settlement or such other time as agreed to by the parties. Unless otherwise agreed to by the parties, Seller shall provide Purchaser with paid receipts for all repairs prior to settlement or if repairs are to be paid from Seller's proceeds, Seller shall provide written invoices to Purchaser and the settlement agent directing disbursement of Seller's proceeds for payment of said invoices.

Seller shall have all utilities supplied to all systems prior to the inspection.  If Seller fails to have all utilities supplied to all systems prior to Purchaser's inspection, then the expiration of the inspection period set forth above shall be extended until ten (10) days following the date that Purchaser is notified by Seller that all utilities have been supplied to all systems. Purchaser and Seller, their heirs and assigns, hereby jointly and severally release and forever discharge the Listing and Selling Brokers and their real estate licensees in this transaction, from any and all liabilities, obligations, causes or action, claims and demands whatsoever arising out of or in any way connected with any or all work performed, materials furnished or inspections performed in connection with the captioned Property by contractors, suppliers or inspectors hired by them on behalf of the parties to this Agreement. Purchaser and Seller acknowledge that the provisions of this Paragraph 16 are in addition to treatments or repairs made pursuant to Paragraphs 15, 24E, 24F and 24G.

17. DEFAULT: If either Seller or Purchaser defaults under this Agreement, the defaulting party, in addition to all other remedies available at law or in equity, shall be liable for the brokerage fees set forth in Paragraph 19 and any brokerage fees set forth in Seller's Listing Agreement with the Listing Broker for the Property (which document is hereby incorporated herein by this reference) as if this Agreement and Seller's Listing Agreement had been performed, and for any damages and all expenses incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction and the enforcement of this Agreement and Seller's Listing Agreement, including, without limitation, attorney's fees and court costs. Payment of a real estate broker's fee as the result of a transaction relating to the Property which occurs subsequent to a default under this Agreement, shall not relieve the defaulting party of liability for any brokerage fees due under this Agreement or Seller's Listing Agreement, or for any damages and expenses, including attorney's fees and court costs, incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction.

18. Choice of Settlement Agent: Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia provides that the purchaser or borrower has the right to select the settlement agent to handle the closing of this transaction. The settlement agent's role in closing this transaction involves the coordination of numerous

This form was produced by Ben Partridge  CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the purchase price is financed, the lender for the purchaser will instruct the settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No settlement agent can provide legal advice to any party to the transaction except a settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party.

Variation by agreement: The provisions of Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia may not be varied by agreement, and rights conferred by this chapter may not be waived. The seller may not require the use of a particular settlement agent as a condition of the sale of the property.

Escrow, closing, and settlement service guidelines: The Virginia State Bar issues guidelines to help settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, settlement or closing services. As a party to a real estate transaction, the purchaser or borrower is entitled to receive a copy of these guidelines from his settlement agent, upon request, in accordance with the provisions of Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia.

19. BROKERAGE FEE: Seller authorizes and directs the settlement agent to disburse to Listing Broker and Selling Broker from the settlement proceeds their respective brokerage fees payable as a result of the sale and settlement set forth under this Agreement. Prior to settlement, Listing Broker and/or Selling Broker shall deliver to the settlement agent a signed written statement setting forth the disbursement instructions for payment of any brokerage fees and any sales incentives payable to each broker.

*20. HOME WARRANTY INSURANCE: Purchaser has been advised of the availability of a one year warranty program and ⊠ declines coverage OR ☐ elects to purchase the home warranty program. The cost of the _____ home warranty program is $_____ and is to be paid by ☐ Purchaser OR ☐ Seller at settlement. The parties acknowledge that Listing and/or Selling Brokers and their respective licensees may receive a fee for each home warranty sold.

21. RELATED BUSINESS AND SERVICES: The Listing Broker and Selling Broker may engage in mortgage loan, homeowner's and title insurance, real estate settlement, home warranty and other real estate related businesses and services from which they receive compensation during the course of this transaction, in addition to the real estate brokerage fees.

22. PURCHASER DISCLOSURE: Purchaser warrants he/she does not own any real or personal property that must be sold and settled prior to the settlement of this Agreement, except as disclosed in this Agreement.

*23. ADDITIONAL TERMS:
    This purchase is based on the approval of the Bankruptcy Court.

24. STANDARD PROVISIONS:

A. EXPENSE PRORATIONS: Seller agrees to pay the expense of preparing the deed and the applicable grantors tax, release fees, and any other fees applicable to the grantor by custom. Except as otherwise agreed herein, Purchaser shall pay all expenses incurred by Purchaser in connection with this Agreement, including without limitation, title examination fees, title insurance premiums, survey costs, recording costs and Purchaser's attorney's fees. All taxes, assessments, interest, rent escrow deposits and other ownership fees, if any, shall be prorated as of the date of settlement. In addition to the Purchase Price, Purchaser agrees to pay Seller for all fuel oil and propane/LP gas remaining in any tanks (if applicable) at the prevailing market price as of the date of settlement.

B. TITLE: At settlement Seller shall convey the Property to Purchaser by a general warranty deed containing English covenants of title, free of all encumbrances, tenancies, and liens (for taxes or otherwise), but subject to such restrictive

This form was produced by Ben Partridge. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS

covenants and utility easements of record which do not materially and adversely affect the use of the Property for residential purposes or render the title unmarketable. If the Property does not abut a public road, title to the Property must include a recorded easement providing adequate access thereto. In the event this sale is subject to a financing contingency under Paragraph 4, the access to a public road must be acceptable to the lender. If the examination reveals a title defect that can be remedied by legal action or otherwise within a reasonable time, Seller, at his/her expense, shall promptly take such action as is necessary to cure such defect. If the defect is not cured within sixty (60) days after Seller receives notice of the defect, then either party may terminate this Agreement at the expiration of such sixty (60) day period by written notice to the other party. Upon termination of this Agreement, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. The parties agree that the settlement date prescribed in Paragraph 9 shall be extended if necessary to enable Seller to cure any title defect, but not for more than sixty (60) days, time being of the essence.

C. LAND USE ASSESSMENT: In the event the Property is taxed under land use assessment and this sale results in disqualification from land use eligibility, Seller shall pay any rollback taxes assessed. If the Property continues to be eligible for land use assessment, Purchaser agrees to make application at Purchaser's expense for continuation under land use, and to pay any rollback taxes resulting from failure to file or to qualify. Notwithstanding anything herein to the contrary, the provisions of this Paragraph C shall survive settlement and the delivery of the deed.

D. RISK OF LOSS: All risk of loss or damage to the Property by fire, windstorm, casualty or other cause is assumed by Seller until settlement. In the event of substantial loss or damage to the Property before settlement, Purchaser shall have the option of either (i) terminating this Agreement, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder, or (ii) affirming this Agreement, in which event Seller shall assign to Purchaser all of Seller's rights under any policies of insurance applicable to the Property.

E. EQUIPMENT CONDITION AND INSPECTION: Seller shall convey and Purchaser agrees to accept the Property at settlement in its physical condition at the time the Date of Ratification, except as otherwise provided herein. Seller warrants that all appliances, heating and cooling equipment, plumbing systems and electrical systems will be in working order at the time of Settlement or at Purchaser's occupancy, whichever occurs first. Seller agrees to deliver the Property in broom-clean condition and to exercise reasonable and ordinary care in the maintenance and upkeep of the Property between the date this Agreement is executed by Seller and Settlement or at Purchaser's occupancy, whichever occurs first. Seller grants to Purchaser or his representatives the right to make a pre-occupancy or pre-settlement inspection to verify that the condition of the Property conforms to this Agreement and to ensure that repairs, if any, have been completed

*F. WELL, SEPTIC OR MUNICIPAL SYSTEMS: The Property is served by [select one]: ▢ a well  OR ▢ municipal water system. The Property is served by [select one]: ▢ a septic system  OR ▢ municipal sewage system. If one or more municipal systems is selected and it is determined prior to settlement by the municipality or a Virginia licensed contractor that the Property is not served by such system(s), then Purchaser shall provide the written determination to Seller. Purchaser may then terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder.

If the Property is served by a well and/or septic system, Seller agrees to furnish Purchaser with a certificate dated not more than 30 days prior to settlement from a Virginia Department of General Services certified laboratory indicating that the well water is free from contamination by coliform bacteria, and a statement from a septic system contractor indicating there is no evidence of malfunction of the septic system. If Purchaser obtains a VA loan, the well water shall also be tested by Seller and certified as being free from lead contamination. Inspection of the septic system shall include [check all applicable boxes]:

    ▢ visual inspection of drainfield surface with rod probing

    ▢ pump contents and visual inspection of distribution box and all tanks

    ▢ other (describe): _____

    ▢ inspection per manufacturer's guidelines of alternative septic system.

If well water contamination and/or septic system malfunctions are found, Seller shall repair all malfunctions and correct the well contamination at Seller's expense. Subject to the limitation set forth in Paragraph H below, if Seller fails to comply with any provision of this paragraph, then Purchaser may: (i) utilize the remedies set forth in Paragraph 17; (ii) accept the Property in its current condition; or (iii) terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

This form was produced by Ben Partridge. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

**\*G. WOOD INFESTATION:** Seller shall furnish Purchaser with an inspection report dated not more than 30 days prior to settlement from a Virginia licensed termite control company concerning the presence of, or damage from, termites or other wood destroying insects. If the inspection reveals active infestation or damage caused by wood destroying insects, whether past or present, to the (i) primary dwelling, (ii) any other dwelling(s) on the Property with a valid certificate of occupancy, and (iii) the following additional structures _____ _____ Seller shall have the affected area treated and have the damage repaired by a reputable company. The treatment company shall furnish a one-year warranty on such treatment. Subject to the limitation imposed by Paragraph H below, if Seller fails to comply with any provision of this paragraph, Purchaser may: (i) utilize the remedies set forth in Paragraph 17; (ii) accept the Property in its current condition; or (iii) terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**\*H. LIMITATION:** If the total costs of fulfilling Seller's repair or treatment obligations set forth in Paragraphs F and G above exceeds $_____ ("Repair Limit"), then Seller shall have the option to: (i) fulfill Seller's obligations set forth herein; or (ii) pay or credit the Repair Limit to Purchaser and refuse to pay any excess of the Repair Limit. If Seller elects option (ii), Purchaser shall have the right to either accept the Property in its present condition (in which case the Seller shall pay or credit the Repair Limit to Purchaser at settlement), or to terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 8, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder. If no Repair Limit is entered in this paragraph, the parties agree that the amount shall be $1,000.00. The Repair Limit is independent of any obligations agreed to by Seller pursuant to Paragraph 16 or any Inspection/repair addendum.

**I. VA/FHA Loans:** If a VA or FHA loan is selected in Paragraph 4, it is expressly agreed that notwithstanding any other provisions of this Agreement, Purchaser shall not be obligated to complete the purchase of the Property or incur any penalty by forfeiture of earnest money deposits or otherwise unless Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Veterans Administration, or a direct endorsement lender setting forth the appraised value of the Property of not less than the Purchase Price. Purchaser shall have the privilege and option of proceeding with consummation of this Agreement without regard to the amount of the appraised value. The appraised value is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. Purchaser should satisfy himself/herself that the price and condition of the Property are acceptable.

**J. MECHANIC'S LIEN DISCLOSURE:** Virginia law (§43-1 et seq.) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the Property. This lien may be filed at any time after the work is commenced or the material is furnished, within 90 days from the last day of the month in which the lienor last performed work or furnished materials or 90 days from the time the construction, removal, repair or improvement is terminated. **An effective lien for work performed prior to the date of settlement may be filed after settlement. Legal counsel should be consulted.** Seller shall deliver to Purchaser at settlement an affidavit in a form acceptable to Purchaser's title company, signed by Seller, that no labor or materials have been furnished to the Property within the statutory period for the filing of mechanics' or materialmens' liens against the Property. If labor or materials have been furnished to the Property during the statutory period, Seller shall deliver to Purchaser an affidavit signed by Seller and the person(s) furnishing the labor and/or materials that such items have been paid.

**K. NONBINDING MEDIATION:** Unless waived by mutual agreement of the parties, any disputes or claims arising out of this Agreement (except matters involving mechanics liens or licensing) shall be submitted to mediation prior to instituting arbitration or litigation. The cost of mediation will be shared equally between Purchaser and Seller. The mediation shall be non-binding, unless a satisfactory settlement has been reached. Thus, if no settlement is reached, the parties are not bound by the mediation and may pursue any course of action. If a settlement is reached, it will be binding upon the parties. The mediation shall be provided by a mutually agreeable mediator. Judicial actions to provide provisional remedies, such as an injunction or a lis pendens, shall not be prohibited by the agreement to mediate, nor shall it waive a party's right to mediate.

**L. MISCELLANEOUS:** This Agreement represents the entire agreement between Seller and Purchaser and may not be modified or changed except by written instrument executed by the parties. This Agreement shall be construed according to the laws of the Commonwealth of Virginia and shall be binding upon and shall inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties. To the extent any handwritten or typewritten terms herein conflict with, or are inconsistent with the pre-printed terms hereof, the handwritten or typewritten terms shall control. This Agreement may only be assigned by Purchaser with the written consent of the Seller. If the Seller agrees in writing to an assignment of this Agreement, Purchaser shall remain obligated hereunder until settlement. The parties agree that faxed or electronic transmission of any signed original document shall have the same effect as an original. As used in this

This form was produced by Ben Partridge  CVR MLS forms may be used only by members in good standing of the Central
Virginia Regional MLS

Agreement, a "day" shall mean a calendar day unless otherwise noted. For the purpose of computing time periods, the first day shall be the day following the commencement of a time period. This Agreement may be signed in one or more counterparts, each of which is deemed to be an original and all of which shall together constitute the same instrument. No party will refuse delivery of any notice from the other party in order to hinder or delay any deadline established in this Agreement. Unless otherwise provided herein, the provisions of this Agreement affecting title shall be deemed merged into the deed delivered at settlement and shall not survive settlement.

25. SELLER REPRESENTATION: Seller warrants each person signing this Agreement as Seller includes all persons possessing an ownership interest in the Property or who will be a necessary party to convey clear title to the Property.

26. ELECTRONIC SIGNATURES. In accordance with the Uniform Electronic Transactions Act (UETA) regarding electronic signatures and transactions, the parties do hereby expressly authorize and agree to the use of electronic (such as Authentisign) signatures as an additional method of signing and/or initialing this Agreement.

*27. ACCEPTANCE: This Agreement becomes a legally binding agreement only upon ratification and delivery. Unless ratification and delivery of this Agreement occurs by ___5:00___ □ a.m. or ⊠ p.m. on ___06/25/18___, this offer shall expire and shall not be binding on either party. If the parties desire to accept an offer that has expired, then (i) the date set forth in this paragraph 27 must be revised to the ratification date (or later), (ii) each party must initial such revision, and (iii) ratification and delivery must occur prior to the revised expiration date.

As used herein, "ratification and delivery" means delivery of a final accepted and signed Agreement to the other party or their respective broker or salesperson by hand delivery, fax or electronic transmission, or by a professional courier service (including overnight delivery service) or by United States mail with return receipt requested. In the event of a dispute, the sender shall have the burden to demonstrate delivery to the recipient of the final accepted and signed Agreement. "Date of Ratification" means the date upon which ratification and delivery occurs. Purchaser and Seller understand that they shall have the right to withdraw any offer at any prior to ratification and delivery. If either party withdraws an offer, notice shall be deemed effective upon receipt. If any offer is withdrawn, all deposits shall be returned to the Purchaser at no penalty.

WITNESS the following authorized signatures:

| | | |
|---|---|---|
| _(signature)_ 6-20-2018 | _(signature)_ 6-22-18 | |
| Purchaser Castle Kanawha 1508 LLC   Date | Seller   Renew Properties   Date | |
| _(signature)_ 6-20-2018 | | |
| Purchaser Castle Kanawha 1508 LLC   Date | Seller   Date | |
| | | |
| Purchaser   Date | Seller   Date | |

The following is for informational purposes only:

Selling Broker Company's Name and Address       Listing Company's Name and address

___One South Realty Group, LLC___               _____N/A_____
2314 W. Main St.                                _____
Richmond          VA      23220                 _____

Office Phone ___804-353-0009___                 Office Phone _____
Office Fax ___(804)353-0991___                  Office Fax _____
DPOR Firm License No.: ___0226019977___         DPOR Firm License No.: _____

Purchaser's Authorized Agent's Information:     Seller's Authorized Agent's Information:
Name _____Ben Partridge_____             Name _____
Email ___partridge22@gmail.com___              Email _____
Cell No. _____             Cell No. _____
Agent's DPOR License No.: ___0225192211___      Agent's DPOR License No.: _____

COPYRIGHT©2017 by the Central Virginia Regional MLS, LLC ("CVR MLS"). All rights reserved. This form may be used only by members in good standing of the CVR MLS. The reproduction of this form, in whole or in part, or the use of the names "Central Virginia Regional MLS" or "CVR MLS", in connection with any other form, is prohibited without prior written consent of CVR MLS.

CVR 33S                          Page 9 of 9                          Revised 8/2017
                                                                      Instanet

This form was produced by Ben Partridge  CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS



**CENTRAL VIRGINIA REGIONAL MLS®**
*DISCLOSURE OF INFORMATION AND ACKNOWLEDGMENT*
*LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS*
(Purchase)



Property Address:  3207  Hanover AVE _____  Richmond ___  VA ___  23221

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**
*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**
(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing

    (explain). _____

    (ii) _____ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

    (i) _____ Seller has provided the purchaser with all available records and reports pertaining to lead based

    paint and/or lead-based paint hazards in the housing (list documents below)

    _____

    (ii) _____ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint

    hazards in the housing.

**Purchaser's Acknowledgment (initial)**
(c) ___ ___ Purchaser has received copies of all information listed above.

(d) ___ ___ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home*

(e) Purchaser has (check (i) or (ii) below):

    (i) _____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment

    or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

    (ii) ___ ___ waived the opportunity to conduct a risk assessment or inspection for the presence of

    lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**
(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her

responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Seller _____ | Date 6-20-2018 | Seller _____ | Date 21-18 |
| Purchaser _____ | Date | Purchaser _____ | Date 6-21-18 |
| Agent _____ | Date | Agent  Ben Partridge | Date 6-21-18 |

CVR 445  Rev 6/07

This form was produced by Ben Partridge. CVR MLS forms may be used only by members in good standing of the
Central Virginia Regional MLS                                                                        Instanet·

EXHIBIT

L

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:                                    Chapter 7
                                          Case Number: 18-30214-KLP
ROBERT E. HICKS

    Debtor.

STONEBRIDGE INVESTMENT            )
COMPANY, LLC,                     )
                                  )
    Movant                       )
V                                 )
                                  )
ROBERT E. HICKS,                  )
                                  )
and                               )
                                  )
PETER J. BARRETT, TRUSTEE         )
                                  )
    Respondents.                 )

## CONSENT ORDER APPROVING RELIEF FROM STAY AND APPROVAL OF PURCHASE AGREEMENT

This matter came before the court upon the Motion for Relief from the Automatic Stay and Request for Approval of Purchase Agreement (hereinafter the "Motion") filed by Stonebridge Investment Company, LLC, a Virginia limited liability company (hereinafter "Stonebridge") and upon consideration thereof, and with the consent of the Debtor, Robert E. Hicks (hereinafter the "Debtor") and Peter J. Barrett, Chapter 7 Trustee for the Debtor's Bankruptcy Estate (hereinafter the "Trustee"), it is ORDERED as follows:

1. Stonebridge shall be and hereby is granted Relief from the Automatic Stay to pursue its state court rights and remedies and to obtain a deed in lieu of foreclosure from Renew Properties, LLC, a Virginia limited liability company (hereinafter "Renew Properties"), of which Debtor is the sole member and manager, for the real property

commonly known as 1702 Grove Avenue, Richmond, Virginia 23220 (hereinafter the "Grove Property") as more particularly described in the attached **Exhibit "A"**.

2. The Court approves the sale of the Hanover Property in accordance with the terms of the purchase agreement attached hereto as **Exhibit "B"** (hereinafter the "Purchase Agreement").

3. The Debtor, on behalf of Renew Properties, is authorized and required to execute the deed in lieu of foreclosure transferring ownership of the Grove Property to Stonebridge pursuant to this Consent Order and Stonebridge is authorized to record the Deed in Lieu of Foreclosure among the land records of the City of Richmond, Virginia.

4. Upon closing of the Purchase Contract, the Debtor, on behalf of Renew Properties, is authorized and required to execute the deed of bargain and sale transferring ownership of the Hanover Property to Castle Kanawha 1508, LLC for pursuant to this Consent Order and in the attached Exhibit "A" from Renew Properties.

5. The Debtor is not authorized to take any other action except as otherwise provided for in this Consent Order.

6. Upon this Consent Order becoming a final and non-appealable order, Stonebridge shall release its deed of trust on Debtors personal residence as to Debtor only. Further, Stonebridge forever waives and releases any and all claims and/or liens against the Debtor, the Debtor's Bankruptcy estate, and any entity in which the Debtor holds a membership, shareholder, and/or other interest, and any other interest and/or property of the Debtor and/or the Debtor's Bankruptcy Estate.

7. Notwithstanding anything contained herein to the contrary, any and all avoidance action claims against Stonebridge and/or any other party, whether under Chapter 5 of the Bankruptcy Code and/or under any applicable state and/or federal law, are preserved in their entirety by the Trustee and the Bankruptcy estate.

8. The stay requirement of Federal Rule of Bankruptcy Procedure 4001 (a) (3) shall be and hereby is waived so that the deed in lieu of foreclosure and deed for the Properties can be immediately executed and recorded.


ENTERED: _____     _____
                               UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

/s/ Alexander Hamilton Ayers
Alexander H. Ayers (VSB No. 77826)
Scott D. Stolte, Esquire (VSB No. 28357)
Ayers & Stolte, P.C.
710 North Hamilton Street
Richmond, Virginia 23221
Telephone:    (804) 358-4731
Facsimile:    (803) 864-0895
E-Mail:       aayers@ayerslaw.com
              sstolte@ayerslaw.com
*Counsel for Stonebridge Investment Company, LLC*

SEEN AND AGREED:
/s/ Franklin R. Cragle, III
Franklin R. Cragle, III, Esq. (VSB No. 78398)
Robert S. Westermann, Esq. (VSB No. 43294)
Hirschler Fleischer
2100 East Cary Street
Richmond, VA 23223-7078
Telephone:    (804) 771-9515
Facsimile:    (803) 644-0957
fcragle@hf-law.com
rwesterman@hf-law.com
*Counsel for Peter J. Barrett, Chapter 7, Trustee*

/s/ Robert A. Canfield
Robert A. Canfield, Esq. (VSB No. 16901)
Canfield, Wells & Kruck, LLP
4124 E. Parham Road
Henrico, Virginia 23228
Telephone:    (804) 673-6600
Facsimile:    (803) 673-6004
bob@cwkllp.com
*Counsel for Debtor, Robert E. Hicks*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 9022-1

I hereby certify that the foregoing Order has been served on and/or endorsed by all necessary parties on this 11th day of July, 2018.

/s/ Alexander Hamilton Ayers